# Exhibit "A"

2021 WL 3293627
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

Faith ELSHARKAWY, as herself in her individual capacity, and as Trustee for the Next-of-Kin of J.L.E., Decedent, Plaintiff,
v.
CHISAGO LAKES SCHOOL DISTRICT BOARD OF EDUCATION, Independent School District No. 2144, Chisago Lakes Area Schools d/b/a Chisago Lakes Schools, Dave Ertl, Jason Thompson, Carrie Hoffman, Jerilyn Mattson, Angela Christenson, Shira Ben-Heim, Leah Taylor, Carter Vogt, Laura Gustafson, and Jane/John Does, Defendants.

CIVIL NO. 20-1971(DSD/ECW)
|
Signed 08/02/2021

**Attorneys and Law Firms**

Gadeir I. Abbas, Esq. and CAIR National Legal Defense Fund, District of Columbia, 453 New Jersey Avenue, SE, Washington, DC 20003, counsel for plaintiff.

Kristin C. Nierengarten, Esq. and Rupp, Anderson, Squires & Waldspurger, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402, counsel for defendants.

### ORDER

David S. Doty, Judge United States District Court

 *1  This matter is before the court upon the motion for judgment on the pleadings by defendants Chisago Lakes School District Board of Education, Independent School District No. 2144, Chisago Lakes Area Schools, Dave Ertl, Jason Thompson, Carrie Hoffman, Jerilyn Mattson, Angela Christenson, Shira Ben-Heim, Leah Taylor, Carter Vogt, and Laura Gustafson. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion in part.

### BACKGROUND

This civil rights action arises out of J.L.E.'s treatment while a student attending school in Chisago Lakes. Plaintiff Faith Ann Elsharkawy is the trustee for the next-of-kin of J.L.E. and brings this action individually and on behalf of J.L.E. Compl. ¶ 9. Chisago Lakes School District Board of Education (School Board) is the governing body of the Chisago Lakes Schools, and it is an "instrument of a Minnesota municipality." Id. ¶ 10. Independent School District No. 2144, Chisago Lakes Area Schools (District) is a public school district. Id. ¶ 11. It has policies relating to prohibition of discrimination and accommodations for disabled students. Id. Ertl was the principal of Chisago Lakes High School, Thompson was the associate principal, and the other named defendants were members of J.L.E.'s individual education plan (IEP) team. Id. ¶¶ 12-19. [1]

J.L.E. was a Muslim student who attended the District under an IEP from September 2015 to April 2018. Id. ¶¶ 8, 31, 70. J.L.E. was diagnosed with Emotional/Behavior Disorder, Developmental Delay, Attention Deficient with Hyperactivity Disorder, Learning Disorder, anxiety, asthma, adjustment disorder, and sensory processing/overload disorder. Id. ¶¶ 58, 63, 66, 69. J.L.E. also had excessive fatigue and muscle tension, which resulted in irregular sleep patterns. Id. ¶ 69.

The District revised J.L.E.'s IEP when he started middle school in 2015. Id. ¶ 70. His IEPs aimed to improve his "self-advocacy skills," among other things. Id. ¶¶ 71, 76, 87, 104. The IEP required that J.L.E. receive daily special education services from a teacher or therapist. Id. His IEP also outlined that he would be seated at the back of the room, that he would be able to have his head down for brief periods of time, that he could use the bathroom whenever needed, and that his health would impact his attendance and the ability to complete academic tasks. See id. ¶ 72. In December 2015, J.L.E. was diagnosed with speech processing delays, learning delays, adjustment disorder, depression, and hypermobility. Id. ¶ 74.

In preparation for his transition to high school, J.L.E. underwent a behavioral assessment, which concluded that he was "At-Risk" in the areas of hyperactivity, aggression, depression, attention problems, and atypicality. [2] Id. ¶¶ 82-83. In addition, J.L.E.'s IEP team noted in his June 6, 2017, IEP evaluation report that he responded well to redirection and earned privileges for positive choices, and that he did not respond well to disciplinary actions. [3] Id. ¶¶ 87-90.

