# Exhibit "B"

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 2 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

KeyCite Yellow Flag - Negative Treatment
Distinguished by Sacchetti v. Gallaudet University, D.D.C., April 20, 2016

2009 WL 865679
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Middlesex.

Douglas LEARY
v.
WESLEYAN UNIVERSITY.

No. CV055003943.
|
March 10, 2009.

West KeySummary

1   Judgment    Tort Cases in General

Genuine issue of material fact existed as to whether the deceased was in the custody or control of the university's public safety officers. The deceased called the public safety officers and informed them he was having a panic attack. The officers dropped the deceased at the hospital without further investigating or securing medical attention for him. The deceased then left the hospital and committed suicide.

**Attorneys and Law Firms**

Koskoff Koskoff & Bieder PC, Bridgeport, for Douglas Leary.

Day Pitney LLP, Hartford, for Wesleyan University.

**Opinion**

CLARANCE J. JONES, Judge.

*1 On October 21, 2005, the plaintiff, Douglas Leary, administrator of the estate of Terence Leary, commenced this action on behalf of the decedent, Terence Leary, against the defendant, Wesleyan University. The plaintiff filed his original two-count complaint on November 3, 2005. The plaintiff filed a subsequent two-count amended operative complaint on February 3, 2006, in which he alleges the facts hereinafter articulated.

Terence Leary was a student at Wesleyan University in 2003. On November 4, 2003, the defendant's public safety officers responded to a call placed by Terence Leary, in which he complained he was suffering from a panic attack. The amended complaint public safety officers transported him to Middlesex Memorial Hospital and dropped him off without further investigating or securing medical attention for him. At some point shortly thereafter, Terence Leary left the hospital and allegedly committed suicide.

In count one of his complaint, the plaintiff alleges that the defendant is liable to Terence Leary's estate for negligence through its own actions because the defendant (1) hired and retained inadequate safety personnel; (2) failed to properly train its security personnel; and (3) did not follow appropriate procedures for handling distressed students. The plaintiff further alleges that the defendant is liable to Terenee Leary's estate through the actions of its public safety officers because the security personnel (1) knew or should have known that Terence Leary was in a distressed condition, had suicidal tendencies and was a threat to himself, and they failed to investigate or provide Leary with adequate care; (2) failed to make sure Terence Leary received adequate treatment at the hospital; and (3) the university failed to conduct a proper investigation into Leary's mental history. Additionally, in count two of his complaint, the plaintiff alleges that the defendant breached its fiduciary duty to Terence Leary.

In its Answer the University denied the allegations of negligence, as well as the allegation that it was in a fiduciary relationship with Terence which it breached. In its special defenses the University asserted that (1) the plaintiff's damages resulted from intentional acts on the part of Terence Leary; and (2) the plaintiff's recovery is barred or should be reduced because Terence Leary's injuries were proximately caused by his own negligence

A. Motion For Summary Judgment Standard

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 3 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

Practice Book § 17-49 provides that "judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Provencher v. Enfield,* 284 Conn. 772, 790-91, 936 A.2d 625 (2007). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Buell Industries, Inc. v. Greater New York Mutual Ins. Co.,* 259 Conn. 527, 556, 791 A.2d 489 (2002).

**\*2** Additionally, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) *Fogarty v. Rashaw,* 193 Conn. 442, 446, 476 A.2d 582 (1984). "Summary judgment procedure is especially ill-adapted to negligence cases, where ... the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation ... [T]he conclusion of negligence is necessarily one of fact ..." (Internal quotation marks omitted.) *Michaud v. Gurney,* 168 Conn. 431, 434, 362 A.2d 857 (1975). Nevertheless, "[t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." (Internal quotation marks omitted.) *Mozeleski v. Thomas,* 76 Conn.App. 287, 290, 818 A.2d 893, cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003). "[O]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *Neuhaus v. Decholnoky,* 280 Conn. 190, 217, 905 A.2d 1135 (2006).

B. Duty of Care

1. Special Relationship

The University seems to first argue that it is entitled to summary judgment as to count one in that it does not have a duty to protect the plaintiff's decedent because generally, under Connecticut law, absent a special relationship, there is no duty to protect an individual from self-harm. In other words, the defendant asserts that in suicide cases, as a matter of law, liability can only be found if a special relationship exists between the two parties. Thus, the defendant characterizes the duty in the present case as one of a duty to protect the plaintiff's decedent from self-harm. Based on its conclusion, the defendant further argues that in the present case, the plaintiff has failed to demonstrate that such a relationship existed between Terence Leary and the defendant. The defendant next argues that it is also not liable because Leary's suicide was not foreseeable, and foreseeability is a necessary component in finding a duty.

The plaintiff counters that while the defendant may not have a duty to prevent all possible harms, by the same token, because the defendant undertook to provide services to Terence Leary, it was required to exercise reasonable care in providing those services. Thus, the plaintiff characterizes the duty in the present case as the duty to perform voluntary services reasonably, once those services have been rendered to aid an individual. In support of his contention, the plaintiff specifically cites to 2 Restatement (Second), Torts, Negligent Performance Undertaking to Render Services § 323, p. 135 (1965), and 2 Restatement (Second), Torts, Duty of One Who Takes Charge of Another Who is Helpless, § 324, p. 139 (1965).

