**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| TIEQIAO ("TIM") ZHANG, Individually, and as the Independent Administrator of the Estate of ALBERT LIANG (a/k/a ALBERT ZHANG and f/k/a LIANGSHENG ZHANG), deceased; and JING ("LINDA") LIANG, | ) ) ) ) ) | NO.: 1:21-cv-00868-AT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| EMORY UNIVERSITY; | ) | |
| Defendant. | | |

_____

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Pursuant to the Court's Order of March 8, 2022 (Dkt. 41), counsel for Plaintiffs and Defendants hereby submit this Joint Preliminary Report and Discovery Plan, in accordance with the local procedures of this Court and Federal Rule of Civil Procedure 26(f). The initial conference took place on March 15, 2022, at which counsel for all parties were present.

**1. Description of Case**

**(a) Describe briefly the nature of this action.**

*This is an action between the survivors of Albert Liang ("Albert") against Emory University ("Defendant" or "Emory") for wrongful death, alleging claims for negligence and gross negligence.*

**(b) Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**Plaintiffs' Response:** *Albert was a minor student of Defendant Emory University who died by suicide in August of 2019. The Plaintiffs allege that Defendant was negligent and grossly negligent in its conduct leading to Albert's suicide, such that this conduct breached duties to Albert and contributed to the circumstances leading to his death. Albert's survivors seek damages from Defendant arising out of his death.*

**Defendant's Response:** Plaintiffs' son Albert, the decedent, was an undergraduate student enrolled at Emory and a sophomore at the time of his death by suicide. On March 30, 2018, with the written consent of Plaintiff Liang (Albert's mother), as Albert was a minor (his date of birth was October 21, 2001), Albert accepted admission to Emory as well as membership in the Emory Scholars Program, and the accompanying Robert W. Woodruff merit scholarship award (Plaintiff Liang's written consent also included a waiver of all liability for injuries

or death resulting from participation in the Emory Scholars Program). The Robert W. Woodruff merit scholarship awarded to Albert included full tuition, fees, and the average room and board costs and was renewable for seven regular academic semesters (fall and spring) of undergraduate study at Emory.

Albert thereafter matriculated at Emory in August 2018 at the age of sixteen. Throughout his first year at Emory, Albert, like all scholars, was assigned to an advisor, who at the time was an Assistant Director for the Emory Scholars Program. At no time during any interactions with his advisor did Albert ever communicate he was contemplating suicide or harming himself, or that he was otherwise experiencing any mental health issues. To the contrary, Albert did well academically his freshman year, achieving a 3.943 GPA; he also held leadership positions in multiple student organizations and contributed to the community through volunteer work in the Federal Defender program. Albert had also indicated during an individual advising meeting that he had planned out his course selection for his entire four years at Emory.

After the completion of his first year at Emory, Albert remained in Atlanta, Georgia, as he had applied for and was accepted to the Emory Scholar Program's Scholarship and Service ("SAS") Summer Program, which ran from May 19, 2019,

to July 27, 2019. Prior to the SAS Summer Program and continuing as part of the SAS Summer Program, Albert participated in an internship for a professor at Emory Rollins School of Public Health, focusing on health policy research. On June 6, 2019, Albert attended an initial consultation at Emory's Counseling & Psychological Services ("CAPS"), but he declined case assignment and treatment due to CAPS' policy requiring parental consent for treatment of minors. CAPS written policy requires a therapist to disclose, without the client's consent, confidential client information if the therapist has reasonable cause to believe a client presents a danger to himself/herself or others. Based on the initial consultation with Albert, CAPS did not find that Albert posed a danger to himself or others and therefore no such disclosure was made.

After the SAS Summer Program concluded, Albert continued to reside off-campus in Atlanta with his girlfriend at the time, another Emory student in the same year/class as Albert, and Albert continued to participate in his research internship. Particularly as Albert's advisor also acted as the director of the SAS Summer Program, he and Albert continued to have occasional group and individual interactions throughout the summer. At no time during any such interactions over the summer of 2019 did Albert ever communicate to his advisor

that he was contemplating suicide or harming himself, or that he was otherwise experiencing any mental health issues.

