The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3    TIEQIAO (TIM) ZHANG,               :
      INDIVIDUALLY AND AS                :
 4    ADMINISTRATOR OF THE ESTATE OF     :
      ALBERT LIANG (AKA AND FKA          :
 5    LIANGSHENG ZHANG), DECEASED,       :
      AND JING (LINDA) LIANG,            :
 6                                       :
              PLAINTIFFS,                :
 7                                       :
      vs.                                :  DOCKET NUMBER
 8                                       :  1:21-CV-0868-AT
      EMORY UNIVERSITY,                  :
 9                                       :
              DEFENDANT.                 :
10

11

12        TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS

13          BEFORE THE HONORABLE AMY TOTENBERG

14          UNITED STATES DISTRICT SENIOR JUDGE

15                     JULY 6, 2022

16                      9:34 A.M.

17

18

19

20

21    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22               TRANSCRIPT PRODUCED BY:

23
      OFFICIAL COURT REPORTER:        SHANNON R. WELCH, RMR, CRR
24                                    2394 UNITED STATES COURTHOUSE
                                      75 TED TURNER DRIVE, SOUTHWEST
25                                    ATLANTA, GEORGIA  30303
                                      (404) 215-1383
```

```
1                  A P P E A R A N C E S   O F   C O U N S E L

2

3      FOR THE PLAINTIFFS:

4
           JOSHUA A. WHITMAN
5          MILTON, LEACH, WHITMAN, D'ANDREA & MILTON, P.A.

6

7      FOR THE DEFENDANT:

8
           LISA M. HALDAR
9          RODNEY J. GANSKE
           LAWRENCE & BUNDY, LLC
10

11     ON BEHALF OF THE MOVANT:

12
           ROBYN O. WEBB
13         HOFFER & WEBB

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
1                      P R O C E E D I N G S

2    (Atlanta, Fulton County, Georgia; July 6, 2022.)

3               THE COURT:  Good morning.  This is Judge Totenberg.

4               COURTROOM DEPUTY CLERK:  Morning, Judge.

5               MS. HALDAR:  Morning, Your Honor.

6               THE COURT:  Good morning.

7               COURTROOM DEPUTY CLERK:  Okay, Judge.  Right now I'm

8    showing Joshua Whitman on for the plaintiffs, Lisa Haldar and

9    Rodney Ganske for defendants, and Ms. Webb for movant.

10              THE COURT:  All right.  Very good.

11              All right.  So I have looked at the materials that

12   were sent yesterday.  And first of all, I just wanted to ask

13   the basic question:  I assume that the plaintiffs' counsel has

14   received the actual substantive Title IX charge; is that right?

15              MR. JOSHUA WHITMAN:  Yes, Your Honor.  We received

16   the email notice that was sent to Albert.

17              THE COURT:  Okay.  And it is a relatively long

18   statement -- basically description of the complainant -- what

19   the complainant was alleging; correct?

20              MR. JOSHUA WHITMAN:  Your Honor, let me identify for

21   the Court exactly what we received in that regard.

22              COURT REPORTER:  Mr. Whitman, this is the court

23   reporter, Shannon.  If you could speak up just a little bit,

24   please.  Thank you.

25              MR. JOSHUA WHITMAN:  Yes.  I'm sorry about that.
```

1    Thank you.

2              And maybe Ms. Haldar can assist me with the date of

3    the notice email that was sent to Albert.  That is the only

4    document we have.

5              MS. HALDAR:  So I can --

6              UNIDENTIFIED SPEAKER:  Go ahead, Lisa.

7              MS. HALDAR:  I believe, Mr. Whitman, you only have it

8    as a result of I believe -- correct me if I'm wrong -- having

9    access to Albert's own email before this litigation.  We have

10   not produced that document just pursuant to Jane Doe's

11   objection on that document from our end.  But I believe you

12   already have it from having access to Albert's email from

13   before the litigation.  And that would have been the week of, I

14   believe it is, August 26th or 27th.

15             MR. JOSHUA WHITMAN:  I apologize.  I'm looking for

16   that notice email.

17             THE COURT:  It is a letter that is dated Wednesday

18   the 28th and sent at 4:05:39.

19             MR. JOSHUA WHITMAN:  Yes, Your Honor.  We have that

20   document.

21             THE COURT:  Okay.

22             MS. WEBB:  This is Robin Webb on behalf of Jane Doe.

23   I believe what you are talking about is one of the ones that we

24   have objected to, Your Honor, which may be Bates-stamped

25   Number 2432.

