## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TIEQIAO ("TIM") ZHANG,          )
Individually, and as the Independent    )
Administrator of the Estate        )          CIVIL ACTION NO.
of ALBERT LIANG (a/k/a ALBERT     )
ZHANG and f/k/a LIANGSHENG       )          1:21-cv-00868-AT
ZHANG), deceased; and JING        )
("LINDA") LIANG,             )
                    )
            Plaintiffs,      )
                    )
v.                  )
                    )
EMORY UNIVERSITY,            )
                    )
            Defendant.

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS AMENDED COMPLAINT

To echo a recent sentiment of the United States Court of Appeals for the Third

Circuit, "[l]osing a loved one to suicide is a tragic event. . . . Unfortunately, all

tragedies do not provide those grieving with a path to recovery in civil litigation."

*Diorio v. Harry*, No. 21-1416, 2022 WL 3025479, at *1 (3d Cir. Aug. 1, 2022). And

here, over 3,000 pages of documents and two depositions later, including that of Dr.

Edmund Goode (whom Plaintiffs name in well over half of the 284 paragraphs in

their Amended Complaint), Plaintiffs can no more allege successfully that "Emory,

and particularly Dr. Goode, might have had more concrete awareness that Albert was

contemplating suicide," Order 24, Mar. 8, 2022, ECF No. 41 (the "Order"), than Plaintiffs could in their original complaint.

Though Plaintiffs' amended allegations alone are insufficient to state a claim, should the Court, in its discretion, also wish to consider the plausibility discovery granted to Plaintiffs, such discovery demonstrates the very opposite of a "concrete awareness": no one, including Dr. Goode and the licensed Emory psychologist with whom Albert consulted, expected Albert's suicide. The discovery demonstrated Albert expressed no feelings of loneliness, isolation, hopelessness, or being trapped. Instead, the discovery demonstrated Albert indicated no signs of distress during his last interactions with Dr. Goode or anyone else at Emory. By all accounts, Albert was a bright, well-rounded young man planning for the future, even two days before his death.

Allowing Plaintiffs to continue litigating this case, weaving a story fraught with misinformation, would not only continue to unnecessarily hurt all individuals affected by Albert's tragic death (Albert's family, his friends, classmates, Dr. Goode, and Albert's former girlfriend, Jane Doe), but it would also be futile: No additional amount of discovery will change the fact that Albert's death was unforeseeable. And without foreseeability, Plaintiffs cannot state a claim for negligence or gross negligence based on a failure to prevent Albert's suicide. Nor can Plaintiffs state a

claim for negligence or gross negligence based on a failure to provide suicide prevention training to Dr. Goode or other Emory Woodruff Scholars faculty and staff. Again, no additional amount of discovery will change the fact that Emory had no legal duty to provide such training—a necessary element to state a negligence claim under Georgia law. Federal Rule of Civil Procedure 12(b)(6) therefore authorizes dismissal, with prejudice, of Plaintiffs' Amended Complaint for failure to state a claim.[1]

## ARGUMENT AND CITATION OF AUTHORITIES

To succeed on a Federal Rule 12(b)(6) motion to dismiss for failure to state a claim, a "plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief. In such a situation, Federal Rule . . . 12(b)(6) 'authorizes a court to dismiss a complaint on the basis of a dispositive issue of law.'" *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1010 (11th Cir. 1992) (citation omitted)

---

[1] If Plaintiffs' negligence and gross negligence claims fail, then so must Plaintiffs' survival actions and wrongful death claims. *See Dion v. Y.S.G. Enters., Inc.*, 766 S.E.2d 48, 50 (Ga. 2014) ("Under Georgia law . . . a suit for wrongful death is derivative to the decedent's right of action. A survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in his or her own right." (omission in original) (quoting *Mowell v. Marks*, 603 S.E.2d 702, 704 (Ga. 2004))); *accord In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2020 WL 7866660, at *3, *8 (S.D. Fla. Dec. 31, 2020) (finding because substantive negligence-based claims failed, so did plaintiffs' derivative survival action and wrongful death claims).

quoting *Exec. 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1539 (11th Cir. 1991)).

Plaintiffs' Amended Complaint includes no new allegations or facts entitling

Plaintiffs to relief.[2]

## I.   Plaintiffs' alleged facts "defy [the] reality" of the discovery they were permitted, and the Court may discount such facts as false and otherwise consider as controlling documents and deposition testimony attached to this motion to dismiss.

