## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TIEQIAO ("TIM") ZHANG, )
Individually, and as the Independent )          NO.: 1:21-cv-00868-AT
Administrator of the Estate )
of ALBERT LIANG (a/k/a ALBERT )
ZHANG and f/k/a LIANGSHENG )
ZHANG), deceased; and )
JING ("LINDA") LIANG, )
)
        Plaintiffs, )
)
v. )
)
EMORY UNIVERSITY; )
)
        Defendant. )
_____/

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs file this Brief in Opposition to Defendant Emory University's ("Emory") Motion to Dismiss Plaintiffs' Amended Complaint. (Dkt. 75).

### Summary

Emory's Motion asks the Court to assess its Rule 12(b)(6) challenge to Plaintiffs' Amended Complaint by viewing a one-sided presentation of evidence, weighing the credibility of witnesses' testimony, and viewing Plaintiffs' alleged facts in isolation, rather than the entirety of the pleading. This is entirely improper, and the Court should reject Emory's attempt to have it dispense of Plaintiffs' claims based upon an incomplete record and usurp the function of the

jury.

On the contrary, viewing Plaintiffs' allegations as the Court must, Plaintiffs have sufficiently pled their claims of negligence against Emory, and alleged sufficient facts to show that Albert's suicide was foreseeable to Emory. This includes not only the multitude of factors of which Emory was aware regarding its student population in general, and Albert in particular, but specific statements made by Albert's advisor, Ed Goode, Ph.D. ("Goode"), to law enforcement that Albert was suicidal before anyone, including Goode, knew that Albert had died by suicide. Moreover, Plaintiffs have pled that Emory was under the mistaken impression that Goode was properly trained in suicide prevention techniques when he was hired, and thus failed to provide him with the training that they knew was necessary, and would have prevented Albert's death, breaching their duty to undertake actions relating to suicide prevention with reasonable care. Emory's Motion should be denied.

## <u>Background</u>

On March 8, 2022, the Court issued an Order disposing of Emory's initial Motion to Dismiss Plaintiffs' Complaint. (Dkt. 41). In that Order, the Court found that a duty can exist on the part of an educational institution to its student to prevent suicide under certain circumstances. The Court permitted Plaintiff to engage in limited discovery, primarily related to the area of whether Albert's

suicide was foreseeable to Emory. (Dkt. 41 at 26-28).

That discovery took place from March to July 2022. Plaintiffs filed their Amended Complaint on August 15, 2022, providing additional allegations based upon the information uncovered in the limited discovery permitted. (Dkt. 72). In addition to prior allegations involving risk factors that Albert exhibited that were known to Emory, Emory's awareness of Albert's inability to effectively communicate with his parents, and Emory's awareness that Albert was in crisis due to a Title IX complaint filed against him, being the victim of physical violence by a former sexual partner, and being rendered homeless, the Amended Complaint includes new allegations regarding statements that Goode, Albert's advisor, made to law enforcement – before he or anyone else knew that Albert had died by suicide – that indicate Goode knew that Albert was suicidal. (Dkt. 72 at ¶¶ 259-60).

Furthermore, in light of the revelation that Emory had the false impression that Goode had received suicide prevention training from a previous employer and had therefore not provided Goode with any suicide prevention training at all, Plaintiffs added additional grounds for negligence and gross negligence. (Dkt. 72 at ¶¶ 269(m)-(n), 276(m)-(n)).

Emory filed its Motion to Dismiss the Amended Complaint on September 21, 2022. (Dkt. 75). Rather than challenge the allegations of Plaintiffs' pleadings,

and despite the fact that Plaintiffs have not had the opportunity to present testimony of their own, but to engage only in "narrowly tailored" discovery authorized by the Court, Emory submitted a substantial factual record, and asked the Court to weigh it in its favor without consideration of any contravening evidence. Plaintiffs are contemporaneously objecting to this violation of Rule 12(b)(6) and Rule 12(d), but Emory's attempt to disregard the Rules is of no consequence. If the Court views the pleadings as it should under Rule 12(b)(6), Emory's Motion must be denied.

