IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIEQIAO ("TIM") ZHANG,   :
Individually, and as the Independent :
Administrator of the Estate of  :
ALBERT LIANG (a/k/a ALBERT  :
ZHANG and f/k/a LIANGSHENG :
ZHANG), deceased; and JING  :
("LINDA") LIANG,    :
         :  CIVIL ACTION NO.
  Plaintiffs,    :  1:21-cv-868-AT
         :
v.          :
         :
EMORY UNIVERSITY,   :
         :
  Defendant.    :

## ORDER

This negligence case, brought by the parents of Albert Liang[1] against Emory

University in connection with Albert's suicide, is again before the Court.  In March

of 2022, the Court held that Plaintiffs failed to state a claim for negligence because

the initial complaint did not plausibly allege that Albert's suicide was foreseeable

Emory. (*See* March 2022 Order, Doc. 41.)  While the Court found Plaintiffs' initial

allegations deficient in this manner, it allowed some limited "plausibility

discovery" in light of the unique circumstances of this case — where the primary

---

[1] Because Plaintiffs have already used Albert's first name rather than his initials in the Complaint and briefing, the Court authorizes continued use of his first name, rather than requiring identification by initials as discussed in Fed. R. Civ. P. 5.2(a)(3).

source of information as to whether Emory was on notice that Albert was at risk of suicide is now deceased. (*Id.* at 25-27.) That limited discovery has now been completed, and Plaintiffs have filed an Amended Complaint. (Amended Complaint ("Am. Compl.,"), Doc. 72.)

Now before the Court is Emory's Motion to Dismiss the Amended Complaint [Doc. 75]. Also before the Court is Plaintiffs' Motion to Exclude Extrinsic Matters Raised In, and Attached to, Defendant's Motion to Dismiss [Doc. 82]. Upon review, the Court concludes that, despite the limited discovery allowed by the Court, Plaintiffs' Amended Complaint still fails to plausibly allege facts to support that Albert's suicide was foreseeable to Emory. For this reason, and as discussed further below, Plaintiffs' Amended Complaint fails to state a claim for negligence and is due to be dismissed with prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND
### A. New Allegations in the Amended Complaint

The facts alleged in Plaintiffs' Amended Complaint are primarily the same as those alleged in the initial complaint, and as outlined at length in the Court's prior Order of March 2022. (*See* March 2022 Order, Doc. 41.) The Court need not rehash those facts in full detail here. However, in short, Plaintiffs allege that Emory knew or should have known that Albert was at risk of suicide and, as such, Emory had a duty of care to intervene and provide aid. Plaintiffs bring claims for negligence and gross negligence, as well as derivative damages claims for wrongful death and survival action.

In addition to re-pleading the prior allegations, Plaintiffs have added a handful of new allegations in an attempt to plausibly allege that Albert's suicide was foreseeable to Emory. The most significant of these new allegations include that Albert's "death by suicide was foreseeable to EMORY as evidenced by" certain facts, including that:

- "EMORY knew that ALBERT was suicidal prior to the date of ALBERT'S death"; and

- "Emory's employee Goode specifically informed law enforcement officers that ALBERT was suicidal before it was discovered that ALBERT had indeed died by suicide."

(Am. Compl., Doc. 72 ¶¶ 270(i)-(j); 277(i)-(j).)

Relatedly, Plaintiffs also include a new allegation concerning an August 15 in-person meeting between Albert and Dr. Goode in which Albert informed Dr. Goode about his (Albert's) break up with his girlfriend. While Plaintiffs' initial complaint also referenced this meeting, the Amended Complaint now newly alleges that, "[d]uring the August 15 encounter, fifteen (15) days before ALBERT's death by suicide, *ALBERT appeared to Goode to be suicidal*, a fact which Goode told officers with the [Emory Police Department] on the day of ALBERT's suicide." (*Id.* ¶ 199) (emphasis added).

Finally, Plaintiffs' Amended Complaint also includes new allegations that Emory failed to train Dr. Goode regarding risk factors, warning signs, and suicide

prevention. (*Id.* ¶¶ 228, 230.)[2] In light of this lack of training, Plaintiffs allege that Dr. Goode was "confronted with circumstances" that he was "not equipped to handle." (*Id.* ¶ 231.) As alleged, in failing to train Dr. Goode, Emory negligently breached its duty of care to Albert. (*Id.* ¶ 269(m)-(n).)