 *2  On October 11, 2017, J.L.E.'s IEP team prepared another IEP Evaluation Report. Id. ¶ 95. The report included

the following diagnoses: ADHD, adjustment disorder, depression, anxiety, and autism. Id. Mattson, J.L.E.'s high school case manager, reported concerns of bullying in the IEP Evaluation Report, but did not provide any specific examples. Id. ¶ 100. The IEP again emphasized that empathetic approaches, praise, and positive recognition, rather than discipline, should be used with J.L.E. Id. ¶ 103.

During his time in the District, J.L.E. was subject to pervasive bullying. Id. ¶ 36. J.L.E. endured Islamophobic slurs and insults about his various conditions. See id. ¶¶ 39-41. Starting in September 2015, students called him "bomber man" and "terrorist," and they mocked him and his mother for their faith. Id. ¶ 113. Elsharkawy contacted a nonprofit advocacy organization, and they brought their concerns of bullying to J.L.E.'s IEP team. Id. ¶¶ 115-16. Defendants took no steps to address the bullying, and J.L.E. was bullied the rest of the year. Id. ¶ 116.

In September 2016, students stabbed J.L.E. multiple times with a pencil over two days, which caused an infection. Id. ¶ 117. J.L.E. was the only student punished relating to the incidents. Id. Elsharkawy contacted his IEP case manager about the bullying, but defendants did not take any steps to address the issue. Id. ¶ 120. On October 3, 2016, J.L.E. fell asleep on the bus due to his medication, and students tied his shoelaces to a pole. Id. ¶ 122. Elsharkawy contacted the District about the incident, and it threatened to discipline J.L.E. if he fell asleep on the bus again. Id. ¶¶ 123-25. On October 25, 2016, two students threw J.L.E. against a metal door frame, and he fell and lost consciousness. Id. ¶ 126. He suffered a concussion and shoulder injury. Id. Elsharkawy and J.L.E. reported the incident, but the District did nothing and allowed bullying to continue. Id. ¶¶ 127-28.

The following three incidents are the only instances of bullying that Elsharkawy alleges were investigated by defendants. On February 12, 2017, J.L.E. was lifted in the air by other students. Id. ¶ 130. According to a disciplinary notice, he was disciplined for causing a disruption. Id. On March 8, 2017, a student mocked J.L.E.'s glasses and broke them on the bus. Id. ¶ 131. Elsharkawy and the bus driver reported the incident. Id. ¶ 133. Defendants investigated the incident and concluded that no bullying had occurred. Id. ¶¶ 134-35. On May 15, 2017, a student who previously mocked J.L.E.'s faith teased J.L.E. about his religious dietary restrictions and slammed his sandwich on the table. Id. ¶¶ 136-37. Elsharkawy reported the incident to the District, and it determined after investigation that the incident did not constitute bullying. Id. ¶ 138.

On May 19, 2017, Elsharkawy brought concerns regarding J.L.E.'s treatment and the District's bullying prevention plan to the IEP team, raising concerns about students stealing J.L.E.'s things, calling him derogatory names, messing with his lunch, and staff making derogatory comments about his disabilities. Id. ¶¶ 140-41. Defendants reminded Elsharkawy that the school had a bullying policy and dismissed her concerns. Id. ¶¶ 142. Following this meeting, Elsharkawy continued to discuss J.L.E.'s IEP goals and her concerns that he was being routinely bullied. Id. ¶ 143.

When J.L.E. entered high school, the bullying continued. In October 2017, a student choked J.L.E. on the bus. Id. ¶ 49. In November 2017, a student held a fist to J.L.E.'s face and threatened him. Id. ¶ 50. In November 2017, a student repeatedly punched J.L.E. in the face, head, and chest, pulled J.L.E.'s hair from his head, and ripped his clothes. Id. ¶ 51. J.L.E. was diagnosed with a concussion and had extensive bruising on his face and body. Id. In February 2018, student threw spaghetti at J.L.E. Id. ¶ 52. In March 2018, a student tripped J.L.E., which caused him to fall and knock over a large garbage can. Id. ¶ 53. All of the incidents were reported to the District, but it did not investigate or take any measures to prevent future incidents. See id. ¶¶ 49-53, 55.