**\*3** Further, the plaintiff argues that, contrary to the defendant's assertion, a special relationship did exist between Terence Leary and the defendant because the defendant had custody or control over him. Finally, the plaintiff argues that the circumstances of this case give rise to a duty under the basic common-law test for duty because Terence Leary's suicide was foreseeable, and imposing a duty would not violate public policy. The defendant counters that the plaintiff's analysis and the Restatement provisions he cites are inapplicable here because, as a matter of law, in cases concerning suicide, a plaintiff must show a specific duty on the part of the defendant to prevent the suicide, and that specific duty can only be shown by proving the existence of a special relationship, which the plaintiff has not done.

Our Supreme Court has addressed the issue of suicide in a negligence action. In *Edwards v. Tardif,* 240 Conn. 610, 692 A.2d 1266 (1997), the Supreme Court concluded that a physician could be held liable for a patient's suicidal overdose after prescribing her a depression medication over the phone without seeing her in person. The court noted that generally "negligence actions seeking damages for the suicide of another will not lie because the act of suicide is considered

Case 1:21-cv-00868-AT Document 36-2 Filed 01/31/22 Page 4 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

a deliberate, intentional and intervening act which precludes a finding that a given defendant, in fact, is responsible for the harm." (Internal quotation marks omitted.) *Id.,* at 615, 692 A.2d 1266. The court went on to say, however, that in cases where suicide is foreseeable, as in the case before it, a party could be held liable for a decedent's suicide. *Id.,* at 616, 692 A.2d 1266. The court concluded that "[a]ccordingly, we hold that a physician may be liable for a patient's suicide when the physician knew or reasonably should have known of the risk of suicide and the physician's failure to render adequate care and treatment proximately causes the patient's suicide." *Id.,* at 618, 692 A.2d 1266.

The court declined to frame the issue in terms of a duty to prevent suicide because it reasoned such a view would be overinclusive, making physicians liable in all circumstances, regardless of whether their actions adequately met the appropriate standard of care. The court also refused to conclude that a physician would only be liable for a patient's suicide in cases in which the patient was in the physician's custody. The court concluded the appropriate inquiry "is whether a defendant failed to provide reasonable treatment for the patient and that failure proximately resulted in the patient taking his or her life." *Id.* The court reasoned that it would be underinclusive to only hold those physicians who had physical custody of a patient liable for a patient's suicide because it would allow other physicians who provided treatment below the standard of care required by physicians in such a field to escape liability. Thus, *Edwards* is not instructive as to the matter before the court because it does not suggest that a duty in suicide cases will only arise on the basis of special relationship, or that there must be a custodial relationship in order for one individual to be held liable for suicide of another.

*4 *Edwards* is a case that defines a standard of care for medical malpractice. Even if the court were to adopt the defendant's assertion that this case concerns whether the defendant had a duty to protect an individual from self-harm, clearly a genuine issue of fact would exist as to whether the defendant's public safety officers exercised custody or control over Terence Leary, thereby giving rise to a special relationship, which in turn, would implicate a duty of care.

The duty to protect implicates the policy analysis prong of the duty test. *Murdock v. Croughwell,* 268 Conn. 559, 566, 848 A.2d 363 (2004). "With respect to the second ... namely, the policy analysis, there generally is no duty that obligates one party to aid or to protect another party." (Internal quotation marks omitted.) *Id.;* see also *Ryan Transportation, Inc. v. M & G Associates,* 266 Conn. 520, 526, 832 A.2d 1180; 2 Restatement (Second), Torts § 314, p. 116 (1965). "One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty or aid to protect another." (Internal quotation marks omitted.) *Ryan Transportation Inc. v. M & G Associates, supra,* at 526, 832 A.2d 1180. Thus, "[in the absence of] *a special relationship of custody or control,* there is no duty to protect a third person from the conduct of another." (Emphasis in original; internal quotation marks omitted.) *Id.* [1] A "duty arises particularly in special relationships where the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare." (Internal quotation marks omitted.) *Coville v. Liberty Mutual Ins. Co.,* 57 Conn.App. 275, 281, 748 A.2d 875, cert. granted, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn, March 30, 2001).