Around August 2019, Albert and his girlfriend broke up. A few days after the breakup, in August 2019, Albert reached out to his advisor to express an interest in assisting his advisor with future speechwriting. And on the evening of August 20, 2019, Albert emailed his internship professor that he would be unable to make a meeting because "[a] recent unfortunate series of events has caused me to become temporarily homeless myself (ironic, I know). I will be fine and I do have place to stay, but I just don't think I'll be able to make the meeting tomorrow. Could I get back to you later in the week to find another time." The professor responded the following morning, August 21, 2019, stating, "No problem, I hope everything is OK. No rush on meeting-let's wait until you have something written up that we can discuss. Keep us posted and let us know if anything would be helpful."

On August 25, 2019, Albert moved into his assigned fall semester Emory on-campus housing. On or around August 26, 2019, per Albert's request, Albert had a meeting with his aforementioned Scholars Program advisor at which time Albert indicated he saw something about Title IX on his then ex-girlfriend's

calendar. On August 28, 2019, Albert received an email notification from Emory's Title IX Coordinator of a Title IX complaint (and a no-contact order) submitted by his then ex-girlfriend alleging that Albert may have violated the Emory University Sexual Misconduct Policy, specifically domestic and dating violence during the summer of 2019. The notification explained that Albert "may have an advisor of your choice to accompany you to any meetings and advise you throughout the process"; that "[b]ecause you are a minor, we would encourage your parents to be involved in the process"; and provided Albert with the numbers and email of suggested resources to provide Albert with support. The email concluded with the Title IX Coordinator asking to speak with Albert about the complaint, the sexual misconduct process, his rights, available resources, and the no-contact order, and she provided potential dates and times and asked Albert to provide any other times or dates. Albert did not respond to the email or otherwise to the Title IX Coordinator.

On August 30, 2019, Albert's aforementioned Scholars Program advisor received an email from Albert stating, "Please find me at this address," with the subject line of the e-mail providing an off-campus residential address. Albert's advisor traveled to the address, and when Albert did not answer the door or answer

any phone calls, the advisor called the police who arrived, forced entry, and found Albert deceased. The DeKalb County Medical Examiner later determined Albert's manner of death was by suicide.

At no time during Albert's time at Emory did Emory, or anyone within Emory's control, have knowledge or awareness that Albert possessed an intention to die by suicide, or that Albert had suicidal ideations or a suicide history. Neither Albert, his parents, nor anyone else expressed any concerns that Albert was considering suicide.

**(c) The legal issues to be tried are as follows:**

**<u>Plaintiffs' Legal Issues:</u>**

*There are several legal issues that will be tried in this action, including, but not limited to:*

> *-The existence of a special relationship and/or duty between Albert and Emory;*
>
> *-Whether Emory breached such a duty;*
>
> *-Whether Emory's breach of said duty caused damages to which Plaintiffs are entitled;*

*-Whether Emory's conduct consists of gross negligence;*

*-The amount of damages to which Plaintiffs are entitled.*

**<u>Defendant's Legal Issues:</u>**

(1) The protection of the Family Educational Rights and Privacy Act ("FERPA") to student and former student protected education records;

(2) The protection of the mental-health privilege to Albert's mental health records;

(3) Negligence, gross negligence, proximate causation, legal duty, breach of any legal duty, and damages;

(4) The existence of a special relationship between Albert and Defendant;

(5) Subject-matter jurisdiction of Plaintiffs' survival action claim;

(6) Whether Plaintiffs' claims are barred under the doctrines of contributory negligence, comparative negligence, and/or assumption of the risk;

(7) Whether Plaintiffs may be judicially estopped from asserting

their claims;

(8)     Whether Plaintiffs' claims are barred by the doctrine of release and/or informed consent;

(9)     Whether Plaintiffs forfeited their right to bring their wrongful death claim or otherwise lack standing to bring said claim;

(10)    Whether Defendant is entitled to recover any costs and attorney's fees incurred in this action insofar as Plaintiffs' allegations are objectively unreasonable, patently false, or made without reasonable inquiry.

The parties request the opportunity to present additional legal issues to the Court for its consideration if this matter progresses.

**(d) The cases listed below (include both style and action number) are:**

   **(1) Pending Related Cases:**

   None.

   **(2) Previously Adjudicated Related Cases:**

   None.