```
 1              THE COURT:  Okay.  And three.  But you have --

 2              MS. WEBB:  Yes, Your Honor.  Yes.

 3              THE COURT:  Right.  But I want to just make sure that

 4    plaintiffs' counsel has this.  It was sent to Mr. -- to your --

 5    Albert?

 6              MR. JOSHUA WHITMAN:  Yes, Your Honor.  Yes, Your

 7    Honor, we do have that document.

 8              THE COURT:  All right.  All right.  Okay.  Well, I

 9    reviewed the other materials.  I'm going to talk about the one

10    over which the marital privilege has been independently also

11    claimed.

12              And, you know, this is obviously -- the complainant

13    discussed her experience for purposes of her Title IX

14    complaint.  And it is her perspective emotionally just as I

15    guess I have to think -- though I haven't seen anything Albert

16    must have been -- whatever he had recorded in his email as

17    well.  And then frankly any other very tangled emotional

18    relationship -- it is a very different perspective on what

19    happened between the two of them.  And they both were very

20    young.

21              But to get -- sort of jump to the bottom line, there

22    is nothing in the course -- in her transmission here that would

23    basically give notice to -- that Albert was -- would be helpful

24    or his claims (audio interference) --

25              MR. JOSHUA WHITMAN:  Your Honor, excuse me.  There is
```

1    some keyboard taping that is taking over the transmission, and

2    I'm only getting every other word.  So if we could all mute so

3    that we could hear your ruling.  I'm not able to hear it.

4              THE COURT:  I mean, I am sure that was the court

5    reporter's, I think.

6              COURT REPORTER:  It is not me, Judge.

7              THE COURT:  Not you?  Okay.

8              UNIDENTIFIED SPEAKER:  It was me.  I apologize.  I am

9    going to mute now.  My apologies.  I forget how loudly I type

10   sometimes.

11             THE COURT:  All right.  So what I was saying was that

12   just as I anticipate Albert's communication for journals about

13   the relationship or that hers -- her transmission of her

14   experience and how -- her with Albert was very much the tale of

15   a young woman entangled in a relationship and very emotional

16   and her -- and the various stages of the relationship.

17             But there is nothing that suggests that she

18   understood, much less that she indicated to Emory, that he was

19   potentially suicidal.  This is her -- her version of things.

20   And there may be obviously other versions.  But we're not

21   obviously here to determine whose version of the tales of their

22   relationship is correct or not correct.  And that would be

23   impossible at this juncture.

24             But -- and it is, you know, very sad because we have

25   two younger people who have been -- whose lives have been

1    totally altered.  And one of them who lost his life in this.

2    But that is the point relative to would this be useful in any

3    way to -- to the plaintiffs' claims in identifying -- flagging

4    for Emory that Albert had reached the point that he might be

5    suicidal.

6            Now, there is nothing here that suggests that in one

7    way at all.  And clearly they were involved in a self -- in a

8    destructive relationship between them.  And their visions of

9    what happened appear to be based on what you -- what is alleged

10   in the plaintiffs' complaint totally, quite different in some

11   respects than hers.

12           But that has nothing to do with whether or not Emory

13   was placed on notice that he was -- that Albert was potentially

14   capable of -- or imminently a threat of being suicidal or that

15   there was any indication that they were -- that he was suicidal

16   by virtue of her -- what she was writing about the

17   relationship.

18           And in many ways, the reason I started off with the

19   complaint is obviously I viewed it as essential that you

20   actually know what her allegations were.  And I don't think --

21   I think that that is probably the most important thing.  And

22   that is what the essence of her -- ultimately her concern was.

23           And I note also at the bottom of it is that

24   Dr. Pannell identified other resources available.  And I assume

25   that this is standard.  But maybe it is not.  You could ask

1    about that.

2          And I don't -- you know, I don't know whether

3    Dr. Pannell had a personal conversation or not with Albert.

4          MS. HALDAR:  Your Honor, for defendant, this is Lisa

5    Haldar.  I'm not sure if you are asking.  If you are, I can

6    clarify that he did not.  He passed away before he contacted

7    Dr. Pannell or responded in any way.

8          THE COURT:  Okay.  Yeah.  Well -- and do we have any

9    information or -- that he contacted any of the resources that

10   were expressly identified in the letter?

11         MS. HALDAR:  He did not contact any of those

12   resources, Your Honor, no.

13         THE COURT:  Okay.  Well, for all of those reasons

14   identified, I don't think that disclosure of the letter -- of

15   the complainant's statement -- further statement that was very

16   personal about the relationship and her experience is really

17   germane at this juncture or relevant.  And I will not order

18   that it be produced.

19         MS. HALDAR:  Your Honor, the defendant -- shall we

20   produce the -- I know plaintiffs already have a copy of the

21   actual complaint.  But if it is okay with Your Honor or

22   Ms. Webb, we would like to go ahead and just produce it as well

23   just so we have a Bates-labeled copy that they can ask about in

24   the deposition.

25         THE COURT:  The -- the charge itself?