While allegations in a complaint are generally assumed to be true for purposes

of a motion to dismiss, both this Court and the United States Court of Appeals for the

Eleventh Circuit have recognized exceptions to this rule. First, a court need not

accept a plaintiff's allegations as true when "improbability tips into frivolity where

the 'allegations . . . are sufficiently fantastic to defy reality as we know it . . . .'"

*Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (first omission in

original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J.,

dissenting)); *see also Gary v. United States Gov't*, No. 1:12-cv-2395-CAP, 2012 WL

12903797, at *1 (N.D. Ga. Sept. 18, 2012) (same), *aff'd sub nom.*, *Gary v. U.S.

Gov't*, 540 F. App'x 916 (11th Cir. 2013). Nor must a court "accept inferences drawn

---

[2] Given the Court is already familiar with the factual allegations of the original complaint, *see* Order 2-12, and the Amended Complaint primarily raises the same allegations, Emory does not include a separate statement of facts in this motion and otherwise addresses Plaintiffs' new allegations throughout the argument sections.

by [a] plaintiff if such inferences are unsupported by the facts set out in the complaint." *Pierson v. Zuber*, No. 1:09-cv-946-TCB, 2010 WL 11496944, at *6 & *10 n.14 (N.D. Ga. Jan. 13, 2010) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

The other exception to assuming facts as true for purposes of a motion to dismiss—and an exception to considering only the four corners of the complaint without converting a defendant's motion to dismiss into a motion for summary judgment—is when documents "are central to the claims and referred to and relied on throughout the operative complaint," in which case they are "appropriately considered" on a motion to dismiss. *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012).[3] And where those "documents contradict the general and conclusory allegations of the complaint, th[o]se documents govern." *Id.*; *see Kindratiw v. Family Broodmares V, LLC*, No. 5:16-cv-438-OC-30PRL, 2016 WL

---

[3] *See also Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1301-02 (N.D. Ga. 2021) (Totenberg, J.) (considering materials attached to defendant's motion to dismiss on the ground they were central to plaintiffs' claims); *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

6276994, at *5 n.5 (M.D. Fla. Oct. 27, 2016) ("Contrary to Plaintiff's argument that the Court should not consider whether the allegations in the complaint are facially untrue, 'A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.' . . . As such, the validity of the allegations is properly before the Court on this motion." (citation omitted)).[4] The Eleventh Circuit has applied the same exception to deposition testimony, holding the district court may consider deposition and affidavit testimony on a Federal Rule 12(b)(6) motion to dismiss without conversion to summary judgment because the deposition and affidavit statements were central to the plaintiff's claim and undisputed. *Korman v. Iglesias*, 778 F. App'x 680, 682 (11th Cir. 2019).

---

[4] *See also Piccard v. Deedy*, No. 1:21-cv-558-MLB, 2021 WL 4846132, at *6 n.4 (N.D. Ga. Oct. 15, 2021) ("The Court need not accept Plaintiff's assertion that Defendant falsely claimed to be the publisher himself as true. Although a court must accept the factual allegations in the complaint as true when analyzing a motion to dismiss, when a plaintiff attaches documents or exhibits which contradict the factual allegations in the plaintiff's complaint, the exhibits govern."); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002) ("In resolving a motion to dismiss, 'a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . *documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.*'" (omissions in original) (emphasis added) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

Here Plaintiffs continue to rest on cherry-picked snippets of documents and deposition testimony to weave a tale that defies the reality evidenced by those documents and deposition testimony. And because the documents and deposition testimony are central to Plaintiffs' claims and referred to and relied on throughout the Amended Complaint, Emory respectfully suggests this Court may exercise its discretion and discount false facts and otherwise consider the documents and deposition testimony Emory attaches to this motion to dismiss. Specifically, Emory has set forth in Exhibit A a chart comparing various example allegations from Plaintiffs' Amended Complaint to the (hyperlinked) corresponding documents and/or deposition testimony to which the allegations refer or upon which they rely.