## Arguments and Authorities

In assessing a plaintiff's pleading under Rule 12(b)(6), the Court must construe the facts as pled as true and in the light most favorable to the plaintiff and determine whether the plaintiff has pled sufficient factual allegations to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). "Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted." *Washington v. Department of Children & Families*, 256 Fed. Appx. 326, 327 (11th Cir. 2007). At this stage, "the issue is whether the plaintiff is entitled to present evidence in support of his claims, not whether those claims will ultimately succeed." *Bowen v. GMAC Mortg., LLC*, No. 5:10-CV-36 (CAR), 2010 WL 1740779, at *1 (M.D. Ga. Apr. 28,

2010) (citing *Little v. City of N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986)). Accordingly, "[b]ecause this standard imposes such a heavy burden on the defendant, Rule 12(b)(6) motions are rarely granted." *Id.*

The Court's inquiry is generally limited to the allegations of the complaint. *Hayes v. U.S. Bank Nat. Ass'n*, 648 Fed. Appx. 883, 887 (11th Cir. 2016). As discussed below, Emory asks the Court to depart from this requirement. This effort should be rejected for the reasons stated herein and in Plaintiffs' contemporaneously-filed Objection. In any case, the allegations of the Amended Complaint are sufficient to state a claim for relief. Emory's Motion should be denied

## I. Emory's attempt to utilize an evidentiary record on its Rule 12(b)(6) Motion is impermissible for the reasons provided in Plaintiff's Objection. Its Motion should be denied on these grounds alone.

In assessing its Motion, Emory invites the Court to compare Plaintiffs' Amended Complaint to an evidentiary record it has provided, including documents, communications and deposition testimony, which Emory claims rebuts the allegations of Plaintiffs' Amended Complaint. (Dkt. 75-1 at 4-8). And yet, Emory does not outright ask the Court to convert its Motion into one for summary judgment under Rule 56, instead simply claiming that the evidence illustrates that Plaintiffs' Amended Complaint cannot, or will not, be supported by the evidence. (Dkt. 75-1 at 7-8).

Emory's approach should be seen for what it is: a desperate attempt to improperly influence the Court's consideration of its Motion, and have the Court dispense of Plaintiffs' claims on a limited (and Emory-curated) evidentiary record. As noted in Plaintiffs' contemporaneous Objection, which is incorporated as if fully stated herein, none of the documents Emory provides were actually referred to in Plaintiffs' pleadings, or are central to their claims, thus forbidding their consideration on a Rule 12(b)(6) motion. Moreover, granting Emory's request would impermissibly permit disposition of the case without giving Plaintiffs the opportunity to present countervailing evidence and testimony that has been neither elicited nor permitted in discovery to date, and which would render Emory's record evidence anything but "undisputed."[1] (Dkt. 75 at 6). Indeed, a review of Emory's Motion shows it is entirely dependent not on the sufficiency of the allegations of the Amended Complaint, but the evidence it claims disputes it. (*See* Dkt. 75-1 at 11-17 & n. 8-17). Emory's entire Motion is tainted by this improper approach.

In essence, rather than having the Court view the allegations of the Amended Complaint in the light most favorable to the plaintiff, as the Court

---

[1] This would include documents and testimony from individuals such as Plaintiff Tim Zhang (whose testimony and contemporaneous notes documenting his conversations with Goode after Albert's death will contradict Goode's testimony); Campus Life Administrator Suzanne Onorato and Rev. Greg McGonigle (who were present for the same conversations, and will offer their own versions of what Goode told Mr. Zhang); and the police officers who recorded Goode's statements at the scene of Albert's death (statements which Goode has denied making).

must do, Emory asks the Court to consider a one-sided evidentiary record and weigh it, and the credibility of witnesses, entirely in favor of Emory. On a Rule 12(b)(6) Motion, and even on summary judgment, Emory's proposed disposition is forbidden by law. "A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint, and does not invite the Court to assess the veracity or weight of the evidence which may be offered in its support." *Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000); *accord IVC US, Inc. v. Linden Bulk Transp. SW, LLC*, No. 4:15-CV-0120-HLM, 2015 WL 13640506, at *2 (N.D. Ga. Nov. 6, 2015) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)); *Schmidt v. I.R.S.*, No. 08-10037, 2008 WL 2067020, at *1 (E.D. Mich. May 15, 2008) ("Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, '[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witnesses.'") (quoting *Miller v. Currie*, 50 F.3d at 373, 377 (6th Cir. 1995)).

If the Court is inclined to grant Emory's request, and oblige Emory's apparent wish for the Court to adjudge Plaintiffs' claims based upon an evidentiary record, it "must" give Plaintiffs "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). And Plaintiffs have had neither the obligation nor the opportunity in discovery to do so. Emory is leading the Court into error. If the Court fails to give Plaintiffs their

"reasonable opportunity", its decision will be based on weighing only one side's presentation of evidence and a determination of the credibility of witnesses, which is not the proper role of the trial court on either a Rule 12(b)(6) motion or a summary judgment motion.

The fact that Emory sees the need to present one-sided rebuttal evidence to Plaintiffs' allegations effectively admits what is clear: Plaintiffs' allegations are sufficient, and they have stated a claim for relief. For this reason alone, Emory's Motion should be denied.