**B. Procedural Developments and Defendant's Motion to Exclude**

As indicated above, after finding that Plaintiffs' initial complaint failed to plausibly allege that Albert's suicide was foreseeable to Emory, the Court allowed some narrowly tailored discovery ("the plausibility discovery"). (*See* March 2022 Order, Doc. 41.)[3] This plausibility discovery occurred between March and July of 2022. Plaintiffs filed the Amended Complaint on August 15, 2022. (Amended Compl., Doc. 72.)

On September 21, 2022, Defendant Emory moved to dismiss Plaintiffs' Amended Complaint. (Doc. 75.) In so moving, Emory argues that Plaintiffs still fail to allege facts to plausibly support that Albert's suicide was foreseeable to Emory or Dr. Goode. In addition to filing its brief in support of the Motion, Emory attaches (1) certain documents and deposition testimony disclosed in the plausibility

---

[2] In the initial complaint, Plaintiffs alleged that Dr. Goode had been trained by Emory regarding risk factors for suicide but had nevertheless failed to intervene. (*See* Initial Compl., Doc. 1 ¶¶ 191, 194.)

[3] In particular, the Court allowed discovery relating to the following matters: all of Dr. Goode's communications with or about Albert from August 1, 2019 leading up to Albert's suicide through September 13, 2019, approximately two weeks after, whether possessed by Emory or Dr. Goode himself personally or professionally; all communications between Dr. Goode and the lawyer to whom he referred Albert; and other communications (not covered by attorney-client privilege) within Emory's possession that mention Albert from August 1, 2019 until September 13, 2019; and all of Albert's CAPS medical records.  The Court also permitted Plaintiffs to take the deposition of Dr. Goode and a 30(b)(6) witness from Emory.

discovery phase[4] and (2) a chart comparing certain allegations in the Amended Complaint to the corresponding (or at least what Emory contends is the corresponding) documents and deposition testimony disclosed in plausibility discovery. (*See* Emory Chart and Documents, Doc. 76.)

In response, Plaintiffs move to exclude Emory's chart and all attached documents, asserting that consideration of these documents is inappropriate at the motion to dismiss stage. [Doc. 82.]   Below, the Court begins by outlining the standard of review, then addresses Plaintiffs' Motion to Exclude, and finally then turns to Defendant's Motion to Dismiss.

## II.   LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.   *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-556 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.   *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

---

[4] In particular, Emory attaches portions of Dr. Goode's deposition; an End of Year Report completed by Albert; portions of Emory's 30(b)(6) deposition; portions of Albert's CAPS records; an Emory Police Department Case Report; and an email exchange between Albert and Professor Druss, Albert's summer boss. (*See* Doc. 76.)

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.* at 556.

## III.  DISCUSSION

### A.    Plaintiffs' Motion to Exclude

Emory attached certain documents to its Motion to Dismiss, including portions of Dr. Goode's deposition; an End of Year Report completed by Albert; portions of Emory's 30(b)(6) deposition; portions of Albert's Counseling and Psychological Services ("CAPS") records; an Emory Police Department Supplemental Case Report ("Emory Police Report"); and an email exchange between Albert and Professor Druss, Albert's summer boss. (*See* Doc. 76.) Some of these documents — such as the Emory Police Report and the email to Professor Druss — are directly referenced and quoted in Plaintiffs' Amended Complaint. (*See, e.g.*, Am. Compl., Doc. 72 ¶¶ 198, 199, 201, 202, 259.)

In arguing that the Court should not consider any of these documents, or Emory's chart referencing them, Plaintiffs rely on the general rule that the Court

cannot consider any evidence outside of the complaint without converting the motion to dismiss to one for summary judgment.

In response, Emory contends: (1) that Plaintiffs' Amended Complaint fails to establish foreseeability regardless of the Court's consideration of these documents; however, that (2) the Court may consider some or all of these documents because they are central to Plaintiffs' claims and undisputed. Further, Emory contends that, in the present context — where the Court found the initial complaint deficient but allowed some plausibility discovery and Plaintiffs have asserted that this discovery has uncovered facts that allow them to plausibly allege foreseeability — some consideration of the subject evidence is appropriate.

Upon review, the Court determines that it may consider some of the attached documents, but not all. It is well-settled that a court may consider documents attached to a motion to dismiss where those documents are both central to the complaint and undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Likewise, "when a complaint quotes part of a document . . . the full text [of the document] is 'incorporated into the amended complaint by reference,' and is thus properly considered in deciding a Rule 12 motion." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1298 n.7 (11th Cir. 2019) (explaining that this principle allows courts to consider the full context of partial quotations).