*3 During his freshmen year, J.L.E. was continually disciplined by defendants. Mattson and Thompson regularly disciplined J.L.E. between January 2018 and April 2018. Id. ¶¶ 144. Thompson disciplined J.L.E. for missing class for medical appointments necessitated by bullying incidents. Id. ¶¶ 146-48. J.L.E. was disciplined for being tardy to class, in alleged violation of his IEP. Id. ¶ 149.

Elsharkawy repeatedly had meetings in order to ask IEP members to follow his IEP. Id. ¶¶ 147, 151, 160. Defendants stopped issuing disciplinary notices in writing due to Elsharkawy's repeated concerns. Id. ¶ 150. But defendants continued to discipline J.L.E., in alleged violation of his IEP, including imposing a one-day suspension for fidgeting in his seat – behavior permitted in the IEP. Id. ¶¶ 154, 156. J.L.E. had a severe anxiety attack during his suspension, and Elsharkawy expressed concerns about the suspension. Id. ¶¶ 157-58. In a March 2018 IEP meeting, J.L.E. reported that students constantly bullied him, that he suffered anxiety attacks as a result, and that the anxiety attacks caused him to be tardy. Id. ¶ 160. The next day, J.L.E. received a detention,

and J.L.E. begged Elsharkawy to stop reporting bullying to avoid further discipline. Id. ¶ 161.

By March 2018, J.L.E. received near-daily detentions. Id. ¶ 162. Elsharkawy told defendants that J.L.E. continued to have severe anxiety and that the discipline was in violation of his IEP, but defendants threatened to expel J.L.E. if he did not serve his detentions and in-school suspensions. Id. ¶¶ 163-64. On April 29, 2018, J.L.E. committed suicide at his home. Id. ¶¶ 1, 166.

On September 16, 2020, Elsharkawy commenced this action, alleging claims under the United States Constitution, federal law, and state law. Her constitutional claims include the failure to protect under the Fourteenth Amendment's Due Process Clause and violation of the Fourteenth Amendment's Equal Protection Clause. She also alleges violations of Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990 (ADA), and a wrongful death claim under Minnesota law.[4] Defendants now move for judgment on the pleadings.

**I. Standard of Review**

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

*4 As a preliminary matter, the parties dispute whether the court may consider the five exhibits attached to defendants' brief. See ECF No. 28. The court may consider documents "necessarily embraced by the pleadings," which include "documents whose contents are alleged in a complaint and whose authenticity no party questions." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012). "Consideration of [ ] self-selected documents would require the [c]ourt to impermissibly weigh evidence not embraced by the pleadings, tending to disprove [p]laintiffs' allegations, which the [c]ourt clearly may not do at this stage of the proceeding." Doe v. Indep. Sch. Dist. 31, No. 20-cv-226, 2020 WL 4735503, at *4 (D. Minn. Aug. 14, 2020). The court will not consider defendants' exhibits because they are either disputed or incomplete.

**II. Constitutional Violations**

**A. Duty to Protect under the Due Process Clause**

In order to plead a substantive due process claim under the Fourteenth Amendment, plaintiff must allege that defendants violated a fundamental right and that the conduct "shocks the conscience." Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009). Elsharkawy argues that defendants had a duty to protect J.L.E. from bullying, and that defendants had a duty to not retaliate against J.L.E. for reporting the bullying. The court finds that Elsharkawy has not sufficiently pleaded a fundamental right.