The Appellate Court addressed the issue of what constitutes a relationship of custody or control in *Coville v. Liberty Mutual Ins. Co., supra,* 57 Conn.App. at 281-82, 748 A.2d 875. In that case, the court concluded that the trial court erred when it did not instruct the jury as to whether the defendant could be found to have assumed the duty to protect the plaintiff because of a special relationship that arose out of the defendant's custody and control of the plaintiff. In *Coville,* the defendant carried the semi-conscious plaintiff, placed her in his truck, and forced her to remain inside by closing the door each time she attempted to open it. The court concluded that based on the evidence, the jury could have found that the defendant took custody and control of the plaintiff, thereby creating a special relationship giving rise to a duty to protect her. *Id.* On the other hand, in *Marek v. Going,* 66 Conn.App. 557, 563, 785 A.2d 248 (2001), cert. denied, 259 Conn. 909, 789 A.2d 995 (2002), the court declined to find the existence of special relationship where the plaintiff voluntarily stepped into the bucket of a backhoe and refused to remove herself from the bucket at the defendant's request. The court noted that defendant did not take custody of the plaintiff by putting the plaintiff in the bucket, rather, the plaintiff voluntarily stepped into the bucket. The court also noted that the defendant did not want the plaintiff in the bucket, repeatedly yelled at her to get out of it, and on several occasions lowered the bucket so that she could step out.

Case 1:21-cv-00868-AT Document 36-2 Filed 01/31/22 Page 5 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

**\*5** The defendant argues that the plaintiff cannot show a special relationship because such a relationship cannot arise based on the mere fact that Terence Leary was a student. According to the defendant, the only way the plaintiff can satisfy the special relationship test, specifically in this case concerning suicide, is to show that the defendant exercised custody or control over Terence Leary. The defendant further argues that it never had custody or control of Terence Leary. In support of this assertion, it points to the uncertified deposition [2] testimony of the plaintiff's security expert, Robert Dowling, in which Dowling states that he did not believe Leary was in legal custody. [3] The defendant also argues that the undisputed facts in the present case do not give rise to a custodial relationship as a matter of law. It argues that because Terence Leary voluntarily contacted the defendant's public safety officers and went with the officers voluntarily, this court cannot find as a matter law that the defendant assumed custody or control over him. The plaintiff counters that the defendant's public safety officers took custody or control of Terence Leary. In support of this contention the plaintiff argues that the officers' status as police officers created the perception that they controlled the situation. The plaintiff also points to Dowling's deposition testimony, [4] in which Dowling describes that the defendant's public safety officers could have justifiably prohibited Leary from leaving their care until he received medical attention. [5]

The court finds that a material fact exists as to whether Terence Leary was in the custody or control of the defendant's public safety officers. In his deposition, Dowling concludes that Leary was not in the legal custody of the public safety officers but, he also states that the officers could have prohibited Terence Leary from leaving (the hospital) before he received medical attention. Although Terence Leary, like the plaintiff in *Marek,* went with the public safety officers on his own volition, unlike the plaintiff in *Marek,* who had numerous chances to leave, in the present case there remains an issue of fact as to whether Leary was free to leave. Moreover, given the issues regarding his mental state, Terence Leary, like the plaintiff in *Coville,* may not have had the capacity to assume control over himself. Where "the existence of the duty or its absence ... hinges on what the facts are, and if in dispute, a summary judgment ought not rest on the unsettled foundation." *McGuire v. Derby Savings Bank,* Superior Court, judicial district of Ansonia-Milford at Derby, Docket No. CV 97 0056878 (April 25, 2002, Nadeau, J.). [6]

2. Duty Under §§ 323 & 324 of
the Restatement (Second) of Torts

The plaintiff asserts that because the defendant undertook to provide services to Leary, it assumed a duty pursuant to *Coville v. Liberty Mutual Ins. Co., supra,* 57 Conn.App. at 275, 748 A.2d 875 and §§ 323 and 324 of the Restatement (Second) of Torts. The defendant argues that these provisions are inapplicable because, in suicide cases, a duty can only arise in two ways; (1) where a defendant exercises custody or control, or (2) in a non-custodial professional relationship, where the defendant is deemed to have special training and expertise enabling it to detect mental illness. See *McLaughlin v. Sullivan,* 123 N.H. 335, 338, 461 A.2d 123 (1983).

**\*6** The defendant's argument is not persuasive for three reasons. First, the defendant cites *Edwards v. Tardif, supra,* 240 Conn. at 610, 692 A.2d 1266, to support its claim that duty can only arise on the basis of special relationship or non-professional custodial relationship. As stated above, *Edwards* is not illuminating on this issue because in that case, the court limited its analysis to proximate cause and declined to frame the issue in the case as whether the defendant had a special relationship with his patient that gave rise to a duty to prevent her suicide. Second, the Restatement provisions are not at odds with the special relationship doctrine. The Appellate Court has concluded that a "duty arises particularly in special relationships where the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who correspondingly, holds considerable power over the plaintiff's welfare." (Internal quotation marks omitted.) *Coville v. Liberty Mutual Ins. Co., supra,* 57 Conn.App. at 275, 281, 748 A.2d 875. In cases in which a person is held liable for gratuitously undertaking to render services to another, the liability is based on the control that the individual has in the circumstances, and the power that he assumes over the plaintiff's welfare. *McClure v. Fairfield University,* Superior Court, judicial district of Waterbury, Docket No. CV 000159028 (June 19, 2003, Gallagher, J.) (35 Conn. L. Rptr. 169) ("[I]f one takes charge and control of [a] situation, he is regarded as entering into a relation which is attenuated with responsibility"). Indeed, courts in other jurisdictions have classified the duty to act when one gratuitously renders services as a special relationship that gives rise to a duty to protect. *Berke v.*

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 6 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

*Johnson,* 742 N.W.2d 660, 665 (2007); see also 31 Causes of Action 2d 675 (2008) (characterizing relationship of protector and protectorate as a special relationship). Third, courts in other jurisdictions have applied these provisions in suicide cases, and, notably, have not concluded that they were inappropriate in such cases. See *Bogust v. Iverson,* 102 N.W.2d 228, 10 Wis.2d 129 (1960); *Jain v. State,* 617 N.W.2d 293 (Iowa 2000).