**2.  This case is complex because it possesses one or more of the features listed below (please check):**

\_\_\_\_\_ **(1) Unusually large number of parties**

**_____ (2) Unusually large number of claims or defenses**

**__X__ (3) Factual issues are exceptionally complex** (Plaintiffs' position)

**_____ (4) Greater than normal volume of evidence**

**_____ (5) Extended discovery period is needed**

**_____ (6) Problems locating or preserving evidence**

**_____ (7) Pending parallel investigations or action by government**

**__X__ (8) Multiple use of experts**

**_____ (9) Need for discovery outside United States boundaries**

**_____ (10) Existence of highly technical issues and proof**

**_____ (11) Unusually complex discovery of electronically stored information**

**Plaintiffs' Position:** While the factual issues are not necessarily "exceptionally complex", Plaintiffs recognize the complexity of the legal issues to be determined, as evidenced by the Court's Order of March 8, 2022, and have selected this factor for this reason.

**Defendant's Position:** If this case proceeds beyond Emory's motion to dismiss, multiple experts may be needed.

### 3. Counsel:

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiffs:** Richard H. Middleton, Georgia Bar No. 504912

**Defendant:** Allegra Lawrence-Hardy, Georgia Bar No. 439797

### 4. Jurisdiction:

**Is there any question regarding this court's jurisdiction?**

**Plaintiffs' Position: \_\_Yes      X  No**

**Defendant's Position:  X  Yes          \_\_ No**

**If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

**Defendant's Position:** Plaintiffs assert diversity jurisdiction under 28 U.S.C § 1332 as the basis of this Court's subject-matter jurisdiction. A question exists as to whether complete diversity exists as to Count IV of the Complaint, however. *D.R. ex rel. Igles v. Grant*, 770 F. Supp. 2d 1337, 1343 (M.D. Ga. 2011). Count IV of the Complaint is a survival action Plaintiff Zhang brings in his capacity as independent administrator of the estate of Albert (a legally different entity from Plaintiff Zhang in his individual capacity). *Smith v. Mem'l Med. Ctr., Inc.*, 208 Ga. App. 26, 27 (1993). The administrator of the estate is considered domiciled in the same state as the decedent. 28 U.S.C. § 1332(c)(2). Thus, if discovery reveals that the decedent Albert had an intention to remain in Georgia indefinitely, Albert would be considered domiciled in Georgia. *See, e.g.*, *Boyd v. Gomez*, No. 3:13-CV-873-WKW, 2014 WL 961000, at *1 (M.D. Ala. Mar. 12, 2014); *Areces Coma v. Oliva de Cuebas*, 356 F. Supp. 3d 198 (D.P.R. 2019). If Albert were domiciled

in Georgia, then by operation of the diversity statute, Plaintiff Zhang is likewise

deemed to be a Georgia citizen as the legal representative of Albert's estate, which

would destroy complete diversity and divest this Court of subject-matter

jurisdiction as to Plaintiffs' survival action. *D.R. ex rel. Igles*, 770 F. Supp. 2d at

1343.

5. **Parties to This Action:**

    (a) **The following persons are necessary parties who have not been joined:** None known.

    (b) **The following persons are improperly joined as parties:** None.

    (c) **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:** Not applicable.

    (d) **The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties and errors in the statement of a party's name.**

6. **Amendments to the Pleadings**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.**

    (a) **List separately any amendments to the pleadings that the parties anticipate will be necessary:**

*Plaintiffs anticipate that pleading amendments will be necessary in accordance with the Court's directives contained in its Order of March 8, 2022 (Dkt. 41).*

**(b)** **Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7. Filing Times For Motions:**

**All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.**

**All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).**

**(a)** *Motions to Compel:* **before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.**

**(b)** *Summary Judgment Motions:* **within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.**

**(c)** *Other Limited Motions:* **Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.**

**(d)** *Motions Objecting to Expert Testimony:* **Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.**

**8. Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not**

**appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).**

The parties do not object to initial disclosures. The parties served initial disclosures on March 22, 2022, pursuant to the Court's March 8, 2022, order, ECF No. 41, and Plaintiffs served supplemental initial disclosures on March 23, 2022.

**9. Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.**

Not at this time.