```
 1              MS. HALDAR:  Yes, Your Honor.  The 8/28 at 4:05 P.M.
 2              THE COURT:  Yes.  I mean, I think that is
 3    appropriate.
 4              MS. WEBB:  Subject to the redactions that we have
 5    already discussed; right, Lisa?
 6              MS. HALDAR:  Yes.  That would be absolutely fine with
 7    us, as long as it is fine with Your Honor.
 8              THE COURT:  What are the redactions that you have
 9    discussed on this one?  Her name and anything else?
10              MS. WEBB:  Just her name and any identifying
11    information.  I believe it is just her name and not -- there
12    would be nothing else, no email.  So it would just be her name.
13              COURT REPORTER:  Who was speaking, please?  Please
14    identify yourself.  We have too many people on the call for me
15    to keep up with.
16              MS. WEBB:  My apologies.  The person asking about the
17    redactions is me, Robin Webb, on behalf of Jane Doe.
18              COURT REPORTER:  Thank you.
19              THE COURT:  I think the only other thing that you
20    might want to redact, if I can remember, is the -- I don't mind
21    having it on this phone call -- but is the -- referencing it,
22    but the club that is referenced.
23              Do you think that that -- I mean, you can say -- or
24    is that all right?
25              MS. HALDAR:  That's perfectly fine with the
```

1   defendants -- defendant.  I believe plaintiffs already know it.

2   It may be in other documents we have produced.  But we have

3   absolutely no problem redacting that as a well and find it to

4   be appropriate in that case as well.

5              COURT REPORTER:  Was that Ms. Haldar?

6              MS. HALDAR:  I'm sorry, Ms. Welch.  Yes.  That was

7   Lisa Haldar for the defendants.  My apologies.

8              MR. JOSHUA WHITMAN:  Your Honor, there has been

9   extensive documents produced referring specifically to the

10  Emory Undergraduate Medical Review Club.

11             THE COURT:  All right.

12             MR. JOSHUA WHITMAN:  So I don't think it is

13  necessary.

14             THE COURT:  All right.  That is all right.  Then

15  we'll leave it in.

16             All right.  Now, with respect to the -- to the

17  communications over which marital privilege has been asserted,

18  now I want to make -- I want to get clear about whether Emory's

19  concern is it just wants to be sure that if it produces this

20  that there will not be a waiver of the privilege?

21             MS. HALDAR:  Yes, Your Honor.  This is Lisa Haldar

22  for defendant.  That is exactly our concern.  We have no

23  problem producing it, except we just -- Dr. Goode did not want

24  his wife subject to deposition later on if this case were to

25  proceed or if they asked about anything else beyond that --

1    that single text message.

2           THE COURT:  Well, I think that is fine.

3                **(Unintelligible cross-talk)**

4           MS. HALDAR:  -- as far as his conversations with his

5    wife.

6           COURT REPORTER:  I'm sorry.  I didn't get that.

7    There were two people talking.  I didn't get you, Ms. Haldar.

8           MS. HALDAR:  I apologize.  I just -- I didn't -- I

9    think I said I didn't -- we didn't want to be asked about

10   anything else for Dr. Goode (unintelligible).  But as far as

11   anything else about personal conversations with his wife beyond

12   that text message.

13          THE COURT:  That's acceptable.  So go ahead and

14   produce the very simple communication that is at issue.  And it

15   will not -- with the understanding that it will not waive the

16   marital privilege.

17          MS. HALDAR:  Okay, Your Honor.

18          MR. JOSHUA WHITMAN:  Thank you, Your Honor.

19          THE COURT:  So I think that what that means is that

20   you could question without -- counsel, you can question

21   Dr. Goode about it, but you can't try to seek more

22   communications between Dr. Goode and his wife based on that.

23   You can explore his own view.

24          MR. JOSHUA WHITMAN:  Understood.

25          THE COURT:  Okay.  Is there anything else?

1          MS. HALDAR:  Your Honor, this is Lisa Haldar for

2    defendant.  We thank you for your time again this morning.