To the extent this Court disagrees with applying the above-noted exceptions, however, and to otherwise avoid any unintentional summary judgment conversion or factual dispute (when one does not in fact exist), the Court need not rely upon Exhibit A (or the footnoted references to it throughout this motion) to grant dismissal for failure to state a claim[5]: Even looking solely at their allegations and assuming them to be true, Plaintiffs have yet to raise any allegations "to support a factual inference that

---

[5] *Cf. Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2019 WL 9091763, at *4 n.4 (S.D. Fla. July 9, 2019) (considering corporate deposition testimony appended to the defendant's motion to dismiss as "illuminating" but acknowledging the court's decision did not rely upon the testimony).

Emory was in a position to reasonably foresee that Albert might attempt to take his own life." Order 22.

## II. Plaintiffs' amended allegations, even if assumed as true, still cannot establish foreseeability as a matter of law.

As this Court instructed, "[T]he issues of whether a plaintiff can establish proximate cause and duty turn on whether the suicide was foreseeable to the defendant." Order 21. And as this Court pointed out in *Johnson v. 3M*,

> With reference to foreseeability of injury, "The correct rule is that in order for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result."

563 F. Supp. 3d 1253, 1321 (N.D. Ga. 2021) (quoting *Sims v. Am. Cas. Co.*, 206 S.E.2d 121, 127 (Ga. App. 1974)). Consistent with the "ordinary prudence" foreseeability standard in the context of student suicide, this Court has also recognized "courts around the country have generally required some allegations or evidence that university faculty or staff were more directly alerted to the danger of a potential suicide, either by the students themselves, by a peer, or in some other specific manner." Order 22-24 & n.9 (first citing *Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 609 (W.D. Va. 2002); then citing *Webb v. Muller*, 135 N.Y.S.3d 224,

238 (N.Y. App. 2020); then citing *Tang v. President & Fellows of Harvard Coll.*, No. MICV20182603, 2019 WL 5069077, at *4 (Mass. Super. Sept. 9, 2019); then citing *Nguyen v. MIT*, 96 N.E.3d 128, 146 (Mass. 2018); then citing *Shin v. MIT*, No. 020403, 2005 WL 1869101, at *13 (Mass. Super. June 27, 2005); and then citing *Anderson v. Bard Coll.* No. CV19236, 2020 WL 5993034, at *5 (Mass. Super. Aug. 18, 2020)).

Other courts evaluating student suicide cases have likewise all required a school to have specific knowledge a student was considering suicide before allowing the case to proceed. For example, in *Sacchetti v. Gallaudet University*, the district court dismissed the plaintiffs' wrongful death/negligence and survival claims because the complaint did not allege the student showed signs of suicidal ideation, that he reported he was suicidal, or had had a previous suicide attempt known to the college. 181 F. Supp. 3d 107, 121 (D.D.C. 2016). Notably, the allegations in *Sacchetti* revealed the college there had *more* knowledge than that alleged by Plaintiffs here: the Gallaudet mental health center "noted that [the student] 'was agitated, confrontational, defensive[,] and guarded,' and that he was 'experiencing "high levels of anxiety" and depression,'" and the student's mother had asked the college mental health center to notify her "the next time [the student wa]s in a depression episode where he bec[a]me[] suicidal," so she could "take him straight to a mental health

hospital." *Id.* at 113-14 (first alteration in original). Even then, the district court found the complaint was "insufficient to establish that [the student's] suicide was foreseeable to Gallaudet" because the complaint failed to allege the student "ever expressed suicidal thoughts or intentions to anybody[.]" *Id.* at 121.[6]

Here, Plaintiffs list twelve allegations they believe evidence the foreseeability of Albert's death by suicide, (Am. Compl. ¶¶ 270, 277, ECF No. 72); like the allegations in *Sacchetti*, however, none allege Albert ever expressed suicidal thoughts, plans, or intentions to anyone at Emory.