## II. Plaintiff's Amended Complaint has stated sufficient allegations of foreseeability to state a claim.

### A. An explicit statement of suicidal intent is not necessary to establish the foreseeability of suicide as a matter of law.

Emory recounts case law previously assessed by the Court in ruling on its Motion to Dismiss the original Complaint, and the Court's observation that prior cases generally require an educational institution to be "more directly alerted to the danger of a potential suicide, either by the students themselves, by a peer, or in some other specific manner." (Dkt. 41 at 22; Dkt. 75-1 at 8-10). Plaintiffs have explained why those cases absolving an educational institution of liability for a student's suicide are distinguishable in prior briefing (*see* Dkt. 25 at 16-17, 20-

23),[2] and will not repeat those arguments here. Moreover, Plaintiffs do not dispute that a direct statement alerting Emory of Albert's potential for self-harm has not been uncovered to date. However, Plaintiffs maintain that no such direct statement is necessary, and that there is authority permitting claims to proceed beyond the dismissal or summary judgment stage even in the absence of allegations that the decedent expressed any indication of suicidal intent.

For example, in *Leary v. Wesleyan Univ.*, No. CV055003943, 47 Conn. L. Rptr. 340, 2009 WL 865679 (Conn. Sup. Ct. Mar. 10, 2009), prior to his death by suicide, the student called an emergency line for the school, informing them that "[i]t's really getting to the point where [he] could no longer function." *Id.* at *9. The student made no explicit statements indicating suicidal ideation, and there was no indication that the decedent was a threat to himself. *Id.* at *8. School public safety officers picked him up and dropped him off at a hospital, but he left and died by suicide shortly afterward. *Id.* at *1. The court denied summary judgment in light of evidence of the school's suicide prevention policies that were not adequately followed and expert testimony that the school should have been aware of the foreseeability of the suicide under the circumstances. *Id.* at *10.

---

[2] The cited briefing addresses, among other cases, *Nguyen v. Mass. Inst. of Tech.*, 96 N.E.3d 128, 131-32 (Mass. 2018), *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107 (D.D.C. 2016), *Schieszler v. Ferrum College*, 236 F. Supp. 2d 602, 609 (W.D. Va. 2002); *Shin v. Mass. Inst. of Tech.*, No. 020403, 2005 WL 1869101, at *13 (Mass. Super. June 27, 2005); *Webb v. Muller*, 135 N.Y.S.3d 224, 238 (N.Y. App. 2020), *Tang v. President & Fellows of Harvard College*, 36 Mass. L. Rptr. 49, at *4-*5 (Mass. Super. Sept. 9, 2019), and *Anderson v. Bard College*, No. CV19236, 2020 WL 5993034, at *5 (Mass. Super. Aug. 18, 2020).

In *Rookbaksh v. Board of Trustees of the Neb. State Colls.*, 409 F. Supp. 3d 719 (D. Neb. 2019), a college was aware of a student's distress, involvement in dating violence, and alcohol abuse prior to her death by suicide. *Id.* at 723-31. However, there was no direct statement to school personnel that she was suicidal. *Id.* In a subsequent suit under Title IX, her survivors argued the student's suicide could have been prevented if the school had properly responded to reports of abuse and taken steps to ensure her safety, including providing active intervention and contacting her parents. *Id.* at 731. In denying summary judgment, the court found that there were fact questions as to "[w]hether the suicide could have been prevented if the College had taken meaningful action to stop the known dating violence" and the "question of the foreseeability of suicide as a response to domestic violence" in light of "competing expert opinions . . . , questions of credibility and the weighing of evidence." *Id.* at 737-38.

*Leary* and *Rookbaksh* show that an educational institution can be legally responsible for a student's suicide even when the university was not aware of a student's suicidal ideation before her death. *See also ElSharkawy v. Chisago Lakes School Dist. Bd. of Educ.*, No. 20-1971, 2021 WL 3293627 (D. Minn. Aug. 2, 2021) (denying motion to dismiss for student suicide wrongful death claim when school was aware of bullying and mental health issues but no indication of suicidal ideation); *Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F.

Supp. 3d 793, 811 (S.D. Ohio 2018) (denying motion to dismiss when school was aware of bullying and prior suicides resulting from bullying, but no explicit suicidal ideation of decedent).[3]

While Plaintiffs have not (yet) discovered whether anyone directly informed Emory of suicidal ideation by Albert, even if it were necessary (which it is not), the question before the Court is whether Plaintiffs have alleged sufficient facts that would support a claim of Emory's negligence, including that Albert's suicide was a foreseeable result of Emory's negligence. As discussed below, Plaintiffs have done so.