Applying this principle, the Court finds first that it may consider the full email exchange between Albert and Professor Druss (*see* Doc. 76 at ECF 126), as portions of that exchange are directly quoted in the Amended Complaint.[5]

Similarly, the Court concludes that it can consider the Emory Police Report. (*See* Doc. 76 at ECF 122-124.) Consideration of the Emory Police Report is appropriate first because the contents of the police report are referenced numerous times in the Amended Complaint and are central to Plaintiffs' claims — and specifically are central to the allegations surrounding the key issue of foreseeability. Plaintiffs at numerous times allege that Dr. Goode "told officers of the EPD that he had a student who appeared to be suicidal" and that 15 days before Albert's death, Albert "appeared to Goode to be suicidal, a fact which Goode told officers with the EPD" on the date of Albert's suicide. (Am. Compl. ¶¶ 259, 199.)

---

[5] Specifically, the Amended Complaint alleges that: "On August 20, 2019, ALBERT sent an email that was received by Professor Druss (ALBERT's boss for his Summer 2019 EMORY internship), Professor Druss's administrative aide, and one of EMORY's medical school Psychiatry residents, in which ALBERT described what had happened between ALBERT and the adult woman as a "recent unfortunate series of events', and advised that he had become homeless, and was without safe shelter, a crisis of basic needs." (Am. Compl., Doc. 72 ¶ 201.) The full text of the email indicates that Albert stated:

> I don't think I'll be able to make it to tomorrow's meeting . . . . A recent unfortunate series of events has caused me to become temporarily homeless myself (ironic, I know). I will be fine and I do have a place to stay, but I just don't think I'll be able to make the meeting tomorrow. Could I get back to you later in the week to find another time?"

(Doc. 76 at ECF 126.) Professor Druss responded: "No problem, I hope everything is OK. . . . Keep us posted and let us know if anything would be helpful." (*Id.*) Under the above-outlined principle, *see Lewis*, 944 F.3d at 1298 n.7, the Court may consider this email exchange in full.

These allegations flow directly from the Emory Police Report regarding Albert's suicide. Additionally, these core facts involving the discovery of Albert's suicide are outlined in both the police report and the Amended Complaint. The full context of the police report indicates that Dr. Goode received a pre-scheduled email on August 30, 2019 at 8:00 a.m. from Albert directing him (Goode) to "find me at this address." (Police Report, Doc. 76 at ECF 122-124; *see also* Am. Compl., Doc. 72 ¶ 256.) Only after receiving the email and arriving at the address did Dr. Goode call the DeKalb County Police and, as indicated in the report, state that he had a student who appeared to be suicidal. (*See* Doc. 76 at ECF 122-124; *see also* Am. Compl. Doc. 72 ¶¶ 258-59.) Because Dr. Goode's statements housed in the police report are referenced numerous times in the Amended Complaint, because they are central to Plaintiffs' claims and the allegations surrounding foreseeability, and because the police report is of undisputed authenticity, the Court finds that it can consider the full Emory Police Report.

Beyond these two documents, the Court will not consider any deposition testimony, chart, or other documents attached to Defendant's Motion to Dismiss. Accordingly, Plaintiffs' Motion to Exclude [Doc. 82] is **GRANTED IN PART AND DENIED IN PART**.

### B.   Emory's Motion to Dismiss

#### 1.   Whether Albert's suicide was foreseeable to Emory

Having addressed Plaintiffs' Motion to Exclude, the Court now turns to Defendant Emory's Motion to Dismiss. In its Motion, Emory argues that Plaintiffs

still fail to plead facts that could plausibly establish that Albert's death by suicide was foreseeable to Emory sufficient to allow for liability against Emory. In response, Plaintiffs contend that their amended allegations are sufficient to establish that Albert's suicide was foreseeable to Emory.

In the March 2022 Order, the Court laid out the legal standard for a negligence case involving suicide as follows:

> To state a cause of action for negligence in Georgia, a plaintiff must allege: (1) the existence of a duty on the part of the defendant, (2) a breach of that duty, (3) causation of the alleged injuries, and (4) damages resulting from the alleged breach of the duty. *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011). . . . In cases involving suicide, the elements of duty and proximate cause are interwoven threads. The Georgia Supreme Court recently clarified that, as to the proximate cause strand, "generally speaking, suicide is deemed an unforeseeable intervening cause of death which absolves the tortfeasor of liability." *City of Richmond Hill v. Maia,* 800 S.E.2d 573, 576 (Ga. 2017). Pursuant to the "doctrine of intervening causes," there can be no proximate cause where an independent act intervenes between the act of the defendant and the injury of the plaintiff, where the intervening act was not foreseeable to the defendant, was not caused by the defendant, and which itself was sufficient to cause the injury to the plaintiff. *Id.* at 576-77 (citing *McQuaig v. McLaughlin*, 440 S.E.2d 499 (Ga. Ct. App. 1994)).