The Due Process Clause "protects against state action." Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 731 (8th Cir. 1993). Consequently, the United States Supreme Court has held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 732 (quoting DeShaney v. Winnebago Cty. Dept. of Soc. Servs., 489 U.S. 189, 197 (1989)). Students are private actors, and, even if a student physically assaults another student at a public school, the violence is considered private. See id. at 731 (holding that a student physically assaulting another student at high school constituted private violence); Bosley v. Kearney R-1 Sch. Dist., 904 F. Supp. 1006, 1017 (W.D. Mo. 1995), aff'd, 140 F.3d 776 (8th Cir. 1998) (finding that students were private actors in a case of student-on-student sexual harassment at school); Gullion as Next Friend of A.M. v. Manson Nw. Webster Sch. Dist., No. 19-CV-3015-CJW-MAR, 2021 WL 276702, at *11 (N.D. Iowa Jan. 27, 2021) (finding that bullying involving students was between private parties). Here, the conduct alleged involves private violence

perpetrated by private actors, which generally is not protected under the Due Process Clause.

There are two exceptions under which a public school may be held liable for private violence under the Due Process Clause. The first exception applies when there is a special relationship between the person and the public school. Id. at 732 (citing DeShaney, 489 U.S. at 1004). The special relationship forms "when the State takes a person into its custody and holds him there against his will," which imposes a duty on the state "to assume some responsibility for his safety and general well-being." Id. (quoting DeShaney, 489 U.S. at 1004). Elsharkawy concedes that this exception does not apply to state-mandated school attendance. See id.

The second exception applies "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have been in." Id. at 733 (quoting Wells v. Walker, 852 F.2d 368, 370 (8th Cir. 1988)). The affirmative act must create an "immediate threat of harm [that] has a limited range and duration" and not an "indefinite risk." Id. n.4 (citing Reed v. Gardner, 986 F.2d 1122, 1127 (7th Cir. 1993)). The Eighth Circuit Court of Appeals has rejected the contention that a state affirmatively acts simply "whenever a state actor has increased the risk of harm from private sources" and reasoned that the state "must be more directly implicated ... in the events causing the victim's injury." Id.; see id. (rejecting the argument that a school district affirmatively acted when it placed an abused student in a program with a student with a known history of violent behavior).

**\*5** Here, Elsharkawy does not adequately allege that defendants took affirmative action that placed J.L.E. in a position of danger as defined by the Eighth Circuit. Defendants' failure to investigate bullying allegations and the failure to discipline other students is not an affirmative action. See Gullion, 2021 WL 276702, at \*11 (finding that "[f]ailing to prevent bullying is not the same as affirmatively placing someone in danger"); Bosley, 904 F. Supp. at 1019 (finding that the school district did not affirmatively create a danger by "fail[ing] to discipline or to remove the offending students"). If the court were to hold otherwise, it "would be just another way of saying that the school environment creates a custodial relationship giving rise to a constitutional duty to protect," which was rejected by the Eighth Circuit. Bosley, 904 F. Supp. at 1019.

Additionally, Elsharkawy fails to plead that defendants' retaliatory behavior – requiring J.L.E. to serve detentions and in-school suspensions - affirmatively created an immediate threat of harm. Even though the allegations in the complaint certainly shock the conscience, the law makes clear that defendants did not have a duty to protect under the Due Process Clause. See Bosley, 904 F. Supp. at 1018 (explaining that the court is bound by the law articulated in Dorothy J. by the Eighth Circuit). As a result, the court must dismiss the substantive due process claim.

**B. Equal Protection Clause**

"As a threshold matter, in order [t]o state an equal protection claim, [plaintiff] must have established that he was treated differently from others similarly situated to him." Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004) (quoting Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998)). A plaintiff must be similar to the comparator "in all relevant respects" in order to state such a claim. Id. at 969. A plaintiff may also proceed on a "class of one" equal protection claim. Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). A plaintiff may proceed on a class of one equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (quoting Vill. Of Willowbrook, 528 U.S. at 564).