Section § 323 of the Restatement (Second) of Torts provides: "One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." 2 Restatement (Second), *supra,* § at 323. The rationale behind the rule is that "[i]f there is no duty to go the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse." W. Prosser & W. Keeton, Torts (5th Ed.1984). "[I]f one takes charge and control of [a] situation, he is regarded as entering into a relation which is attenuated with responsibility." (Internal quotation marks omitted.) *McClure v. Fairfield University, supra,* 35 Conn. L. Rptr. at 169. Although, our appellate courts have not explicitly adopted § 323 of the Restatement, they have held that person "who gratuitously undertakes [to perform] an act will be liable for performing it negligently." *Coville v. Liberty Mutual Ins. Co., supra,* 57 Conn.App. at 281, 748 A.2d 875; see also *Zaktin v. Katz,* 126 Conn. 445, 450, 11 A.2d 843 (1940). Superior Courts have also specifically applied § 323, in circumstances in which the defendant has provided emergency services. *Pacello v. Wyndham International, Inc.,* Superior Court, judicial district of New Haven, Docket No. CV 03 0477014 (April 7, 2006, Silbert, J.) (41 Conn. L. Rptr. 193); see also *McClure v. Fairfield University, supra,* 35 Conn. L. Rptr. at 169.

*7 Outside the context of suicide, courts in this and other jurisdictions have imposed a duty upon universities to reasonably render voluntary services under § 323. In *McClure v. Fairfield University, supra,* 35 Conn. L. Rptr. at 169, one judge of the Superior Court determined that in undertaking to provide safe rides to its students who were traveling to parties off campus, the defendant university assumed a duty to protect those students as they traveled to and from those parties. Other jurisdictions have also reached similar conclusions. In *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331, 336 (1983), the Supreme Judicial Court of Massachusetts held that a college had assumed a duty to protect the plaintiff student from the criminal acts of a third party. The court concluded that because the university provided security to its students and because the students relied on this service, the university had assumed a duty to "use reasonable care to prevent injury to the students by third persons whether their acts were accidental, negligent, or intentional." (Internal quotation marks omitted.) *Id.,* at 337. In *Furek v. University of Delaware,* 594 A.2d 506, 520 (1991), the Supreme Court of Delaware concluded that a university assumed a duty to protect a student injured who was injured in a hazing ritual by adopting policies against hazing and sending the students reminder notices about the university's no tolerance stance on hazing. See also *Davidson v. University of North Carolina at Chapel Hill,* 142 N.C.App. 544, 543 S.E.2d 920, 929 (2001) (finding university owed duty to cheerleader injured in cheerleading accident because it voluntary undertook to advise and educate cheerleaders regarding safety).

The defendant further argues that this provision is inapplicable because the risk of harm to Terence Leary was not increased by the defendant's actions. The defendant does not offer any evidence in support of this assertion. It is well settled that "[m]ere assertions of fact ... are insufficient to establish the existence of a material fact" and therefore the defendant has not satisfied its burden of establishing the non-existence of a material fact. (Internal quotation marks omitted.) *Zielinski v. Kotsoris, supra,* 279 Conn. at 319, 901 A.2d 1207. The plaintiff, on the other hand, adduces detailed evidence establishing that defendant, similar to the defendants in *Mullins* and *McClure,* undertook to provide emergency services to its students. The evidence shows that the defendant provided the students with the emergency number of its public safety office (Ex. 1, p. 21), that the role of the defendant's public safety officers was to respond to emergencies, and that the officers did respond to Leary's emergency (Bostick Deposition p. 53). The plaintiff also introduces evidence that the actions of the public safety officers increased the risk of harm to Leary and that the harm he suffered was because of his reliance upon public safety. Specially, an affidavit by their expert, Dr. Michael D'Ambrosio, indicates that if the public safety officers had called the emergency medical services agency then that would

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 7 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

have assured that Leary was seen by a doctor. (D'Ambrosio Affidavit, ¶ 7.)

**\*8** Section 324 of the Restatement (Second), provides in relevant part that: "[o]ne who, being under no duty to do so, takes charge another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety the other while within the actor's charge." 2 Restatement (Second) *supra*, § at 324. "The rule stated in this section is applicable whenever one takes charge of another who is unable of taking adequate care of himself. It applies equally where the other is rendered helpless by his own conduct, by the tortious or innocent conduct of the actor, or by other causes, as where the actor takes charge of one who is helpless by the act of third person ." *Id.,* § at 324, comment (b).