**10. Discovery Period:**

**The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

**Plaintiffs' Position:** *The current scope of discovery during a limited-discovery phase has been identified by the Court in its Order of March 8, 2022*

*(Dkt. 41). While discovery is currently limited, Plaintiff anticipates that further*
*subjects upon which discovery may be necessary after this initial phase include,*
*but are not limited to:*

> *-Albert's history before and at Emory;*
>
> *-Albert's relationship with his parents, friends, and colleagues;*
>
> *-Emory's interactions with Albert and his family members;*
>
> *-Emory's policies relating to minor students and their development;*
>
> *-Emory's policies relating to suicide prevention and their development;*
>
> *-Plaintiffs' damages.*

**Defendant's Position:** At this stage in the case, the Court has ordered only

"*limited* discovery in order to potentially gather any facts to potentially gather any

facts that speak to whether Dr. Goode or Emory were on notice that Albert was

considering suicide such that Plaintiffs can plausibly allege foreseeability sufficient

to, if true, support liability in this action." Order 26-27, ECF No. 41. Specifically,

the Court is allowing Plaintiffs to pursue interrogatories and requests for

documents related to: all of Dr. Goode's communications with or about Albert

from August 1, 2019 leading up to Albert's suicide through September 13, 2019,

approximately two weeks after, whether possessed by Emory or Dr. Goode himself

personally or professionally; all communications between Dr. Goode and the lawyer to whom he referred Albert; and other communications (not covered by attorney-client privilege) within Emory's possession that mention Albert from August 1, 2019 until September 13, 2019 (including, for example, communications from Professor Druss between August 1, 2019 and September 13, 2019). Plaintiffs are also permitted to take the deposition of Dr. Goode and a 30(b)(6) witness from Emory. The Court has also ordered Emory to produce any additional medical and mental health records or communications of Albert that have not already been provided. The Court has indicated that Plaintiffs may seek to pursue discovery on any other narrowly tailored lines of inquiry only with the Court's permission and providing specific reasoning as to why such discovery is warranted.

If this case proceeds beyond a motion to dismiss, then the following subjects are those on which discovery may be needed:

(1)    Plaintiffs' claims and allegations.

(2)    Plaintiffs' alleged injuries and damages.

(3)    Defendant's defenses.

(4)    Whether the Court has subject-matter jurisdiction over Plaintiffs' survival action.

(4)     The other legal issues identified in paragraph 1(c) of this joint preliminary report and discovery plan.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties are endeavoring to complete the limited discovery authorized by the Court by the May 9, 2022, deadline established in its Order of March 8, 2022. Written discovery was served by Plaintiffs on March 11, 2022, and deposition notices and Rule 30(b)(6) topics have been provided to Defendant.

It is the parties' current assessment that additional time will likely be necessary for two reasons. First, resolution of certain objections to discovery requests and deposition topics may require the input of the Court. Second, following Emory's collection and review of any responsive emails and/or documents, the notice provisions and rights of eligible students (which includes current and former students) under the Family Educational Records and Privacy Act (FERPA), 20 U.S.C. § 1232g, prohibit Emory from producing any documents containing a student's personally identifiable information without the student's consent or pursuant to an exception to the consent rule. While a court order is an exception to the consent rule (and the parties anticipate presenting a joint motion

for the entry of a protective order), FERPA still requires Emory to provide reasonable notice of anticipated disclosure to impacted eligible students before Emory can produce the documents to Plaintiffs. 34 C.F.R. § 99.31(a)(9)(ii).

Should additional time be necessary, the parties shall confer and make any appropriate filing with the Court.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

The parties are not proposing changes in applicable discovery limitations at this time. For further clarification, all counsel noticed in this case hereby consent in writing under Federal Rule of Civil Procedure 5(b)(2)(E) to service of all discovery materials by electronic means.

**(b) Is any party seeking discovery of electronically stored information?**

**\_\_\_\_\_X\_\_\_\_ Yes _____ No**

**If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties have conferred regarding emails and electronic document production in response to outstanding discovery requests and have agreed to the following search parameters in accordance with the Court's limited discovery order and to foster a reasonable and efficient search for electronic evidence:

**DATE RANGE:** August 1, 2019, through September 13, 2019

**CUSTODIANS:**

- Albert

- Dr. Goode

- Judith Pannell

- Individuals identified in Plaintiffs' discovery requests:

    o Benjamin Druss

    o Gregory McGonigle

    o Suzanne Onorato

    o Cathy Lally

    o Benson Steven Ku

    o Steven Culler

- CAPS personnel identified in the CAPS records of Albert and his father:

- Colleen Duffy

- Wanda Collins

- Karen Griffith

- Elizabeth Neri

**SEARCH TERMS/KEY WORDS:**

- All emails TO and FROM aliang6@emory.edu

- All emails TO and FROM albertzhang66@gmail.com

- All emails TO and FROM tim12381@gmail.com

- All emails containing these keywords: Albert w/5 (Zhang OR Liang)

- All emails containing the keyword: suicid!