3          And while we have you, may we raise a follow-up

4    question from yesterday?

5          THE COURT:  Yes.

6          MS. HALDAR:  Thank you.  We conferred with plaintiffs

7    further on the scope of the amended 30(b)(6) deposition notice

8    per the Court's rulings yesterday.  And plaintiffs are working

9    on that notice to serve before Monday.

10          But in the event that the amended notice exceeds the

11   scope of the Court's limited topics, if during the 30(b)(6)

12   deposition plaintiffs repeatedly ask questions that exceed the

13   scope of the Court's limited topics, can the Court provide any

14   guidance in light of its standing order as to whether defendant

15   at that point would have permission to move for protective

16   order either before or during the course of the 30(b)(6)

17   deposition?  Or do we initiate another call to the Court and

18   opposing counsel?

19          THE COURT:  Well, hopefully, first of all, that is

20   not going to happen.  You know, I can't tell you that I'm going

21   to be available.

22          But what I would suggest is that to the extent that

23   you have -- if there are some issues, you raise them, you

24   reserve them, and then we would -- and then if you are having

25   these problems that you contact Mr. Martin and as well, just in

1  case as a backup, Ms. Boring, my law clerk.  And we try to --

2  we'll try to figure out some time during the day before the

3  deposition concludes for it to -- for you to talk with me so

4  that there is -- basically all the different issues that are --

5  have teed up at that point that I can address and you can

6  follow up with if I order that they be answered or that you be

7  allowed to explore -- that the counsel be able to explore those

8  issues but then you can continue.

9          If you hit a roadblock right from the start so you

10  can see that there is a lot of different troubles, then notify

11  them to know and we'll just try to arrange a phone call right

12  away.

13          What time is the deposition beginning?

14          MS. HALDAR:  Your Honor, it is beginning on Monday

15  the 11th at 9:30 A.M.

16          THE COURT:  All right.

17          MR. JOSHUA WHITMAN:  Your Honor, on behalf of the

18  plaintiff, I will choose my words very carefully.  But let me

19  assure the Court that there is no intention to wade outside

20  those areas that the Court has authorized.

21          THE COURT:  All right.  Well, I'm hopeful that there

22  won't be any problems.  Anyway, that would be the game plan.

23  And it doesn't mean that the game plan will work if there is a

24  problem.  But we'll hopefully -- I think that it probably will.

25          MS. HALDAR:  Thank you, Your Honor.  We appreciate

1      the guidance for defendants.

2              THE COURT:  Yeah.

3              MR. JOSHUA WHITMAN:  Your Honor, if I may, the

4      current schedule is to complete this limited discovery by

5      Thursday, July 14.  That was the last day that the Court

6      permitted on an extended basis because we both stipulated that

7      we needed some more time.

8              As the Court is aware from yesterday's hearings,

9      we're dealing with about 3500 pages of produced documents.  And

10     the depositions will conclude at the end of business on the

11     very last day permitted by the Court.

12             The Court has ruled that 15 days thereafter, which I

13     have calendared as July 29th, is the deadline for plaintiff to

14     file their amended complaint.

15             I'm just, I guess, exploring with the Court the

16     possibility of the Court being somewhat flexible in that if we

17     run into a problem with the amount of information that we have

18     to process and the fact that it won't be concluded -- we won't

19     have deposition transcripts, even expedited, for at least a few

20     days after the depositions are completed.

21             So that July 29 deadline is kind of looming large in

22     my mind because I'm going to be having the primary

23     responsibility of drafting the amended complaint.

24             THE COURT:  Well, does the -- does Emory have any

25     objection to just -- at this point just extending that time by