---

[6] *Compare Jain v. Iowa*, 617 N.W.2d 293, 295, 299-300 (Iowa 2000) (dismissing negligence claim—where allegations showed the decedent student's girlfriend asserted in front of on-duty resident assistants the student was preparing to die by suicide by inhaling exhaust fumes; and the resident assistants interviewed the student and he too reported he was trying to die by suicide—finding the resident assistants appropriately intervened in an emotionally charged situation, offered the student support and encouragement, and referred him to counseling); *and Bogust v. Iverson*, 102 N.W.2d 228, 232 (Wis. 1960) (finding if a hospital for the treatment of mental disorders cannot be held liable for self-injury of a patient where there is no allegation or evidence that the patient would injure herself if not restrained, certainly the mere allegation of an awareness by a teacher of emotional disturbance and personal problems of a student is insufficient to support an action for death by suicide); *with Klein v. Solomon*, 713 A.2d 764, 765-66 (R.I. 1998) (finding sufficient evidence that school psychologist had notice of the student's potential for suicide when the psychologist found the student was suffering from "anxiety and dread," that "he was depressed," and "also had some suicidal fantasies" that were not new for the student and had existed since elementary school); *Hoeffner v. The Citadel*, 429 S.E.2d 190, 191-92 (S.C. 1993) (recognizing physician had a duty to prevent suicide when student told physician he was having suicidal ideation and the physician noted the student was depressed and having many suicidal thoughts).

### A.   This Court has already found most of Plaintiffs' new allegations insufficient to establish foreseeability.

Seven of Plaintiffs' twelve foreseeability allegations—about Emory's general knowledge of "risk factors" and methods of suicide prevention; Albert's various categorical characteristics (e.g., his age, gender, and ethnicity); the breakup with his girlfriend; and the Title IX complaint, (Am. Compl. ¶ 270(i), (ii), (iii)(a)-(d) & (h); *id.* ¶ 277(i), (ii), (iii)(a)-(d) & (h))—are simply repackaged from Plaintiffs' original complaint,[7] which this Court has already held were "not sufficient, without more, to support a factual inference that Emory was in a position to reasonably foresee that Albert might attempt to take his own life," Order 22.[8] These seven repackaged allegations cannot establish foreseeability any more than they could in the original complaint.

---

[7] *See* Order 22 ("Plaintiffs' primary theory of foreseeability is that Albert's suicide was foreseeable to Emory first because Emory had intentionally undertaken a Suicide Prevention Plan to recognize signs of suicide among students, which was not followed in this case. Second, Plaintiffs argue that Albert was in the category of students most at-risk for suicide—because of his age, gender, ethnicity, lack of family communication, gender-identity, and the specific troubles he was facing: namely, a serious academic problem (the Title IX complaint) and a recent traumatic break-up.").

[8] One change to the repackaged foreseeability allegations is a quote from an email—that Emory knew Albert was "just a kid." (Am. Compl. ¶¶ 270(iii)(a), 277(iii)(a).) While such additional fact does not put Emory on alert that Albert was considering suicide, should the Court wish to consider the full context of that quoted email, written *after* Albert's death by an individual who had never even talked to Albert, *see* Ex. A at **EXAMPLE #3**.

Plaintiffs' Amended Complaint further recycles an additional set of factual allegations this Court previously discussed:

- A meeting in Dr. Goode's office where Albert allegedly manifested serious physical injuries and expressed feelings of loneliness, isolation, and hopelessness. (*Compare* Compl. ¶¶ 147-49, 152-55, 158-59, ECF No. 1, *with* Am. Compl. ¶¶176-78, 181-84, 187-88, *and* Order 24.)

- In the few days prior to his suicide, Albert had another meeting with Dr. Goode, where Albert explained he felt trapped because the female student was planning to file a Title IX complaint against him. (*Compare* Compl. ¶¶ 173, 176, 177, *with* Am. Compl. ¶¶ 207, 212, 213, *and* Order 24.)

- Dr. Goode recommended a lawyer to Albert regarding the Title IX complaint. (*Compare* Compl. ¶¶ 209-10, *with* Am. Compl. ¶¶ 248-49, *and* Order 24-25.)

Even if this Court were to assume the truth of these recycled allegations,[9] the salient question posed by the Court's order regarding these allegations, like the other district courts in student suicide cases, was whether, during these alleged experiences

---

[9] As Plaintiffs discovered during their seven-hour deposition of Dr. Goode, however, Albert never expressed to Dr. Goode feelings of loneliness, isolation, or hopelessness, *see* Ex. A at **EXAMPLE #11**; Albert never presented to Dr. Goode with any physical injuries, *see* Ex. A at **EXAMPLE #10**; Albert never said he felt trapped, *see* Ex. A at **EXAMPLE #15**; and Dr. Goode never recommended a lawyer to Albert, *see* Ex. A at **EXAMPLE #15**.

between Albert and Dr. Goode, "Albert may have demonstrated by words or conduct some form of suicidal ideation." Order 24. But Plaintiffs still have not, and cannot, make that allegation—which makes sense since the discovery revealed the opposite of suicidal ideation: a forward-thinking student who did not even discuss his interiority with Dr. Goode.[10]

### B. Plaintiffs' allegations that Emory or Dr. Goode knew Albert was suicidal before his death "defy reality" or, at the very least, are inferences not supported by the facts.