### B. Plaintiffs' allegations, <u>viewed in totality</u>, sufficiently allege that Albert's suicide was foreseeable.

Emory first challenges Plaintiffs' allegations regarding the circumstances and background information that Emory was aware of regarding its student population and Albert. These allegations were included in the original Complaint (Dkt. 1). (*See* Dkt. 75-1 at 11-13). Plaintiffs acknowledge the Court's ruling that the previous allegations of the original Complaint, on their own, were not enough to satisfy the Court's interpretation of Georgia law. (Dkt. 75-1 at 11-13). But Plaintiffs do not rely on these allegations alone; the Amended Complaint adds significant new allegations based on the limited discovery permitted by the

---

[3] Plaintiffs have already preliminarily designated expert testimony that demonstrates, like the expert opinions in *Leary* and *Rookbaksh*, that Albert's suicide was foreseeable to the educational institution charged with his supervision and care. (*See* Dkt. 47) (Plaintiffs' disclosure and report of Adult and Child psychiatrist Calvin A. Colarusso, M.D.).

Court. As discussed below, Plaintiffs' allegations <u>as a whole</u> are sufficient to support foreseeability.

In addition to challenging Plaintiffs' prior allegations, Emory asserts that Plaintiffs' individual additional allegations, including Goode's statements that he believed Albert was suicidal before knowing of his death, the fact that Emory knew Albert was homeless before his death, and the information of which Emory was made aware through Albert's visit to Emory's mental health center (CAPS), are insufficient to sufficiently allege foreseeability. (Dkt. 75-1 at 13-17). However, this approach "inappropriately tries to focus on these allegations in isolation, rather than assessing the Complaint as a whole." *Premier Concrete LLC v. Argos N. Am. Corp.*, No. 1:20-CV-00307-SDG, 2021 WL 1209354, at *15 (N.D. Ga. Mar. 31, 2021). "The Court does not view each allegation in isolation, but rather considers the complaint in its entirety." *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *accord Renasant Bank, Inc. v. Smithgall*, No. 1:15-CV-0459-SCJ, 2016 WL 4502374, at *4 (N.D. Ga. June 13, 2016) ("[T]he allegations of the Amended Complaint cannot be read in isolation; they must be read as a whole."). When a plaintiff's allegations involve a number of actions that give rise to his or her claims, it "makes little sense" to view individual factual allegations "in isolation." *Bivens v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-760-ELR-JKL, 2017

WL 8185749, at *5 (N.D. Ga. Dec. 18, 2017). On the contrary, "the Court is looking only to the legal sufficiency of the allegations in the complaint". *Id.*

As discussed below, viewed as a whole and in the light most favorable to Plaintiffs, as the Court must, Emory's Motion should be denied.

### 1. Goode's statement to the police that Albert was suicidal <u>before he knew Albert had committed suicide</u> sufficiently alleges that he was aware Albert was suicidal.

Emory first addresses a damning allegation uncovered in the discovery the Court permitted: that Goode informed law enforcement officers that Albert was suicidal before Albert's suicide was discovered. (Dkt. 75-1 at 13).[4] Emory challenges this allegation in multiple ways, but its arguments are unavailing.

Emory first asks the Court to consider deposition testimony from Goode, and CAPS records, that purportedly show that Albert was not considered to be suicidal before his death. (Dkt. 75 at 13-14). This is a request for the Court to weigh the evidence and Goode's credibility, which should not be done at this

---

[4] Emory asks the Court to consider Goode's deposition testimony where he denied making statements attributed to him in a police report, which is the source of this allegation, and asserts that such statements would be inadmissible hearsay. (Dkt. 75-1 at 14-15 n.12). Even if the Court were to consider this point—which it should not—the admissibility of evidence is not an issue on a Rule 12(b)(6) motion. Even so, Plaintiffs have had no opportunity to obtain evidence or testimony in admissible form from the individuals who heard these statements from Goode. Moreover, the statements at issue are distinguishable from those in the case Emory cites, *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009). There, the statements in a law enforcement report were made by a party in the context of criminal charges against him individually, and could not be considered non-hearsay statements of a party-opponent under the circumstances and in that context. *Id.* at 1278-79. By contrast, Goode, an Emory employee, made these statements in his role as an Emory employee, based on information he only learned due to his role at Emory. This renders those statements non-hearsay admissions of a party opponent under Federal Rule of Evidence 801(d)(2). But this is a question for the summary judgment or trial stage, not on a Rule 12(b)(6) motion.

stage for the reasons stated in Part I *supra*; it would fail to comply with the applicable Federal Rules of Civil Procedure, usurp the role of the factfinder by weighing evidence and testimony, and certainly would not be a viewing of the allegations or evidence in the light most favorable to Plaintiffs.