(March 2022 Order, Doc. 41 at 13-14.) In connection with this principle — that a plaintiff's ability to establish a suicide-based negligence claim hinges in large part on whether the suicide was foreseeable to the defendant[6] — the Court then explained:

> The Georgia Supreme Court has emphasized that, in the context of suicide, the "usual foreseeability principle *does not* apply to cases involving suicide because suicide is generally deemed an

---

[6] *See Maia*, 800 S.E.2d at 576 ("Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability.").

unforeseeable intervening cause as a matter of law." *Id.* at 577 (emphasis in original). However, this does not mean that foreseeability "plays no role" in cases involving suicide but "only that foreseeability does not, alone, overcome the principle that suicide is deemed an unforeseeable intervening act that severs liability of a negligent tortfeasor." *Id.* at n. 3.

(March 2022 Order at 20-21.) In the initial complaint, Plaintiffs' primary theory of foreseeability was that Albert's suicide was foreseeable to Emory because (1) Emory had extensive suicide prevention protocols that were not followed and (2) Albert was in the category of students most at-risk for suicide in light of his young age, gender, ethnicity, gender-identity, lack of family communication, as well as the fact that he was facing a serious academic problem (an impending Title IX complaint asserted against him).

Based on an extensive review of the Georgia case law as well as cases involving student suicide in other jurisdictions, the Court, in its March 2022 Order, concluded that Plaintiffs' allegations in the initial complaint were "not sufficient, without more, to support a factual inference that Emory was in a position to reasonably foresee that Albert might attempt to take his own life." (March 2022 Order, Doc. 41 at 23.)   Instead, the cases evaluating similar circumstances involving school liability for student suicide "have generally required some allegations or evidence that university faculty or staff *were more directly alerted*

*to the danger of a potential suicide, either by the students themselves, by a peer, or in some other specific manner.*" (*Id*. at 23) (emphasis added).[7]

As articulated numerous times above, the Court provided Plaintiffs an opportunity to undergo "plausibility discovery" to discover whether Dr. Goode or someone else at Emory was "more directly alerted" in a "specific manner" of the danger that Albert would commit suicide.

Upon full review, the Court concludes that Plaintiffs' Amended Complaint still fails to state a claim for relief. Despite Plaintiffs' new allegations, the Amended Complaint still does not plausibly allege that Albert's suicide was foreseeable to Emory. In particular, accepting all the new allegations as true, there are no facts to support that Dr. Goode or any other staff member at Emory was directly alerted or had concrete information to indicate that Albert might attempt suicide. Plaintiffs

---

[7] The Court then cited a string of legal authority in support: *See, e.g.*, *Schieszler v. Ferrum College*, 236 F.Supp.2d 602, 609 (W.D. Va. 2002) (denying motion to dismiss, explaining that, where it was alleged that defendants had been told that the student had more than once threatened to kill himself, plaintiff had sufficiently alleged that suicide was foreseeable); *Webb v. Muller*, 135 N.Y.S.3d 224, 238 (N.Y. App. 2020) (denying summary judgment to university where evidence demonstrated that student's father informed faculty/staff that his son had expressed suicidal thoughts multiple times to his roommates); *Tang v. President and Fellows of Harvard College*, 36 Mass. L. Rptr. 49 at *4 (Mass. Super. Sept. 9, 2019) (denying university's motion to dismiss where it was undisputed that Harvard was aware of past suicide attempt and it was alleged that Harvard failed to failed to follow its own suicide prevention protocol despite this knowledge). *See also Dzung Duy Nguyen v. Mass. Inst. of Tech.*, 96 N.E.3d 128, 146 (Mass. 2018) (granting summary judgment to MIT in connection with suicide of graduate student where: the student "never communicated by words or actions to any MIT employee that he had stated plans or intentions to commit suicide;" any prior attempts occurred well over a year before matriculation; he was 25 years old and living off-campus; and was "not a young student living in a campus dormitory under daily observation") (and holding that a university can be liable for student suicide where it "has actual knowledge of student's suicide attempt that occurred while enrolled at the university or recently before matriculation, or of a student's stated plans or intentions to commit suicide.").