"The threshold inquiry in [the class of one] equal protection [claim] is whether [J.L.E. is] similarly situated to others who allegedly received preferential treatment." Id. at 996 (quoting Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000)). "Identifying the disparity in treatment is especially important in class-of-one cases." Id. (quoting Barstad v. Murray Cty., 420 F.3d 880, 884 (8th Cir. 2005)). A plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Id. (internal quotations omitted) (quoting Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir. 2008)).

Elsharkawy alleges that J.L.E. was treated differently "from other students including students with disabilities without any

rational basis ... because of his faith and his disabilities." Compl. ¶¶ 207-08. She does not include any specific allegations about how the other students were treated differently, however. Elsharkawy relies on Sutherlin v. Independent School District No. 40 of Nowata County, Oklahoma, 960 F. Supp. 2d 1254 (N.D. Okla. 2013) in support of her position. But Sutherlin is distinguishable.

In Sutherlin, plaintiff brought an equal protection claim under a "class of one" theory, alleging that the student was treated differently than other similarly situated students in response to bullying allegations. Id. at 1263-64. Like Elsharkawy, plaintiff alleged that their child reported bullying to defendants in 2011, and that defendants took no corrective actions. Id. at 1265. Unlike Elsharkawy, however, plaintiff alleged that the school district received thirty-two reports of student-on-student bullying from 2010 to 2012. Id. at 1265. Because of this included allegation, the court could infer from the pleadings that "the school responded to complaints made by other[ ] [students] who were similarly situated" and failed to respond to bullying reports of plaintiff's child. Id. This allegation allowed the Sutherlin court to conclude that plaintiff's child was treated differently from similarly situated students without any rational basis. See id.

*6 Unlike in Sutherlin, Elsharkawy provides no examples of bullying incidents involving other students to compare with J.L.E.'s treatment. Without such examples, the court cannot conclude that J.L.E. was treated differently from other similarly situated students and cannot allow this claim to proceed as pleaded. See Robbins, 794 F.3d at 995 (explaining that "[i]dentifying the disparity in treatment is especially important in class-of-one cases"). The court will dismiss this claim without prejudice, however, to allow Elsharkawy the opportunity to replead.

**II. Federal Law Claims**
Elsharkawy alleges that J.L.E. was prohibited from participating in educational programming and was discriminated against due to his various conditions in violation of Section 504 of the Rehabilitation Act and the ADA. She specifically alleges that the District and the School Board failed to: accommodate J.L.E's disabilities, revise and implement his IEP, address pervasive bullying based on his disabilities, provide a free appropriate public education (FAPE) in the least restrictive environment, or conduct a due process hearing. Defendants argue that Elsharkawy cannot proceed on these claims because: she failed to exhaust her administrative remedies, they are barred by the statute of limitations, and she failed to adequately plead gross misjudgment or bad faith on the part of the school officials. The court will analyze these claims together as they are coextensive. See Hoekstra By & Through Hoekstra v. Indep. Sch. Dist. No. 283, 103 F.3d 624, 626-27 (8th Cir. 1996) (explaining that "enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504").

**A. Exhaustion**
Under the Individuals with Disabilities Act (IDEA), students with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of FAPE, including "identification, evaluation, and educational placement" of the student, the "provision of [FAPE]," and "independent educational evaluation[s]." 20 U.S.C. § 1415(a)-(b). Parents must exhaust certain procedures before filing a civil action related to education services for their child. See id. § 1415(i)(2)(A).

If a plaintiff brings an ADA or Section 504 claim "seeking relief that is also available under [IDEA]," the plaintiff must exhaust the same procedures as required under the IDEA. Id. § 1415(l). The exhaustion requirement "hinges on whether a lawsuit seeks relief for the denial of a FAPE." Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 754 (2017). Futility is an exception to the exhaustion requirement. See J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 594-95 (8th Cir. 2013). Courts have held that "in the context of a student's death ... exhaustion [is] futile." Beam v. W. Wayne Sch. Dist., No. 3:15-CV-01126, 2018 WL 6567722, at *5 (M.D. Pa. Dec. 13, 2018). Courts reason that administrative exhaustion is futile in the event of a student's death because resolving defects in an [IEP] for a child who is no longer alive "would not usurp the school district's authority in the manner protected by the exhaustion requirement," and parents have "nothing to gain from the equitable remedies" afforded under the administrative procedures. See id. (internal quotations and citations omitted).