Although our appellate courts have not explicitly adopted § 324 of the Restatement, they have acknowledged that it is "consistent with the recognized principle of Connecticut law that one who gratuitously undertakes an act will be held liable for performing it negligently." *Coville v. Liberty Mutual Insurance Co., supra,* 57 Conn.App. at 281, 748 A.2d 875. Indeed, in *Coville,* the Appellate Court concluded that the trial court erred in not incorporating the provision into the instructions it gave to the jury. As stated above, *Coville* involved a defendant who carried and placed an intoxicated, semi-conscious plaintiff in his truck. The court concluded that the jury could have found that as a result of her intoxication, the plaintiff was helpless and the defendant's actions were indicative his taking custody or control of her. The court again applied this provision, in *Marek v. Going, supra,* 66 Conn.App. at 562, 785 A.2d 248. There, the court concluded that liability could not be found under § 324 because the plaintiff, who voluntarily stepped in the bucket of a backhoe, had failed to show that she was helpless when she stepped into the bucket of the backhoe in that she did not produce any evidence that she was intoxicated. *Id.* The court recognized that after the plaintiff stepped into the backhoe, she might have become helpless, but under § 324, she was required to show that she was helpless before the defendant took control over her. *Id.*

In a footnote in its reply memorandum, the defendant argues that the plaintiff cannot prevail under this argument because he has not introduced any evidence indicating that Terence Leary was in fact helpless. The defendant again offers no evidence in support of this assertion. As stated above, "[s]uch assertions are insufficient regardless of whether they are contained in a complaint or a brief." (Internal quotation marks omitted.) *McKinney v. Chapman,* 103 Conn.App. 446, 451, 929 A.2d 355, cert. denied, 284 Conn. 928, 934 A.2d 243 (2007).

### 3. Foreseeability

In determining whether a duty exists, the court must also determine whether Terence Leary's suicide was foreseeable to the defendant. The defendant argues that Terence Leary's suicide was not foreseeable because he made no threats of suicide on the night in question, and neither his friends nor his mother believed he was a threat to himself. In support of this argument the defendant points to the uncertified deposition testimony [7] of his two friends, Jesse Levitt and Alexander Brooks, and his mother, Marian Leary. In his deposition, Levitt states that he did not believe on the night in question that Leary was going to hurt himself, and that Leary had never done anything prior to that night to lead Levitt to believe that Leary was going to hurt himself. (Levitt Deposition p. 51-52.) In his deposition, Brooks states that nothing led him to believe that on the night in question that Leary was going to hurt himself. (Brooks Deposition p. 49.) In her deposition, Marian Leary states that Leary had never threatened to hurt himself. (Leary Deposition pp. 57-58.) The defendant further contends that the plaintiff's argument that Leary's suicide was a foreseeable risk of another allegedly foreseeable condition, such as a mental health emergency, is too attenuated to be considered reasonably foreseeable. Furthermore, the defendant contends that self-harm is only a foreseeable risk of a mental health emergency to mental health professionals, as opposed to the ordinary person in the defendant's position. In support of this assertion, the defendant cites the deposition testimony of Douglas Jacobs, the plaintiff's suicide expert, in which he states that self-harm is a foreseeable risk of a psychiatric emergency only to mental health professionals. (Jacobs Deposition Part II pp. 98-99.)

**\*9** The plaintiff argues that (1) the defendant should have known that suicide was foreseeable consequence of Leary's mental health crisis; and (2) the defendant had actual knowledge that the self-harm was foreseeable. In support of his argument, the plaintiff offers evidence that Leary called the emergency line at 1:00 a.m., described that he was having an anxiety attack, and stated "It's really getting to the point where [he] could no longer function." (Transcript of Public

Case 1:21-cv-00868-AT  Document 36-2  Filed 01/31/22  Page 8 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

Safety Dispatch, Exhibit 16.) The plaintiff argues that, based on this evidence, the defendant's public safety officials should have known that Leary was in a mental health crisis and posed a risk to himself. In support of his first argument, the plaintiff points to the affidavit of his security expert, Dowling (Dowling Affidavit ¶¶ 9, 17), in which he stated that based on these facts, the public safety officers should have recognized that Leary was in a mental crisis and could have been harmful to himself.[8] In support of his second argument the plaintiff points to provisions of the defendant's public policy manual addressing mental health crises. The manual provides that in mental health emergencies, "[e]xperience shows it is important to remain very alert, since the student may run and try to harm himself or others ..." (Wesleyan University Office of Public Safety Policies and Procedures Manual, Exhibit 1, p. 57.) It further provides that in mental health emergencies, the role of Public Safety is to insure that the student does not pose a risk of harm to himself or others. (Wesleyan University Office of Public Safety Policies and Procedures Manual, Exhibit 1, p. 56.) The plaintiff maintains that these protocols show that the university was aware that suicide was foreseeable in students with mental health issues.