- All emails containing the keywords: harm w/5 self

- All emails containing the keywords: hurt w/5 self

(2) **The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The parties have agreed that the default production in this case will be in

PDF format, and will confer to the extent native files become relevant or need to

be accessed in a different format. The parties have agreed to produce ESI through a

secure internet service (e.g., FTP site). If metadata is requested for specific materials, the parties shall cooperatively discuss the scope of the metadata production (e.g., which "fields" of metadata will be produced) and attempt to reach agreement. If they cannot reach agreement, they shall jointly seek guidance from the Court.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

The parties are conferring on the terms of a proposed confidentiality and protective order(s) under Federal Rule of Civil Procedure 26(c) (and this Court's Standing Order) that also addresses anticipated issues under FERPA relating to student and former student education records. The parties expect to stipulate to the terms and submit a consent protective order or orders for the Court's approval once agreement is reached.

**13.Settlement Potential:**

**(a) Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on March 15, 2022, and that**

they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

**For Plaintiffs: Lead counsel (signature):** *_/s/ Richard Middleton_*

**Other participants:** Alex J. Whitman, Christopher Conway.

**For Defendant: Lead counsel (signature):** _Allegra J. Lawrence_

**Other participants:** Lisa M. Haldar

**(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(____)   **A possibility of settlement before discovery.**
(____)   **A possibility of settlement after discovery.**
(____)   **A possibility of settlement, but a conference with the judge is needed.**
(____)   **No possibility of settlement.**

**Plaintiff's Position:** Plaintiff is willing to engage in settlement discussions, and

will respond to any proposal or outreach in that manner from Defendant.

**Defendant's Position:** Defendant is open to discussions and will consider any

reasonable proposal Plaintiffs submit.

**(c)     Counsel (___) do or (_X__) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is to be determined.**

**(d) The following specific problems have created a hindrance to settlement of this case:**

 None at this time.

**14.**     **Trial by Magistrate Judge:**

    **Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

    **(a) The parties (_____) do consent to having this case tried before a magistrate judge of this court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 20\_\_.**

    **(b) The parties (\_\_X\_\_\_) do not consent to having this case tried before a magistrate judge of this court.**

 _/s/ Richard H. Middleton, Jr._
Richard H. Middleton, Jr.
Georgia Bar No. 504912
58 E. Broad Street
P.O. Box 10006
Savannah, Georgia 31412
rhm@middletonfirm.com
(912) 234 1133 – Tel.
(912) 233 1750 – Fax

MILTON, LEACH,
WHITMAN, D'ANDREA
& ESLINGER, P.A.
Joshua A. Whitman
Florida Bar No. 399264
Admitted pro hac vice
3127 Atlantic Blvd
Jacksonville, Florida 32207
jwhitman@miltonleach.com
(904) 346 3800 – Tel.
(904) 346 3692 – Fax

CUNNINGHAM SWAIM, LLP
Alex J. Whitman
Texas Bar No. 24081210
Admitted pro hac vice
4015 Main Street, Suite 200
Dallas, Texas 75226
awhitman@cunninghamswaim.com
(214) 646-1495 – Tel.
(214) 613-1163 – Fax

**Allegra J. Lawrence**
Allegra J. Lawrence (Georgia Bar No. 439797)
Lisa M. Haldar (Georgia Bar No. 733508)
Rod J. Gankse (Georgia Bar No. 283819)
Attorneys for Defendant
LAWRENCE & BUNDY LLC
1180 West Peachtree Street, NW, Suite 1650
Atlanta, Georgia 30309
Telephone: (404) 400-3350
Facsimile: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
lisa.haldar@lawrencebundy.com
rod.gankse@lawrencebundy.com

*Counsel for Defendant*

Christopher Conway
Georgia Bar No. 823011
1862 Independence Square
Suite E
Dunwoody, Georgia 30338
chris@chrisconwaylaw.com
(404) 334 3311 – Tel
(404) 334 3331 – Fax

***Counsel for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This document has been prepared in Times New Roman font, 14 point.

**CONWAY LAW, LLC**

/s/ *Christopher Conway*
**CHRISTOPHER T. CONWAY**
Georgia Bar No. 823011
*Attorney for Plaintiff*