```
1    14 days?

2           It seems like (audio interference) having to order

3    the depositions to be done on an expedited basis and run around

4    like that since I know I can't get to this immediately.

5           MS. HALDAR:  Your Honor, for defendants, we have

6    absolutely no problem with that.

7           THE COURT:  All right.

8           MR. JOSHUA WHITMAN:  Thank you.  So I have the

9    response date now at August 15th?

10          THE COURT:  Right.  That is fine.

11          MS. HALDAR:  And we would --

12          MR. JOSHUA WHITMAN:  Thank you.

13                    (Unintelligible cross-talk)

14          MS. HALDAR:  -- just request -- we will see if we can

15   -- we request the same extension from Emory, an additional 14

16   days.  Just we will be in the middle of trial come August 15th

17   in another case.

18          THE COURT:  So what is your date then just so we

19   record --

20                    (Unintelligible cross-talk)

21          COURT REPORTER:  I'm sorry, Ms. Haldar.  You are

22   speaking on top of Judge, and I just can't get two people.

23          MS. HALDAR:  I'm so sorry, Ms. Welch.  I'm trying to

24   do the math in my head quickly.

25          MR. JOSHUA WHITMAN:  Can I suggest 30 days from the
```

1   date that the defendant receives the amended complaint?

2           MS. HALDAR:  That would be perfect, and I appreciate

3   the timing, Mr. Whitman.

4           MR. JOSHUA WHITMAN:  Okay.

5           THE COURT:  Okay.  If either of you -- if you-all

6   decide you want to modify that, that is fine too, for whatever

7   reason.  Just then file a stipulation, and I will approve it.

8           I mean, this is a delicate area.  And I realize

9   how -- how busy everybody is.  Just in light of the fact that I

10  can't get to it at least until likely until towards the end of

11  September, I'm just sort of trying to, you know, recognize

12  reality.

13          MR. JOSHUA WHITMAN:  Thank you, Your Honor.

14          MS. HALDAR:  Thank you, Your Honor.

15          THE COURT:  All right.  Well, good luck to you-all.

16  I know this is a very difficult case emotionally in many ways

17  for the various individuals who are involved.

18          And I want to just say one thing to plaintiffs'

19  counsel having -- I don't know what you are doing with

20  basically counseling the parents involved.  And I know they

21  felt it was their responsibility to bring this.  And there

22  couldn't be anything worse than the loss of a child under these

23  circumstances.

24          But it doesn't mean necessarily that the institution

25  is responsible for something that is obviously young people --

1    I can remember the most, you know -- the terrible hurt myself

2    over the suicide of several people in my life when I was of

3    that age and later on as well.

4         So, you know, there is the other counseling function

5    of a lawyer if you decide that you can see that you don't have

6    a road forward of really helping this family deal with this in

7    other ways.

8         MR. JOSHUA WHITMAN:  Your Honor, I really appreciate

9    the guidance.  And I can relay to the Court that this

10   undertaken was not done without great and deep consideration by

11   the parties and the lawyers involved, understanding the state

12   of the law and the opportunities that may or may not be

13   available for redress.