Paragraphs 270(iii)(i) and (j) and 277(iii)(i) and (j) of Plaintiffs' Amended Complaint allege:

(i)   EMORY knew that ALBERT was suicidal prior to the date of ALBERT's death; and

(j)   Emory's employee Goode specifically informed law enforcement officers that ALBERT was suicidal before it was discovered that ALBERT had indeed died by suicide.

As an initial matter, Plaintiffs allegations "tip[] into frivolity," *Guthrie*, 618 F. App'x at 617, because as Plaintiffs learned during their discovery period, nobody at Emory, including Dr. Goode or the licensed psychologist at Emory Counseling and Psychological Services ("CAPS") who assessed Albert, believed Albert to be suicidal

---

[10] To the extent this Court wishes to consider that testimony provided to Plaintiffs, *see* Ex. A at **EXAMPLE #6**, **EXAMPLE #13**.

before his death.[11] To the extent Plaintiffs are making an inference that Emory or Dr.
Goode knew Albert "was suicidal prior to the date of ALBERT's death," (Am.
Compl. ⁋ 270(iii)(j); *id.* ⁋ 277(iii)(j))—an inference they also make in paragraph 199
of the Amended Complaint—such an inference is not supported by the "facts" even
as set forth in the Amended Complaint. *Cf. Pierson*, 2010 WL 11496944, at *6 & *10
n.14 ("Plaintiffs have made inferences regarding [the defendant's] activities, but such
inferences are unsupported by the facts in the complaint. Thus, the Court finds that
this allegation against [the defendant] is insufficient to establish that he intentionally
participated in the alleged racketeering activity.").

The only "fact" in the Amended Complaint addressing Plaintiffs' inference is
Plaintiffs' allegation that "[b]efore ALBERT's body was discovered, Goode told
officers of the EPD [Emory Police Department] that he had a student who appeared to
be suicidal." (Am. Compl. ⁋ 259; *see also* Am. Compl. ⁋⁋ 270(iii)(j) & 277(iii)(j).)
Even assuming Dr. Goode's alleged statement to the EPD were accurate,[12] it does not

---

[11] To the extent this Court wishes to consider those documents and testimony
provided to Plaintiffs during plausibility discovery, *see* Ex. A at **EXAMPLE #7**,
**EXAMPLE #13**.

[12] Indeed, Dr. Goode testified he did not make any statement about a "suicidal"
student (which is why statements in police reports made by third persons with no
business duty to report are inadmissible hearsay, *United Techs. Corp. v. Mazer*, 556
F.3d 1260, 1278 (11th Cir. 2009), and in fact in this case, double hearsay). To the

support an inference that Albert appeared suicidal during his lifetime or that Dr. Goode or Emory knew Albert was suicidal during his lifetime. Plaintiffs' own allegations reflect Dr. Goode's alleged statement was informed by a set of facts arising *after* Albert's death: Dr. Goode receiving an automated email from Albert, sent after Albert's death, advising he could be found "at the vacant, unfurnished, and uninhabitable house on Druid Hills Road[.]" (Am. Compl. ℙ 256.)[13] That someone might suspect suicide *after* a person is already deceased does not travel backward in time to create an earlier suspicion that establishes an inference of foreseeability.

## C.   Indicating one is homeless, even if true, does not directly alert a reasonably prudent person that suicide is imminent.

Plaintiffs' foreseeability allegations also allege Emory knew that Albert "was in crisis as a result of his homelessness." (Am. Compl. ℙ 270(iii)(e); *id.* ℙ 277(iii)(e); *see also id.* ℙℙ 180, 201.) Again, even assuming Plaintiffs' allegations as true,[14] a

---

extent the Court wishes to otherwise consider the actual document upon which Plaintiffs' allegation is relying (the EPD Supplemental Case Report), as well as Dr. Goode's actual testimony regarding what he said, or did not say, to the EPD, *see* Ex. A at **EXAMPLE #13**.