More importantly, Emory asks the Court to strip this allegation of its context and isolate it from all other allegations of the Amended Complaint, which, as discussed above, it may not do. *See Tellabs*, 551 U.S. at 322. However, viewing this allegation in the light of the totality of Plaintiffs' Amended Complaint, it supports Plaintiffs' allegation that Albert's suicide was foreseeable.

Prior to Albert's suicide, Goode and Emory were aware of a substantial number of factors regarding Albert's condition, and his risk for suicide. Beyond the risk factors that should have put Emory on notice that he was already at heightened risk for self-harm, including his demographic details and the fact that he was a minor, Plaintiffs allege that Emory and Goode knew:

- That Albert was engaged in a sexual relationship with an adult woman for several months in 2019 (Dkt. 72 at ¶ 151);

- That Albert had informed Emory and Goode through a report that he was heavily loaded with responsibilities and "juggling" them, and that he intended to go to Emory's Counseling & Psychological Services ("CAPS") to keep himself "sane" (Dkt. 72 at ¶¶ 152-54);

- That Albert had not been able to utilize CAPS services as he wished, including for issues relating to restoring parental communication, because he was a minor and could not do so without parental consent (Dkt. 72 at ¶¶ 158, 165, 167-69);

- Through multiple meetings with Goode and communications with others at Emory in August 2019, that Albert had been physically harmed by the adult woman, with marks showing the abuse that Goode personally noticed, and had been rendered homeless and without safe shelter (Dkt. 72 at ¶¶ 175-88, 201-02);

- That Goode informed Albert that Goode was a mandatory Title IX reporter and warned him that he would have to report any sexual misconduct or physical abuse that Albert informed him of (Dkt. 72 at ¶¶ 189-93);

- That a Title IX complaint had been filed by the adult woman against Albert and that Albert had been informed of this fact and its potential implications (Dkt. 72 at ¶¶ 206-08, 238-41); and

- That Albert had directly told Goode that he felt "trapped" by the circumstances (Dkt. 172 at ¶ 213).

On the morning of Albert's death, August 30, 2019, Goode knew all of this information. At approximately 8:00 a.m. that morning, Goode received an automated email from Albert informing Goode where Albert could be found. (Dkt. 72 at ¶ 256). At approximately 9:25 a.m., before Albert's suicide had been discovered, and before anyone knew that Albert had died, Goode explicitly told law enforcement officers that "he had a student who appeared to be suicidal." (Dkt. 72 at ¶ 259). Goode also <u>told officers of a number of specific facts that led him to that conclusion</u>, including that "he had recently spoken to ALBERT, who was distraught because ALBERT and the adult woman had broken up;" that "he had observed a red mark on the left side of ALBERT's neck;" that he "had told ALBERT that he was a mandatory Title IX reporter, and that what ALBERT told Goode would have to be reported, at which time ALBERT asked if they could

just talk about other things, and not the adult woman"; and that "there was a pending Title IX Complaint regarding ALBERT". (Dkt. 72 at ¶¶ 259-60). These allegations support Plaintiffs' claim that Goode, and Emory, knew, before anyone knew that Albert had died by suicide, that Albert was suicidal; this is sufficient to support Plaintiffs' allegation of foreseeability on the part of Emory.

Emory asserts that the Court should discount these statements because they were made after Albert's death and Goode's receipt of the automated email. (Dkt. 75-1 at 14-15). But this argument asks the Court to weigh the credibility of Goode's testimony, which is not its role in the context of a Rule 12(b)(6) motion. *Sherman*, 80 F. Supp. 2d at 1368. Even if this fact were pertinent, it would be the role of the jury to determine whether the fact that Goode provided much of this information, previously available to him, to law enforcement officers before learning of Albert's suicide <u>as part of his explanation as to why he believed Albert was suicidal</u> indicates that Albert's suicide was foreseeable to Goode, and therefore Emory.

Moreover, nothing in Plaintiffs' Amended Complaint indicates that the automated email explicitly informed Goode that Albert had died by suicide (and indeed the email does not). (Dkt. 72 at ¶ 256). Goode came to that conclusion himself, in light of the plethora of information about Albert's risk for suicide of which he was already aware, and admitted his awareness of to law enforcement

shortly afterward. This is sufficient to show foreseeability.