acknowledge this reality. (*See* Pl. Resp., Doc. 81-1 at 9) ("Plaintiffs do not dispute that a direct statement alerting Emory of Albert's potential for self-harm has not been uncovered . . ."). The Amended Complaint does not allege that Albert ever told anyone that he intended to take his own life or that Albert manifested this intent in any other manner as to directly alert university staff. Nor does the Amended Complaint allege that any friend, peer, or parent of Albert ever reported to any staff member such a concern. *Cf. Webb v. Muller*, 135 N.Y.S.3d 224, 238 (N.Y. App. 2020) (denying summary judgment to university where evidence demonstrated that student's father informed faculty/staff that his son had expressed suicidal thoughts multiple times to his roommates).

Rather, Plaintiffs hang their hat on a new allegation that, "EMORY knew that ALBERT was suicidal prior to the date of ALBERT'S death." (Am. Compl., Doc. 72 ¶¶ 270(i).) But this allegation on its own is conclusory and unsupported by any particular facts specifically alleged and thus cannot launch Plaintiffs over the plausibility hurdle. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (explaining that, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

Next, Plaintiffs rely on the allegations that "Emory's employee Goode specifically informed law enforcement officers that ALBERT was suicidal before it was discovered that ALBERT had indeed died by suicide," (*see* Am. Compl., Doc. 72 ¶¶ 270(j)), and that "[d]uring the August 15 encounter, fifteen days before

ALBERT's death by suicide, ALBERT appeared to Goode to be suicidal, a fact which Goode told officers with the EPD on the day of ALBERT's suicide" (*id.* ¶ 199). Both of these allegations flow from the Emory Police Report. The full context of the report, as well as Plaintiffs' own allegations in the Amended Complaint, outline the following series of events.

On August 30, 2019, Dr. Goode received an email at 8:00 a.m. from Albert's email address directing Goode to "find me at this address." (Emory Police Report, Doc. 76 at ECF 122; *see also* Am. Compl., Doc. 72 ¶ 256.) Goode first sent Albert a response email asking Albert to call him; when Goode received no response, he then went to the address around 8:28 a.m. (Emory Police Report, Doc. 76 at ECF 122.) After arriving at the provided address and finding no indication of Albert, Dr. Goode called DeKalb County Police. (Emory Police Report, Doc. 76 at ECF 122; *see also* Am. Compl., Doc. 72 ¶¶ 258-59.) According to the Emory Police Report, which was written by an Emory Police Officer *(not the DeKalb Officer that Dr. Goode apparently spoke with)*, Dr. Goode at this time told DeKalb County Police that "he had a student . . . who appeared to be suicidal." (Emory Police Report, Doc 76 at ECF 122.) DeKalb County Police arrived shortly after and discovered, after forced entry into the house, that Albert had died by suicide. (*Id.*)

Emory Police, and in particular Bryan Barnett, the officer who authored the Emory Police Report, arrived at the scene around 10:16 a.m. (*Id.*) Officer Barnett then met around 10:16 a.m. with Dr. Goode. Dr. Goode told Officer Barnett that Albert had been distraught because he had broken up with his girlfriend and that

Albert was facing a Title IX complaint. (Am. Compl. ¶¶ 259-60.) The Emory Police Report also states that the DeKalb County Medical Examiner "determined that [Albert] had committed the act of suicide the previous night. . ." (Emory Police Report, Doc. 76 at ECF 123.)

Accordingly, when viewed as a whole, the allegations in the Amended Complaint and the incorporated Emory Police Report indicate, first, that Albert died by suicide on the evening of August 29, 2019. Second, the allegations indicate that Albert pre-scheduled an email to be sent to Dr. Goode the next morning, on August 30, 2019, at 8:00 a.m. Third, the allegations and Emory Police Report demonstrate that *after* receiving Albert's cryptic 8:00 a.m. email; *after* reaching out to Albert and receiving no response; *after* arriving at the provided address — a vacant, uninhabitable house; and *after* Albert was already deceased (though Dr. Goode did not yet know that fact as he was locked out of the house), Dr. Goode made the decision to call the DeKalb County Police. During this phone call, Dr. Goode, as alleged, told the DeKalb County Police Officer — after all of the above events had occurred — that he had a student that appeared suicidal.[8]  Later, *after* discovering that Albert had in fact died by suicide, Dr. Goode allegedly told Emory Police Officers that Albert was distraught by a recent break-up with his girlfriend and the Title IX compliant.