Here, given J.L.E.'s death, the court finds that the exhaustion requirement is futile and does not bar Elsharkawy's claims.

### B. Statute of Limitations

Defendants argue that Elsharkawy's claims under Section 504 and the ADA are time barred because they are subject to a two-year limitations period.[5] The court disagrees because the Eighth Circuit has held that Section 504 and the ADA carry a six-year limitations period. See [Faibasch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir. 2002)](applying Minnesota's statute of limitations for personal injury to Section 504); [Gaona v. Town & Country Credit, 324 F.3d 1050, 1056 (8th Cir. 2003)](applying Minnesota's statute of limitations for personal injury to the ADA). As a result, Elsharkawy's claims are timely.

### C. Bad Faith or Gross Misjudgment

*7 To proceed on Section 504 and ADA claims, Elsharkawy must allege "gross misjudgment or bad faith" by school officials. Hoekstra, 103 F.3d at 626-27 (citing Monahan v. State of Neb., 687 F.2d 1164, 1171 (8th Cir. 1982)). School officials must have "exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals ...." Monahan, 687 F.2d at 1171.

Elsharkawy has plausibly alleged gross misjudgment by the District's officials. The complaint sets forth detailed allegations that, if true, adequately support a finding that J.L.E. was pervasively, consistently, and severely harassed and bullied by other students while at school due to his religion and disabilities. The complaint also adequately alleges that the school was well aware of the bullying. Over the course of three years Elsharkawy repeatedly contacted the school to report instances of bullying, yet the school did not investigate or take steps to ensure J.L.E.'s safety. These facts alone plausibly allege that the Districts officials grossly departed from accepted standards of care. See M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 982 (8th Cir. 2003) (holding that a factfinder could find gross misjudgment when, among other things, the district failed to respond to a mother's calls regarding her child's safety and threatened to drastically alter the student's school day).

As a result, Elsharkawy has plausibly pleaded claims under Section 504 and ADA.

### III. Wrongful Death under Minnesota Law

"A plaintiff who alleges negligence in a wrongful-death action must prove (1) that the defendant had a duty [to the plaintiff], (2) that the defendant breached that duty, (3) that there was a death, and (4) that the breach of duty caused that death." Mertes Tr. for Next-of-Kin of Capouch v. City of Rogers, No. 17-cv-4508, 2019 WL 3306147, at *6 (D. Minn. July 23, 2019) (quoting Stuedemann v. Nose, 713 N.W.2d 79, 83 (Minn. Ct. App. 2006)). Defendants deny that they had a duty to prevent J.L.E.'s suicide[6] and claim that they are entitled to official immunity in any event.

### A. Duty

As a general matter, "Minnesota law does not impose wrongful death liability for suicide because the harm is self-inflicted." Id. at *7 (citing Donaldson v. Young Women's Christian Ass'n of Duluth, 539 N.W.2d 789, 792 (Minn. 1995)). There are two exceptions to the rule: whether "there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable," or "the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." Id. (quoting Fenrich v. The Blake School, 920 N.W.2d 195, 201-02 (Minn. 2018)). In order to determine foreseeability, the court "look[s] at whether the specific danger was objectively reasonable to expect," and "[t]he risk must be clear to the person of ordinary prudence." Doe 169 v. Brandon, 845 N.W.2d 174, 178 (Minn. 2014) (citations and internal quotations omitted). This inquiry "depends heavily on the facts and circumstances of each case." Id. at 179 (deciding whether a duty existed based on a summary judgment record).