Foreseeability involves "a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result ..." (Internal quotation marks omitted.) *Lodge v. Arett Sales Corp., supra,* 246 Conn. at 572, 717 A.2d 215. "[O]nly the general nature of the harm" need be foreseeable. (Internal quotation marks omitted.) *Id.* "In defining the limits of duty, we have recognized that [w]hat is relevant ... is the ... attenuation between [the defendant's] conduct, on the one hand, and the consequences to the identity of the plaintiff, on the other hand." (Internal quotation marks omitted.) *Id.,* at 575, 717 A.2d 215. "Articulated another way, the attenuation between the plaintiffs' harm and the defendants' conduct is nothing more than a determination of whether the harm was a reasonably foreseeable consequence of the defendants' conduct." *Id.,* at 574-75, 717 A.2d 215. "[A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable." (Internal quotation marks omitted.) *Id.,* at 575, 717 A.2d 215. "Due care is always predicated on the existing circumstances." (Internal quotation marks omitted.) *Id.* "[I]f it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." *RK Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 385-86, 650 A.2d 153 (1994).

**\*10** In Superior Court cases and cases from other jurisdictions concerning suicide, foreseeability has only been found where overt threats of suicide are made. *Thomes v. Duong,* Superior Court, judicial district of Hartford, Docket No. CV 05 5001223 (March 12, 2008, Bentivegna, J.); see also *Lindsay v. Benevolent Protective Order of the Elks # 967,* Superior Court, judicial district of Waterbury, Docket No. CV06 5000828 (December 17, 2007 Alvord, J.) (44 Conn. L. Rptr. 555) (suicide not foreseeable despite plaintiff's allegations that defendant bartender knew plaintiff was depressed); see also *Schieszler v. Ferrum College,* 236 F.Sup.2d 602, 609-10 (W.D.Va.2002). In contrast, in *Edwards v. Tardif, supra,* 240 Conn. at 622, 692 A.2d 1266, the Supreme Court found that a patient's suicide was foreseeable, even though no evidence was introduced that the patient made overt threats of suicide. The court found that the jury could have reasonably concluded, based on expert testimony, that suicide was a known symptom of depression. *Id.* Additionally, in cases imposing a duty upon a university to its students where that duty stems from its voluntary rendering of services, foreseeability often is found where the university has either adopted protocols addressing the harm that has occurred or has undertaken in some way to prevent the specific harm from occurring. *McClure v. Fairfield University, supra,* 35 Conn. L. Rptr. at 169 (university had knowledge of student drinking and that drinking took place at off-campus location as evidenced by fact that it undertook to provide students with safe rides); *Furek v. University of Delaware,* 594 A.2d 506, 520 (Del.1991) (university had knowledge that injury was likely because it had adopted policies against hazing and sent reminder notices about its no tolerance stance on hazing); *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331, 336 (1983) (university's adoption of security measures supported conclusion that rape on campus was foreseeable).

The court finds that a genuine issue of fact exists as to whether Terence Leary's suicide was foreseeable to the defendant. Jacobs, the plaintiff's mental health expert, stated that Terence Leary's suicide would not be foreseeable to non-professionals; however, Dowling, the plaintiff's security expert, stated that suicide would be foreseeable to the public

Case 1:21-cv-00868-AT Document 36-2 Filed 01/31/22 Page 9 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

safety officers under the circumstances of the case. More importantly, the defendant's policies provided evidence that the defendant was aware that suicide was a general risk, when dealing with an individual who was in mental distress, and the plaintiff provided evidence that Leary was suffering from mental distress at the time he made the call. Thus, the defendant has not met its burden of establishing the absence of genuine issues of material fact.

### C. Breach of Fiduciary Duty

The University asserts that it is entitled to summary judgment as to count two because, as matter of law the facts of the case do not give rise to a fiduciary duty between itself and Terence Leary. According to the University Terence Leary's status as a student does not give rise to fiduciary duty, and the plaintiff is required to show that the relationship it had with him was something more than the traditional university-student relationship. Specifically, the University argues that the plaintiff cannot show that Terence Leary placed his trust in the defendant's public safety officers and that they, in turn, had control or influence over him. The plaintiff counters that he has shown that the relationship between the defendant and Terence Leary was something more than a university-student relationship. The plaintiff also argues that the public safety officers exercised control over Terence Leary and he depended upon them.

**\*11** To assert a claim for breach of a fiduciary duty the plaintiff must prove the existence of a fiduciary relationship. See *Murphy v. Wakelee,* 247 Conn. 396, 400, 721 A.2d 1181 (1998). "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." (Internal quotation marks omitted.) *Biller Associates v. Peterken,* 269 Conn. 716, 723, 849 A.2d 847 (2004). "[E]quity has carefully refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations ... Simply classifying a party as a fiduciary inadequately characterizes the nature of the relationship." (Citation omitted; internal quotation marks omitted .) *Konover Development Corp. v. Zeller,* 228 Conn. 206, 222-23, 635 A.2d 798 (1994); see also *Alaimo v. Royer,* 188 Conn. 36, 41, 448 A.2d 207 (1982). "The law will imply [fiduciary responsibilities] only where one party to a relationship is unable to fully protect its interests [or where one party has a high degree of control over the property or subject matter of another] and the unprotected party has placed its trust and confidence in the other." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 761 A.2d 1268 (2000).