14        But with local counsel in Dallas where the family

15   lives and the help of myself and our colleague, Mr. Middleton,

16   in Georgia, there have been multiple conversations with the

17   clients overcoming some level of language barrier to try to

18   communicate to them the societal, cultural legal landscape that

19   we're dealing with.

20        And, Your Honor, we're not insensitive to the

21   emotions that have been at play on the other side in that this

22   was not an easy matter for Dr. Goode to be involved in and

23   exposed to.  And I can assure counsel and the Court that every

24   sensitivity will be employed in that regard.

25                    **(Unintelligible cross-talk)**

```
 1            THE COURT:  Go ahead.

 2            MS. HALDAR:  I'm sorry, Your Honor.  Just for

 3    defendant, I just wanted to say I thank you for -- Mr. Whitman,

 4    for appreciating that.  Because indeed it is very, very

 5    difficult for Dr. Goode.  And even for our 30(b)(6) witness, it

 6    has been a very emotional ride preparing.  So we appreciate

 7    that sentiment.

 8            THE COURT:  I think that one thing -- and I will

 9    share this.  And I think I suggested it in my -- in review of

10    the -- of the Title IX complainant's statement -- and obviously

11    it was done for another audience.  It wasn't just an internal

12    letter to herself.

13            It is such a different view of the dynamics of their

14    relationship.  And -- but that doesn't tell me anything in the

15    sense of that is -- you go to -- look at anything about the

16    movies, drama, et cetera about the dynamics of relationships.

17    People see things terribly differently.

18            But obviously it was not -- it was not a healthy

19    relationship in any event for either of them.  And they were

20    very young.  Both of them were very young.

21            MR. JOSHUA WHITMAN:  Well, Your Honor, on a happier

22    note, as a COVID surviver a month ago and new grandpapa,

23    four-month-old granddaughter, I hope your time away with your

24    husband is healthy and with your grandchild is happy.  Thank

25    you for all your time this week.
```

1          THE COURT:  Well, thank you.  I think he is on the

2     mend.  And let's hope I'm not on the unmend.  All right.

3          You-all take care.  Good luck next week.  And I hope

4     this helps move things forward.  Thank you very much.

5          MS. HALDAR:  Thank you, Your Honor.

6          MR. JOSHUA WHITMAN:  Thank you, Your Honor.

7          MS. WEBB:  Thank you, Your Honor.

8               **(The proceedings were thereby concluded at**

9               **10:03 AM.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      C E R T I F I C A T E

 2

 3  UNITED STATES OF AMERICA

 4  NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7  the United States District Court, for the Northern District of

 8  Georgia, Atlanta Division, do hereby certify that the foregoing

 9  19 pages constitute a true transcript of proceedings had before

10  the said Court, held in the City of Atlanta, Georgia, in the

11  matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13  25th day of July, 2022.

14

15

16

17                          _____
                            SHANNON R. WELCH, RMR, CRR
18                          OFFICIAL COURT REPORTER
                            UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```