[13] Again, to the extent the Court wishes to consider the actual automated email upon which Plaintiffs rely, as well as Dr. Goode's experience in receiving that email and arriving at the address, all of which Plaintiffs learned during his deposition, *see* Ex. A at **EXAMPLE #17**, **EXAMPLE #18**.

[14] The documents and deposition testimony upon which Plaintiffs rely reflect the opposite conclusion of Plaintiffs' allegations: that Albert was never actually homeless

reasonably prudent person would not have foreseen that suicide would result from failing to act in response to someone expressing they were homeless. *Johnson*, 563 F. Supp. 3d at 1321. Indeed, the student suicide cases discussed above, and in the Court's Order, have required "some allegations or evidence that the university faculty or staff were more directly alerted to the danger of a potential suicide[.]" Order 22. Even Plaintiffs' own alleged list of suicide risk factors and warning signs does not include homelessness. (*See* Am. Compl. ¶¶ 219-25.)

   **D. Knowledge of a student's visit to a school mental health center or of a difficult relationship with his parents does not directly alert a reasonably prudent person of a suicide risk.**

   Plaintiffs' last two allegations pertaining to foreseeability are Emory's alleged knowledge that Albert visited CAPS, and that he could not fully utilize CAPS because Emory knew Albert would have trouble obtaining his parents' consent, given he had a "fraught, enigmatic and rocky relationship with his parents" (Am. Compl. ¶ 270(iii)(f), (g); *id.* ¶ 277(iii)(f), (g).) Knowledge of Albert visiting CAPS, as hundreds of Emory students do for various reasons, does not give rise to a foreseeable suicide. The decedent student in *Sacchetti* visited the college mental health center, yet the court still dismissed the negligence claims because the key question was whether

---

with other places to stay and was looking to schedule a meeting in the future. *See* Ex. A at **EXAMPLE #9**, **EXAMPLE #14**.

the college, via the mental health center or otherwise, was put on notice that the student was considering suicide. 181 F. Supp. 3d at 113-14, 121. Like in *Sacchetti*, Plaintiffs' allegations about Albert's CAPS visit make no mention that Albert presented as a suicide risk during that visit. (Am. Compl. ¶¶ 167-169.)[15] That Emory allegedly knew Albert would have trouble obtaining his parents' consent for treatment beyond the initial assessment likewise falls short of foreseeability— particularly considering none of Plaintiffs' allegations indicate Albert needed more immediate treatment (related to suicidal thoughts or anything else) before he would turn eighteen four months later.[16] Finally, even assuming as true Dr. Goode's knowledge about Albert's relationship with his parents,[17] such knowledge does not amount to a "concrete awareness that Albert was contemplating suicide." Order 24.

***

---

[15] Nor can they make those allegations because the CAPS records upon which Plaintiffs rely, should the Court wish to consider them, indicate Albert was not a suicide risk, and that Albert elected to wait until he was eighteen to undergo treatment unrelated to suicidal thoughts. *See* Ex. A at **EXAMPLE #7**.

[16] Indeed, as Plaintiffs learned during their discovery period, Emory would have provided treatment without his parents' consent had Albert presented with suicidal ideation. *See* Ex. A at **EXAMPLE #7**.

[17] Again, to see what Dr. Goode in fact said about his knowledge about Albert's relationship with his parents, *see* Ex. A at **EXAMPLE #6**.

Taking all of Plaintiffs' foreseeability allegations together, they still cannot allege that "Dr. Goode or Emory were on notice that Albert was considering suicide such that Plaintiffs can plausibly allege foreseeability sufficient to . . . support liability in this action." Order 27.

**III. Plaintiffs' cannot state a negligence claim based on Emory's failure to train Dr. Goode or other Emory Woodruff Scholars faculty and staff on suicide prevention.**

Following their depositions of Dr. Goode and Emory's 30(b)(6) witness, Plaintiffs' Amended Complaint alleges an additional basis for their negligence claims: Emory's alleged failure to train Dr. Goode or other Emory Woodruff Scholars faculty and staff on suicide prevention. (Am. Compl. ¶¶ 78, 269(m), (n), 276(m), (n).) As this Court recognized, "[n]egligence is premised on, among other things, a duty owed by the defendant to the plaintiff." Order 13 (quoting *Dep't of Lab. v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019)). "A legal duty sufficient to support liability in negligence is 'either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [Georgia] appellate courts.'" *Sheaffer v. Marriott Int'l, Inc.*, 826 S.E.2d 185, 188 (Ga. App. 2019) (quoting *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 716 (Ga. App. 2011)).