Emory accuses Plaintiffs' pleadings on this subject of "tip[ping] into frivolity," citing the Eleventh Circuit's affirmance of a Rule 12(b)(6) dismissal in *Guthrie v. U.S. Government*, 618 Fed. Appx. 612 (11th Cir. 2015). The fact that Emory resorts to citing such a case shows how specious its argument is. *Guthrie* involved a lawsuit by a plaintiff against a plethora of government actors he accused of conspiring of such wrongs as "inject[ing] bacteria under his skin while he was asleep," "hav[ing] his neighbors play loud music at night", "order[ing] a person to have a car accident with him", "poison[ing] his baby Macaw parrot", and "[giving] him a drug that made him feel like he was passing a kidney stone." *Id.* at 617. While Emory attempts to give Plaintiffs' allegations the same credence that the Eleventh Circuit gave the paranoid and impossible fantasies of the plaintiff in *Guthrie*, these two cases are nothing alike. On the contrary, Plaintiffs have pled specific facts, circumstances and statements that sufficiently show that Albert's suicide was reasonably foreseeable to Goode. Emory's Motion should be denied.

### 2.   Albert's homelessness, combined with other allegations, shows Emory's awareness of the potential for his suicide.

Once again, Emory cherry-picks an isolated allegation, namely that Albert had been rendered homeless by the circumstances and at least three Emory personnel were aware of that fact prior to his death, and claims that this cannot

show foreseeability. (Dkt. 75-1 at 15-16; *see also* Dkt. 72 at ¶¶ 175-88, 201-02). The only authority Emory cites to support its position, *Johnson v. 3M*, 562 F. Supp. 3d 1253 (N.D. Ga. 2021), is a property nuisance case that does not involve an entity's legal responsibility for another's suicide. Ultimately, however, Emory's focus on this single allegation again misses the bigger picture, which is that it was aware of a confluence of factors that, seen together, sufficiently plead that Emory was on notice of the potential for Albert's suicide. This is just one allegation that cannot be viewed in isolation from the remainder of the allegations of the Amended Complaint. *Tellabs*, 551 U.S. at 322.

Indeed, Emory ignores the full context. Plaintiffs have alleged that Emory developed a specific suicide prevention program, its "QPR" program, that was specifically designed, based on Emory's own promulgated objectives, "to help and protect its students who were in distress and/or crisis, including students facing a crisis regarding basic needs, such as homelessness." (Dkt. 72 at ¶¶ 71-73). Plaintiffs allege that Emory knew that students in crisis situations (including homelessness) were at risk of suicide, and they have alleged all of the factors that put Albert in a crisis situation, including being the victim of abuse and physical violence, his involvement in a Title IX complaint process, **and** being rendered homeless by his circumstances. (Dkt. 72 at ¶¶ 180, 202, 209, 241, 245). Viewed in conjunction with the full scope of the Amended Complaint's allegations, and in

the light most favorable to Plaintiffs, as the Court must, this allegation supports

Plaintiffs' contention that Albert's suicide was foreseeable to Emory.

> **3.**    **Albert's provision of information to Emory's CAPS center regarding his inability to communicate with his parents, in combination with other allegations, further shows how Emory's full scope of knowledge supports foreseeability.**

Emory finally attacks Plaintiffs' allegations regarding Albert's visit to

CAPS in June 2019, and Emory's awareness of his inability to adequately

communicate with his parents. (*See* Dkt. 75 at 16-18). Once again, Emory asks the

Court to consider this allegation in isolation, rather than in the context of the

totality of the pleadings, which it may not do. *Tellabs*, 551 U.S. at 322; *Premier*

*Concrete*, 2021 WL 1209354, at *15. Again, this is but one of the many facts

Plaintiffs pled that combine to sufficiently allege that Albert's suicide was

foreseeable to Emory, and that it could, and should, have taken preventative

action.

Indeed, this allegation is just one of several that show how Emory failed to

protect Albert as a <u>minor</u> student. In addition to requiring parental consent for

mental health treatment, which Albert's provision of information to Emory

demonstrated he could not get, Emory failed to provide Albert's parents with

notice of his circumstances in August 2019, or of the Title IX complaint, despite

knowing of Albert's difficulty communicating with his parents. (Dkt. 72 at ¶¶

158, 165, 167-69, 234-35, 240, 244). Emory's citation to *Sacchetti*, where a student

visited a mental health center before dying by suicide, is unavailing for that very reason: there was no indication that the *Sacchetti* decedent was a minor. *See Sacchetti*, 181 F. Supp. 3d 107. Albert's status as a minor limited his options, and increased Emory's responsibility to him. Viewed in totality with all other allegations, including Goode's statements to law enforcement before Albert's suicide was known to anyone, that Albert was suicidal and the reasons he thought so, this fact supports Plaintiffs' allegation that Albert's suicide was foreseeable to Emory.