---

[8] This statement in the Emory Police Report is double hearsay. However, at this stage, the Court accepts Plaintiffs' allegations as true.

From these facts, taken as a whole, it is not reasonable to infer, as Plaintiffs allege in conclusory fashion, that Dr. Goode believed that Albert was suicidal prior to 8:00 a.m. on August 30, 2019. In particular, Dr. Goode's hindsight recognition that Albert had been upset by the breakup with his girlfriend and the Title IX complaint does not suggest that Dr. Goode in fact believed Albert to be suicidal at the time Albert disclosed his breakup to Dr. Goode on August 15, two weeks prior. This allegation is therefore conjecture not supported by any particularize factual allegations. Rather, the reasonable inference here suggests that, only *after* receiving Albert's email, receiving no reply, and arriving at the strange scene, did Dr. Goode begin to suspect that Albert might be in danger. All of this was, of course, too late for intervention, as Albert had passed away the night before.[9]

As such, these allegations and the incorporated Emory Police Report do not allow for a reasonable inference that Dr. Goode (and thus Emory) was concretely alerted to the danger that Albert would attempt suicide or serious self-harm *before* it occurred. In the absence of some communication or fact to support Dr. Goode's

---

[9] In briefing, Emory asserts that, under the circumstances, the Amended Complaint "skirts dangerously close (if not lands on) Rule 11" in propounding allegations that Plaintiffs know have no factual basis. (Emory Resp. to Mtn. to Exclude, Doc. 83 at 12.) In providing Plaintiffs the opportunity to undergo a serious measure of discovery despite failing to state a claim, the Court departed from typical norms and procedures surrounding motions practice in this district — as was necessitated by the unique circumstances of this case. In asserting these new allegations about Dr. Goode's beliefs, Plaintiffs rely on a heavily stretched (or arguably, misleading) reading of double hearsay that is inconsistent with what the full context of the Emory Police Report really suggests. Moreover, the Plaintiffs objected to the Court considering any of the supplemental discovery evidence that the Court allowed and that Defendants sought to introduce. Instead, Plaintiffs themselves alleged double hearsay statements from the Emory Police Report that allegedly forms the basis of Plaintiffs' supposedly-cured complaint — and advance their arguably misleading portrayal of the Emory Police Report's recounting of the context and time sequence of Dr. Goode's alleged remarks.

alleged earlier awareness – preceding Albert's suicide — neither Dr. Goode nor Emory were in a position to intervene to preclude his suicide plan.

As noted in the Court's prior Order, a review of the relevant legal authority demonstrates that a plaintiff alleging that a student's suicide was foreseeable to a university must clear a high bar. In order to overcome the general principle that "suicide is . . . an unforeseeable intervening cause of death which absolves the tortfeasor of liability," *Maia,* 800 S.E.2d at 576, a plaintiff must provide specific facts to indicate that the university was directly alerted to the danger of a potential suicide in some form or fashion: for example, by way of a past suicide attempt or by some communication from a peer, parent, or the student themselves. *Compare Sachcetti v. Gallaudet Univ.,* 181 F. Supp. 3d 107, 121-22 (D.D.C. 2016) (dismissing claims where "[t]he Complaint fails to allege that [the student] ever expressed suicidal thoughts or intentions to anybody . . . . The Complaint is therefore insufficient to establish that [the student's] suicide was foreseeable to Gallaudet") *with Klein v. Solomon*, 713 A.2d 764, 766 (R.I. 1998) (finding that evidence existed in the record sufficient to find that psychologist was on notice that student might commit suicide where notes from appointment indicate that student was depressed, anxious, and had suicidal thoughts.") (*see also infra* n.7).[10]   The

---

[10] Plaintiffs' new authority is distinguishable in important ways, as these cases either involve instances of middle and high school students who were severely and consistently bullied at school — in front of teachers and staff — or involve different claims. Even so, Plaintiffs' cited authority reinforces the principle that more concrete facts are required here to plausibly allege foreseeability. *See Leary v. Wesleyan Univ.*, 2009 WL 865679 (Conn. Sup. Ct. Mar. 10, 2009) (finding that fact question existed on foreseeability where student (1) called university's

Amended Complaint here includes no such allegations to indicate that Emory had any been alerted to Albert's suicidal ideation.[11] Accordingly, Plaintiffs fail to meet the plausibility standard for the key element of foreseeability in the context of this case where "the usual foreseeability principle *does not* apply." *Maia,* 800 S.E.2d at 577.   As such, Plaintiffs fail to adequately allege the causation element of their negligence claim. *Id.* at 576 (explaining that there can be no proximate cause where an independent act intervenes between the act of the defendant and the injury of the plaintiff, *where the intervening act was not foreseeable to the defendant*, was not caused by the defendant, and which itself was sufficient to cause the injury to the plaintiff."). Plaintiffs' primary basis for their negligence claim therefore fails.