Elsharkawy plausibly pleads that it was reasonably foreseeable that defendants' conduct – failure to investigate after frequent reports of bullying – might cause J.L.E. to take his own life. See, e.g., Jasperson v. Anoka-Hennepin Indep. Sch. Dist. No. 11, No. A06-1904, 2007 WL 3153456, at *5 (Minn. Ct. App. Oct. 30, 2007) (holding that the record needs to "support assertions that any school personnel knew or had reason to know that [the student] continued to have problems with [his bullies]"); see also Meyers v. Cincinnati Bd. of Educ., 983 F.3d 873, 884 (6th Cir. 2020) (applying Ohio law and finding "if a school is aware of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide").

**\*8** Elsharkawy repeatedly reported bullying incidents to school officials and the IEP team. Defendants knew or should have known he was at risk of self-harm due to the pervasive bullying and diagnosed depression and other mental health concerns in J.L.E.'s IEP. Under these circumstances, Elsharkawy has pleaded more than enough to survive a motion for judgment on the pleadings.

### B. Official Immunity

The official immunity doctrine allows "public officials, charged by law with duties calling for the exercise of judgment or discretion, [to be] immune from suit for the exercise of that judgment or discretion unless they are guilty of a willful or malicious wrong." S.W. v. Spring Lake Park Sch. Dist. No. 16, 580 N.W.2d 19, 23 (Minn. 1998). The official immunity inquiry involves two questions: "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protections." Dokman v. Cty. of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001). A ministerial act is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." Johnson v. State, 553 N.W.2d 40, 46 (Minn. 1996).

"The burden of proof that immunity applies is on the party claiming immunity." Brown v. City of Bloomington, 706 N.W.2d 519, 522 (Minn. Ct. App. 2005) (citing Rehn v. Fischley, 557 N.W.2d 328, 333 (Minn. 1997)). "[A]s a rule, an affirmative defense can only be a basis for a motion to dismiss when the existence of the defense is clearly evident on the face of the complaint." Cavan v. Mayer, No. 18-cv-2568, 2020 WL 1227717, at \*2 (D. Minn. Mar. 13, 2020) (citing Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 983 (8th Cir. 2008)).

Defendants argue that their actions were clearly discretionary in nature and therefore subject to immunity. The court disagrees. Defendants' entitlement to official immunity is "a fact-based inquiry" and "is not clearly evident on the face of the [c]omplaint." Doe v. Indep. Sch. Dist. 31, No. 20-cv-226, 2020 WL 4735503, at \*11 & n.9 (D. Minn. Aug. 14, 2020) (declining to decide whether an official immunity defense applied to a school district on a motion to dismiss). Indeed, all of the cases defendants cite in support of their position were decided on summary judgment with a full record. See ECF No. 27, at 34-35 (listing cases decided on summary judgment). Defendants are plainly not entitled to immunity at this stage of the proceedings given the egregious allegations made in the complaint.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED**, that:

1. Defendants' motion for judgment on the pleadings [ECF No. 26] is granted in part;

2. Counts I, V, and VII are dismissed with prejudice; and

3. Count IV is dismissed without prejudice.

**All Citations**

Slip Copy, 2021 WL 3293627

---

### Footnotes

1. Elsharkawy also sues unidentified Jane and John Does as mandated reporters under Minn. Stat. § 626.556. Id. ¶ 20.
2. Peterson, along with Elsharkawy and J.L.E's paraprofessional, completed the assessment. Id. ¶ 82.
3. Christenson co-authored the report along with Brianna Claeson, also named in this suit but is not on the case caption. Id. ¶¶ 87-88.
4. Elsharkawy has voluntarily dismissed counts V and VII of the complaint. See ECF No. 44, at 33.

| | |
|---|---|
| 5 | Defendants' reliance on P.P. ex rel. Michael P. v. W. Chester Area School District, 585 F.3d 727, 736 (3d Cir. 2009), for this proposition is misplaced. Even if otherwise persuasive, that case only involved claims relating to FAPE and did not include a disability discrimination claim, as is alleged here. Id. |
| 6 | Defendants make no arguments regarding the other elements. |

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.