The Connecticut Supreme Court has specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, "choosing to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other ... The Connecticut Supreme Court has also recognized that not all business relationships implicate the duty of a fiduciary." (Citations omitted; internal quotation marks omitted.) *New Hartford v. Connecticut Resources Recovery,* Superior Court, complex litigation docket at Waterbury, Docket No. UWY CV 04 0185580 (June 19, 2005, Eveleigh, J.).

"[U]nder Connecticut law, a fiduciary or confidential relationship is broadly defined as a relationship that is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) *Ahern v. Kappalumakkel,* 97 Conn.App. 189, 194, 903 A.2d 266 (2006). "In the seminal cases in which this court has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc., supra,* 255 Conn. at 41, 761 A.2d 1268. In *Hi-Ho Tower, Inc.,* the court noted that in cases in which it had, "as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." *Id.,* at 39, 761 A.2d 1268. In the case before it, the court concluded that the plaintiff failed to provide evidence that it had a fiduciary relationship with the defendant where "the parties were business entities that engaged in arm's length transaction, and there was no evidence that the plaintiff was unable to protect its interests ... The fact that one ... person trusts another and relies on [the person] to perform [its obligations] does not rise to the level of a confidential relationship for purposes of establishing a

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 10 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

fiduciary duty." (Internal quotation marks omitted.) *Id.,* at 41, 761 A.2d 1268.

**\*12** Research reveals that our courts have not addressed whether a university owes a fiduciary duty to a student. The federal court has addressed the issue of a fiduciary duty in the context of a university-student relationship. In *Johnson v. Schmitz,* 119 F.Sup.2d 90, 97-98 (D.Conn.2000), in addressing a university defendant's motion to dismiss, the court concluded that where a plaintiff graduate student alleged that members of his graduate dissertation advisory committee misappropriated his theories, the student properly stated a claim for breach of a fiduciary duty. The court concluded that a fiduciary relationship may exist between a graduate student and the members of his dissertation advisory committee because of the collaborative nature of the relationship between the student and a dissertation advisor who shares the same academic interests. *Id.* Other jurisdictions have also addressed breach of fiduciary claims between a university and its students. In *Schneider v. Plymouth State College,* 144 N.H. 458, 463, 744 A.2d 101 (1999), where a plaintiff university student alleged that she was subjected to sexual harassment by her college professor, the New Hampshire Supreme Court found that a fiduciary duty existed between the student and the university. In *Schneider,* the professor allegedly made several unwelcome advances toward the student and subsequently gave her lower grades when she denied his advances. *Id.,* at 460, 744 A.2d 101. The court determined that the relationship between students and professors is built on relationship of trust, and that students are in a vulnerable position because it is difficult for them to refuse unwelcome advances when their grades are at stake. *Id.,* at 462-63, 744 A.2d 101. The court reasoned that this relationship gives rise to a fiduciary duty on the part of the university to "create an environment in which the plaintiff could pursue her education free from sexual harassment by faculty members." *Id.,* at 463, 744 A.2d 101.[9]

In the present case, after Terence Leary called the defendant's public safety officers and asked that he be taken to see a doctor, the officers transported him to a hospital. While the facts of the present case may be interpreted to describe a dependent relationship, unlike the facts in *Schneider* and *Johnson,* which included acts of fraud, misconduct or misappropriation on the part of the defendants' officers, nothing in the present case indicates that defendant's officers engaged in such conduct. In *Sherwood v. Danbury Hospital,* 278 Conn. 163, 896 A.2d 777 (2006), our Supreme Court noted that "[a]lthough [it has] not expressly limited the application of these traditional principles of fiduciary duty to cases involving fraud, self-dealing, or conflict of interest, the cases [it has] invoked have involved such deviations." (Internal quotation marks omitted.) *Id.,* at 196, 896 A.2d 777.

The court finds that the facts of this case do not demonstrate the fraudulent, self-dealing or conflict of interest situations in which our Supreme Court has embraced an analysis for determining the presence of a fiduciary relationship. Furthermore, this is not a situation analogous to that of a professor taking advantage of a student. Clearly, the facts of this case do not support a finding that the University had a fiduciary relationship with Terence Leary.

### Conclusion

**\*13** For the foregoing reasons, the Motion for Summary Judgment is denied as to Count One (Negligence), and granted as to Count Two (Breach of Fiduciary Duty).