Plaintiffs, however, do not allege any statutory enactment that would impose a

duty on Emory to train Dr. Goode and other Woodruff Scholars staff and faculty on suicide prevention; nor do they allege any common law principle that imposes such a duty. *Boller*, 716 S.E.2d at 716 (finding no statute or common law principle imposed a duty on the Arts Center to provide emergency medical services to patrons of its concerts). And "[i]n the absence of a legally cognizable duty, there can be no fault or negligence." *Sheaffer*, 826 S.E.2d at 188 (citation omitted).

In a similar context, the Eleventh Circuit has found a school board owes no constitutional duty to provide its employees with training in suicide prevention and intervention. *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997). While *Wyke* was viewed under the lens of the § 1983/deliberate indifference standard rather than state-law negligence, the district court's analysis is nevertheless illuminating here:

> plaintiff presented no evidence that [one or more prior] suicide attempts [by the decedent student] had occurred on school grounds prior to October 16, 1989, or that there was a pattern of suicide threats or attempts of which the School Board was aware. Instead, defendant presented evidence that only one suicide had occurred during the two years prior to [the student's] death. Based on the foregoing, the need for training in suicide prevention/intervention was not plainly obvious to the School Board.

*Wyke v. Polk Cnty. Sch. Bd.*, 898 F. Supp. 852, 857-58 (M.D. Fla. 1995), *aff'd in part*, 129 F.3d 560. Similarly, Plaintiffs state no allegations indicating a pattern of Woodruff Scholars dying by suicide, or any other fact, that could have possibly put

Emory on alert that its Woodruff Scholars faculty and staff needed suicide prevention training. As a further point of comparison, the *Nguyen* court recognized the voluntary nature of a university adopting suicide prevention protocols, holding IF a university had adopted such protocols, then initiating them would satisfy the university's duty to take reasonable measures to protect a student from suicide where "a student has attempted suicide while enrolled at the university or recently before matriculation, or has stated plans or intentions to commit suicide . . . ." 479 Mass. at 455-57 (finding university could still satisfy its duty to take reasonable measures even without developing suicide prevention protocols).[18]

While Emory does not dispute the wisdom of universities opting to provide suicide prevention training—indeed, Emory has a suicide prevention coordinator who addresses training and education for student, faculty, and staff populations as

---

[18] *Cf. Brooks v. Logan*, 903 P.2d 73, 77 (Idaho 1995) (dismissing, albeit on immunity grounds under the state's tort claims act, the parents' wrongful death claim against school for their son's suicide—where the parents claimed, inter alia, the school failed to have a suicide prevention program, including training its teachers and staff— because the school's decision to implement such a program and training fell within the discretionary function exception to the state's tort claims act), *abrogation in part by statute recognized by Stoddart v. Pocatello Sch. Dist. #£25*, 239 P.3d 784, 789-90 (Idaho 2010) (recognizing abrogation of *Brooks* in part by Idaho Code § 33–512B, which provides "neither a teacher nor a school district shall have a duty to warn of the suicidal tendencies of a student absent the teacher's knowledge of direct evidence of such suicidal tendencies").

needed—Emory is under no legal duty to provide the training. And without that legally cognizable duty, Plaintiffs cannot state a negligence claim based on Emory's alleged failure to train.

## **CONCLUSION**

Albert's death by suicide was a tragedy. His tragic death, however, does not mean civil litigation is his parents' path to recovery. Emory respectfully requests the Court dismiss their Amended Complaint with prejudice.

***

Pursuant to Local Rule 7.1(D), I hereby certify the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), specifically Times New Roman 14 point.

Respectfully submitted this 21st day of September, 2022.

**Allegra J. Lawrence**
Allegra J. Lawrence (Georgia Bar No. 439797)
Lisa M. Haldar (Georgia Bar No. 733508)
Rodney J. Ganske (Georgia Bar No. 283819)
Attorneys for Defendant
LAWRENCE & BUNDY LLC
1180 West Peachtree Street, NW, Suite 1650
Atlanta, Georgia 30309
Telephone: (404) 400-3350
Facsimile: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
lisa.haldar@lawrencebundy.com
rod.ganske@lawerncebundy.com