\* \* \*

The Court's role at this stage is not to consider and weigh evidence or determine its admissibility. It is not to consider the credibility of witnesses. It is not to consider individual allegations of a pleading in isolation from its entirety. And it is not to view evidence presented by one side without the ability of, or opportunity for, the other side to submit its own evidentiary record. But that is exactly what Emory asks the Court to do. The Court should reject that effort outright and engage in the analysis required by Rule 12(b)(6): determining whether the allegations of Plaintiffs' Amended Complaint, viewed in the light most favorable to Plaintiffs, state a claim for relief. Viewing Plaintiffs' allegations in their totality, including statements by the person at Emory with the most knowledge of Albert before he ever knew Albert had died by suicide, shows that

20

Plaintiffs have sufficiently alleged that Albert's suicide was foreseeable to Emory. Its Motion should be denied.

### III. Plaintiffs have sufficiently pled a claim of negligence based on failure to provide or confirm Goode had suicide prevention training.

Finally, Emory challenges Plaintiffs' newly-pled basis for negligence relating to the failure to provide suicide prevention training. Under Georgia law, a claim for negligence has four elements: (1) the existence of a duty on the part of the defendant; (2) a breach of that duty; (3) causation of the alleged injury; and (4) damages resulting from the injury. *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011). Georgia law has recognized "a duty on the part of the college or university to exercise ordinary and reasonable care for a student's safety." *Walker v. Daniels*, 407 S.W.2d 70, 74 (Ga. App. 1991). Emory challenges Plaintiffs' negligence claims on the ground that it had no specific duty to train Goode or others in suicide prevention. (Dkt. 75 at 18-21). This argument fails.

In the limited discovery permitted by the Court, Plaintiffs uncovered facts regarding Emory's policies and actions regarding suicide prevention. Emory was well aware of the problem of suicide and suicidal ideation in its student body. (Dkt. 72 at ¶¶ 42-84). In the years before Albert's suicide, including in 2014, Emory held itself out to its students and their parents as focused on suicide prevention and had purportedly trained "anyone who had daily contact with EMORY students" in suicide prevention. (Dkt. 72 at ¶¶ 63-78). That training

would have put its personnel on notice of a risk of suicide, <u>even if it was not</u> <u>readily apparent from an explicit statement</u>. (Dkt. 72 at ¶¶ 71-74).

However, "no one attached to the EMORY Scholar Program, including Goode, was required by EMORY to have any training in suicide, suicidal ideation, suicidal tendencies, suicide prevention and/or QPR." (Dkt. 72 at ¶ 93). In fact, Plaintiffs discovered that, while Emory believed Goode had been trained in these techniques through a prior employer, Agnes Scott College, he never was. (Dkt. 72 at ¶¶ 119-20). Had Goode received that training, which Emory never confirmed or verified, Emory would have recognized Albert's risk of suicide at an earlier stage, and prevented it. (Dkt. 72 at ¶ 269(m)-(n)).

Unlike as to the issue of foreseeability overall, Emory does not challenge the merits of these allegations. Rather, it contends that Emory had no legal duty to provide suicide prevention training to its personnel, such as Goode. (Dkt. 75 at 18-21). But Emory misconstrues the nature of Plaintiffs' claim. Plaintiffs do not claim that there is a general legal duty to provide suicide prevention training. Rather, Plaintiffs allege that Emory undertook such an action and breached its duty to execute it in a non-negligent manner. Emory had the impression that Goode had already been trained in suicide prevention at a previous employer, and had recognized its importance by expressing its belief that he had been trained. (Dkt. 72 at ¶ 119). In fact, he had not been trained, and Emory both failed

to discover that, or to ensure that he was. (Dkt. 72 at ¶ 120).

In light of Emory's recognition of the need for such training, and its failure to confirm that Goode had received it (or provide it to him), Plaintiffs have sufficiently alleged that Emory breached a legally cognizable duty. Georgia law recognizes a duty on the part of those who undertake the responsibility to care for plaintiffs to exercise reasonable care in performing that responsibility. *Brandvain v. Ridgeview Inst., Inc.*, 327 S.E.2d 265, 271 (Ga. App. 1988), aff'd 382 S.E.2d 597 (Ga. 1989) (discussing *Emory Univ. v. Shadburn*, 171 S.E.2d 192 (Ga. App. 1933), *aff'd* 180 S.E. 137 (Ga. 1935)). And "in cases imposing a duty upon a university to its students where that duty stems from its voluntary rendering of services, foreseeability often is found where the university has either adopted protocols addressing the harm that has occurred or has undertaken in some way to present the specific harm from occurring." *Leary*, 2009 WL 865679, at *10. Thus, when an educational institution has policies in place to prevent a specific harm like suicide, and those policies are not followed, that can give rise to a duty and breach thereof. Plaintiffs have clearly alleged not only Emory's awareness of the issue of student suicide, and specific protocols that it implemented to prevent it, but its failure to ensure that Goode had the tools to utilize them, and its negligence in relying upon past training that it deems necessary, but that never, in fact, took place.