---

emergency hotline at 1:00 a.m. in distress, stating that it was "really getting to the point where [he] could no longer function;" (2) was picked up by university public safety officers, who violated safety officer policy, and was dropped at local hospital; and (3) upon release committed suicide); *ElSharkawy v. Chisago Lakes School Dist. Bd. of Educ.*, 2021 WL 3293627 (D. Minn. Aug. 2, 2021) (finding that plaintiff plausibly alleged that high school student's suicide was foreseeable where school was aware that student had serious mental health conditions and had been subject to frequent and severe instances of bullying and physical assaults at school that resulted in concussions, extensive bruising, and more); *Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 811 (S.D. Ohio 2018) (finding that suicide of middle school student was foreseeable to school where plaintiff alleged that student was subject to consistent physical assaults and batteries at middle school, online harassment, and derogatory name calling, and student filled out "personality quiz" that indicated her distressed state). Next, *Rookbaksh v. Board of Trustees of the Neb. State Colls.*, 409 F. Supp. 3d 719 (D. Neb. 2019) was a case in which a student committed suicide after being subject to severe dating violence. *Rookbaksh* did not involve negligence claims and instead claims under Title IX — and therefore involved a different legal standard. Moreover, as to foreseeability, university coaches, the athletic director, the Title IX coordinator, and residence heads had direct knowledge there that the plaintiff was consistently being subject to numerous instances of physical violence by her boyfriend in the campus dormitory that was heard and reported by other students.

[11] The Court recognizes, as it did in the March 2022 Order, that Plaintiffs are in a position where the primary witness who could provide evidence to indicate that Emory was on notice is deceased. At this stage, the Court has allowed Plaintiffs to attempt to gather additional facts. Plaintiffs Amended Complaint therefore was drafted with the benefit of that limited, but still important, measure of discovery.

### 2.   Whether Plaintiffs can state a claim based on Emory's alleged failure to train Dr. Goode

In the Amended Complaint, Plaintiffs include new allegations that Emory failed to train Dr. Goode, or other member of the Emory Scholar Program staff, in suicide prevention. (*See* Am. Compl. ¶¶ 269(m)-(n); 276(m)-(n).) In pursuing this theory, Plaintiffs acknowledge that a university has no general duty to provide suicide prevention training to staff. (*See* Pl. Resp., Doc. 78 at 22.) Rather, citing "good Samaritan" doctrines outlined in Sections 323 and 324 of the Restatement (Second) of Torts, Plaintiffs contend that, where an institution undertakes measures to assist its students in preventing suicide, then it has a duty to do so in a non-negligent manner. (Pl. Resp., Doc. 78 at 24.)

In support, Plaintiffs rely on *Leary v. Wesleyan University*, 2009 WL 865679 (Conn. Sup. Ct. Mar. 10, 2009). In *Leary*, the complaint alleged that (1) the student called the university's emergency hotline at 1:00 a.m. and stated that he was having a panic attack and that it was "really getting to the point where [he] could no longer function" and (2) university police picked him up and transported him to a local hospital and dropped him off without further investigation or medical attention, contrary to the university's stated public safety policy manual. *Id.* at *1, *9. On these facts, the *Leary* Court found that the plaintiff had plausibly alleged that the university had assumed a duty to protect the student under Sections 323 and 324 of the Restatement (Second) of Torts. *Id.* at *6-8.

Section 323 of the Restatement provides that one who undertakes to render services to another for the protection of the other may be liable for physical harm

resulting from a failure to exercise reasonable care if (a) the failure to exercise care increases the risk of harm or (b) the harm is suffered because of the reliance upon the undertaking. *Id*. (citing § 323 Restatement (Second) of Torts). The *Leary* Court explained that courts have specifically applied § 323 "in circumstances in which the defendant has provided emergency services." *Id*. at *6.  Here, § 323 is not applicable. There are no allegations that Emory undertook to perform any emergency, or similar, services in the manner that occurred in *Leary*.  *See also Sachcetti,* 181 F. Supp. 3d at 119-21 (rejecting application of Section 323 to student suicide case where no action by the university increased the risk of harm to student, nor did student rely on university's services).