**All Citations**

Not Reported in A.2d, 2009 WL 865679, 47 Conn. L. Rptr. 340

### Footnotes

| | |
|---|---|
| 1 | Section 314 of the Restatement (Second) of Torts provides: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action," 2 Restatement (Second), Torts § 314, p. 116 (1965). |

Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 11 of 12

Leary v. Wesleyan University, Not Reported in A.2d (2009)
47 Conn. L. Rptr. 340

2 "[B]efore a document may be considered by the court in support of a motion for summary judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be ... Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." (Internal quotation marks omitted.) *New Haven v. Pantani,* 89 Conn.App. 675, 874 A.2d 849 (2005). Because the plaintiff failed to object to the defendant's use of unauthenticated evidence, and there is no dispute to their authenticity, this court will consider such documents in its determination of the motion for summary judgment. See *Mates v. Syed,* Superior Court, judicial district of Waterbury, Docket No. CV 04 4001655 (January 12, 2006, Brunetti, J.); *Farina v. Modzelewski,* Superior Court, judicial district of Ansonia-Milford, Docket No. CV 01 0075133 (November 10, 2004, Curran, J.T.R.) (38 Conn. L. Rptr. 261, 262 n. 1), aff'd, 94 Conn.App. 203, 891 A.2d 138 (2006).

3 The following exchange occurred in Dowling's deposition at p. 33, 891 A.2d 138:
   Q. [By defendant's attorney] Did any Wesleyan public safety officer have a right to take Terence Leary into custody on the morning of November 4, 2003?
   A. [By Dowling] No.

4 See note 6.

5 The following exchange occurred in Dowling's deposition at p. 72, 85 & 86, 891 A.2d 138:
   Q. [By defendant's attorney] Did Simon Bostick have the right to restrain Leary's liberty at any time the morning of November 4, 2003?
   A. [By Dowling] Not unless he tried to leave his presence.
   Q. [By defendant's attorney] Now, is it also your opinion that if Terence Leary had told Simon Bostick, while at the hospital, that Terence Leary just wanted to leave the hospital and wanted walk back to the dorm or just go off on his own, that Simon Bostick had the right to restrain Terence from leaving the hospital?
   A. [By Dowling] He had the right to keep him there ...
   Q. [By plaintiff's attorney] If Terence Leary had told Simon Bostick that he wanted to leave the hospital, did Simon Bostick have the right to block the exit?
   A. [By Dowling] Yes.

6 The defendant also argues that a special relationship cannot arise out of the specific facts of the case. A special relationship may be found in cases where a custodial relationship does not exist if the specific facts of the case give rise to a special relationship. See *Schieszler v. Ferrum College,* 236 F.Sup.2d 602 (W.D. Virginia 2002). It is submitted that the court need not address this argument because the plaintiff has shown a genuine issue of material fact exists as whether an actual custodial relationship existed.

7 See note 6.

8 The defendant argues that Dowling's deposition testimony is inadmissible because (1) duty is a question of law and expert opinions are not admissible in questions of law and (2) Dowling is not an expert in the field of mental health and therefore cannot give his opinion as to whether Leary's suicide was foreseeable. These arguments are unavailing. First, in the context of foreseeablity, courts have considered expert opinions. See *Edwards v. Tardif, supra,* 240 Conn. at 622, 692 A.2d 1266. Second, the plaintiff himself relies on Jacobs's expert testimony to establish that Leary's suicide was unforeseeable as a matter of law. Third, while admittedly Dowling is not an expert in the field of mental health, he is a qualified security expert and could give his professional opinion as to whether suicide would have been foreseeable to security officials.
   "As our Supreme Court recently articulated, [e]xpert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Sullivan v. Metro North Commuter Rail Co.,* 96 Conn.App.

**Leary v. Wesleyan University, Not Reported in A.2d (2009)**
Case 1:21-cv-00868-AT   Document 36-2   Filed 01/31/22   Page 12 of 12
47 Conn. L. Rptr. 340

| | |
|---|---|
| | 741, 746, 901 A.2d 1258, cert. granted, 280 Conn. 919, 908 A.2d 545 (2006). "The test for admissibility of the opinion of an expert witness is whether the expert knows the applicable standard of care and can evaluate the defendant's conduct, given that standard ..." (Internal quotation marks omitted.) *Id.* |
| 9 | The following quotation from *Schneider v. Plymouth State College, supra,* is instructive. "In the context of sexual harassment by faculty members, the relationship between a post-secondary institution and its students is a fiduciary one. Cf. Schneider, Sexual Harassment and Higher Education, 65 Tex.L.Rev. 525, 552 (1987). Students are in a vulnerable situation because "the power differential between faculty and students ... makes it difficult for [students] to refuse unwelcome advances and also provides the basis for negative sanctions against those who do refuse." Bogart & Stein, Breaking the Silence: Page 463 Sexual Harassment in Education, 64 Peabody J.Educ. 146, 157 (1987); cf. M. Paludi, Sexual Harassment on College Campuses: Abusing the Ivory Power 85-87 (1990)Power 85-87 (1990) (discussing student-professor power differential and role in sexual harassment). [2] When the plaintiff enrolled at PSC, she became dependent on the defendants for her education, thereby requiring them "to act in good faith and with due regard" for her interests. *Lash,* 124 N.H. at 439, 474 A.2d at 982. The relationship between students and those that teach them is built on a professional relationship of trust and deference, rarely seen outside the academic community. As a result, we conclude that this relationship gives rise to a fiduciary duty on behalf of the defendants to create an environment in which the plaintiff could pursue her education free from sexual harassment by faculty members. *Id.,* at 462-63, 474 A.2d 980. |

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    11