There may not be a universal duty to implement suicide prevention training, but if an institution undertakes measures to assist its students in preventing suicide, then it has a duty to do so in a non-negligent manner. Georgia law recognizes that when a defendant undertakes an act it otherwise would have no duty to perform, and a person reasonably relies upon that undertaking, that act must be performed with ordinary or reasonable care. *See Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980). Plaintiffs have alleged that Emory undertook actions to engage in suicide prevention, but did so in a negligent manner, including failing to confirm Goode's lack of training, and/or failing to provide him with the tools necessary to prevent Albert's suicide. Thus, if Emory engaged in something it had no duty to do by recognizing the need for and implementing suicide prevention policies (which it did), then it breached that duty. These allegations are sufficient to show a duty breached by Emory.

The authorities cited by Emory are unavailing. Emory acknowledges that *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560 (11th Cir. 1997), did not involve a claim for negligence under Georgia law, and applied a completely different "deliberate indifference" standard. Moreover, this case does not involve alleged violations of constitutional rights in the way that *Wyke* did; rather, it concerns a private institution overseeing the education of a minor in a campus full of adults. And

while *Wyke* noted the lack of prior suicides in not imposing a constitutional duty to provide suicide prevention training, here, Emory was well aware of the issue of campus suicide, and the need to implement preventative measures, which it acknowledges in its Motion. (Dkt. 72 at ¶¶ 42-84; Dkt 75 at 20-21).

*Nguyen* is also distinguishable based upon its facts; the court emphasized that the decedent was a "twenty-five year old graduate student", and that "graduate students are adults in all respects under the law." *Nguyen*, 96 N.E.3d at 131, 141. And the *Nguyen* court cited a message to the decedent's mentor establishing that he had been "worried about suicide" beforehand. *Id.* at 138. That evidence ultimately did not carry the day in *Nguyen*, but that was in the context of an adult graduate student. *Id.* at 146.

Here, Emory was aware of the need for measures to address the issues of student suicide. It implemented those measures to protect its students—*but did not do so for Goode*, and thus failed to do so for Albert. By undertaking an action in general, even one it did not have a duty to do, and failing to do so with reasonable and ordinary care, it breached a duty to Albert. Emory's Motion should be denied.

### Conclusion and Prayer

Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied, and for all other relief the Court deems just and proper.

* * *

Pursuant to Local Rule 7.1, I hereby certify the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1, specifically Book Antiqua 13 point.

Respectfully submitted this 20th day of October, 2022.

**MIDDLETON, L.L.C.**

/s/ Richard H. Middleton
RICHARD H. MIDDLETON, JR.
Georgia Bar No. 504912
317 East Liberty Street (31401)
P.O. Box 10006
Savannah, Georgia 31412
rhm@middletonfirm.com
Phone: (912) 660-3039
**Lead trial counsel**

and

**CONWAY, LLC**

/s/ Christopher Conway
**CHRISTOPHER T. CONWAY**
Georgia Bar. No. 823011
1862 Independence Square
Suite E
Dunwoody, Georgia 30338
Phone: (404) 334-3311
Fax: (404) 334-3331
chris@chrisconwaylaw.com
**Local counsel**

and

**MILTON, LEACH, WHITMAN,**
**D'ANDREA & ESLINGER, P.A.**

/s/ Joshua A. Whitman
**JOSHUA A. WHITMAN**
Florida Bar No. 399264
3127 Atlantic Blvd
Jacksonville, Florida 32207
jwhitman@miltonleach.com
(904) 346 3800 – Tel.
(904) 346 3692 – Fax
*Pro Hac Vice*

and

**CUNNINGHAM SWAIM, LLP**

/s/ Alex J. Whitman
**ALEX J. WHITMAN**
Texas Bar No. 24081210
4015 Main Street, Suite 200
Dallas, TX 75226
awhitman@cunninghamswaim.com
(214) 646-1495 – Tel.
(214) 613-1163 – Fax
*Pro Hac Vice*
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October, 2022, I electronically filed Plaintiffs' Brief In Opposition To Defendant's Motion To Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> Allegra J. Lawrence
> Lisa M. Haldar
> Rodney J. Ganske
> Robyn Oliver Webb

**MILTON LEACH, WHITMAN, D'ANDREA & ESLINGER, P.A.**

<u>/s/ Joshua A. Whitman</u>
**JOSHUA A. WHITMAN**