Section 324 of the Restatement of Torts provides for liability where one who, being under no duty to do so, "takes charge of another who is helpless" to aid or protect himself where the actor (a) fails to exercise reasonable care to secure the safety of the other while within the actor's charge; or (b) the actor's discontinuing his aid, if by doing so he leaves the other in a worse position than when he took charge of him.  This section is also not applicable under the present circumstances. *Leary* and the cases cited therein all involve some allegations that a university undertook specific measures to come to the student's aid and in doing so took physical control over the student — whether by responding to the student's emergency call and transporting him to the hospital, *see Leary*, 2009 WL 865679, at *1, or providing a safe rides program to students, *see Mullins v. Pine Manor College*, 449 N.E.2d 331, 336 (Mass. 1983).

In pursuit of their failure to train allegations, the primary Georgia case upon which Plaintiffs rely is *Huggins v. Aetna Cas. & Surety Co.*, 264 S.E.2d 191 (Ga. 1980). In *Huggins*, the Georgia Supreme Court adopted a version of the "good Samaritan" doctrine set forth in Section 342A of the Restatement of Torts. This provision provides:

> Liability to Third Person for Negligent Performance of Undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Id.* This provision has been applied in cases involving issues of liability for negligent safety inspections. *See Huggins*, 264 S.E.2d 191 (Ga. 1980) (holding that, where employee sued employer's insurer for negligent inspection, employee could establish that either employee or employer relied on insurer's inspection). *See also Smallwood v. U.S.*, 988 F. Supp. 1479, 1481 (S.D. Ga. 1997) (collecting cases).

Plaintiffs have not cited any Georgia cases applying Section 324A in a failure to train context, or in the student suicide context. Further, the listed conditions for application of this Section do not fit the facts alleged. First, Plaintiffs have not alleged that Emory undertook any duty owed by another or that Albert, or his parents, relied on Emory's suicide prevention program in any manner. Therefore, sections (b) and (c) do not apply under these facts. Under section (a), "a gratuitous

party only creates a risk of harm under the 'good [S]amaritan' doctrine 'when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed.'" *Smallwood*, 988 F. Supp. at 1482 (citing *Argonaut Ins. Co. v. Clark*, 267 S.E.2d 797 (Ga. Ct. App. 1980)). Plaintiffs have not alleged facts to support that, in failing to train Dr. Goode, Emory transformed a nonhazardous condition into a hazardous one. It is possible that this provision could apply in a student suicide case — for example, if a student utilized and relied on university counseling services, disclosed suicidal ideation during counseling sessions, and the counselor failed to take any responsive action. But those are not the facts alleged here. Accordingly, the Court is not persuaded that application of this provision is legally appropriate under the circumstances. Indeed, the implications of such a finding under present circumstances would essentially allow for liability against any university with a suicide prevention plan any time a student died by suicide. Such strict liability could conceivably discourage universities from implementing suicide prevention programs at all.

Further, besides that these provisions generally require allegations that the defendant undertook to perform some form of explicit aid, they also generally require a showing that the plaintiff *relied* on that provision of aid. Here, as noted above, there are no allegations that Albert or his parents ever read or relied on Emory's Suicide Prevention Policy in any manner.

Ultimately, the allegations in the Amended Complaint do not permit the Court to find that Plaintiffs have plausibly alleged that Emory was negligent in

failing to train Dr. Goode or other Emory Scholars Program faculty in suicide prevention in a manner sufficient to state a claim. Plaintiffs have not plausibly alleged the duty element to support this theory.  Accordingly, neither of Plaintiffs' theories of negligence is sufficient to support a claim.

## IV.   CONCLUSION

Throughout the litigation of this case, the Court has reiterated its sorrow for all affected by this tragedy. The family's tragic loss of Albert and the trauma to all touched by Albert's short, brilliant life cannot be understated. However, the governing legal authority in Georgia simply does not provide an avenue for relief given the facts and circumstances alleged.

For the reasons articulated above, Plaintiffs' Motion to Exclude [Doc. 82] is **GRANTED IN PART AND DENIED IN PART**. Emory's Motion to Dismiss [Doc. 75] is **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 16th day of June 2023.

**Honorable Amy Totenberg**
**United States District Judge**